HENRY WEISSMANN (SBN 132418)
Henry.Weissmann@mto.com
MARC BECKER (SBN 138872)
Marc.Becker@mto.com
BRADLEY R. SCHNEIDER (SBN 235296)
Bradley.Schneider@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702


MACKENZIE & ALBRITTON LLP
JAMES A. HEARD (SBN 114940)
jheard@mallp.com
One Post Street, Suite 500
San Francisco, California  94104
Telephone:  (415) 288-4000
Facsimile:  (415) 288 4010

Attorneys for Plaintiff
GTE MOBILNET OF CALIFORNIA LIMITED
PARTNERSHIP, A CALIFORNIA LIMITED
PARTNERSHIP D/B/A VERIZON WIRELESS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GTE MOBILNET OF CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership d/b/a VERIZON WIRELESS,<br><br>                Plaintiff,<br><br>        vs.<br><br>CITY OF BERKELEY,<br><br>                Defendant. | CASE NO. C 07-04034 SBA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT**<br><br>**DATE: December 18, 2007**<br>**TIME:  1:00 p.m.** |

1     TO DEFENDANT CITY OF BERKELEY AND ITS COUNSEL OF RECORD:

2     PLEASE TAKE NOTICE that on December 18, 2007, at 1:00 p.m., in the

3     Courtroom of the Honorable Saundra Brown Armstrong, located at 1301 Clay Street, Oakland,

4     California, 94612, Plaintiff  GTE Mobilnet of California Limited Partnership, a California limited

5     partnership, doing business as Verizon Wireless ("Plaintiff" or "Verizon Wireless") will and

6     hereby does move, pursuant to Federal Rule of Civil Procedure 56 and 47 U.S.C. §

7     332(c)(7)(B)(v), for an Order granting a partial summary judgment in favor of Verizon Wireless

8     on Count II of the Complaint.

9     This motion is and will be brought on the ground that Defendant has failed to act

10    on Verizon Wireless's request for a conditional use permit to install a wireless communication

11    facility at 2721 Shattuck Avenue in the City of Berkeley ("City") within a reasonable period of

12    time after the request was duly filed with the City, in violation of 47 U.S.C. § 332(c)(7)(B)(ii).

13    As a result, Verizon Wireless is entitled to an Order directing the City to issue the permit.

14    This motion is and will be based on this Notice of Motion and Motion, the

15    Memorandum of Points and Authorities set forth below, the Declaration of Paul B. Albritton, the

16    Declaration of Linda C. Spranz, the Declaration of Bradley R. Schneider, the pleadings on file in

17    this action, and on such other and further matter as the Court may consider.

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

   *Mayor Bates: If you won't allow us to go to September we'll remand*

   *City Attorney Albuquerque:  . . . . I would not recommend that, for the same reason that it is an unreasonable delay.*

   *Mayor Bates: I know.  I'd like to hear from the representative of Verizon.  If we can't set it to September, I'll move that we remand.  You can sue one way or the other.  Whichever way.*

May 22, 2007, Meeting of Berkeley City Council[1]

   At the time of this exchange, Verizon Wireless's application for a conditional use permit ("CUP") to construct a wireless communications facility at 2721 Shattuck Avenue, Berkeley, had already been pending for more than two years.  During that time, the City's Zoning Adjustment Board ("ZAB") had initially approved the application.  But in response to local opposition, the City Council remanded the matter to the ZAB, which subsequently reversed itself and denied the application on grounds that the City's staff characterized as unsupported.  The May 22, 2007, meeting was the Council's third hearing on the application, and its second to consider what action to take in response to the ZAB's recent denial.

   When Verizon Wireless would not agree to wait another five months for a public hearing on its appeal, and in spite of the City Attorney's warning that a remand would constitute unreasonable delay, the Council once again remanded to the ZAB for the stated reason of considering "new evidence."  Since that remand, no new evidence has been presented that would justify the denial of the application, as both the City's staff and its independent consultant have confirmed.  Between the Council and the ZAB, the City has held seven hearings on Verizon Wireless's application.  Nevertheless, the City continues to delay.  Yet another Council hearing is scheduled for October 23, 2007, with no assurance that the Council will reach a decision at that meeting or any other.  Absent intervention by this Court, this procedural back-and-forth shows every sign of continuing indefinitely.

---

[1] Declaration of Paul B. Albritton in Support of Plaintiff's Motion for Partial Summary Judgment on Count II of the Complaint ("Albritton Decl.") ¶ 21.

1    The City's delay violates federal law.  Under the federal Communications Act

2    ("Act"), the City was required to act upon the application within a "reasonable period of time."

3    47 U.S.C. § 332(c)(7)(B)(ii).  Local authorities are prohibited from using their zoning regulations

4    to keep "wireless providers tied up in the hearing process" through endless procedural obstacles.

5    *Sprint Spectrum L.P. v. Zoning Hearing Bd. of Williston Township*, 43 F. Supp. 2d 534, 537 (E.D.

6    Pa. 1999).  The City has exploited the unfettered discretion it enjoys under its Wireless

7    Telecommunications Facilities Ordinance to do precisely that.

8    The City has failed to act on Verizon Wireless's application within the time

9    mandated by state law, which – by the City's own admissions – required final action no later than

10    June 6, 2005.  As federal courts have recognized, this failure alone is a sufficient ground for

11    holding the City's delay unreasonable under § 332(c)(7)(B)(ii).

12    Separate and apart from its violation of state law, the undisputed facts establish

13    that the City's delay is unreasonable.  Since the ZAB's initial decision, the City has stymied

14    Verizon Wireless's application by raising procedural hurdles that – according to the City's own

15    staff – have no basis in the City's zoning ordinance.  The City, moreover, has repeatedly asked

16    Verizon Wireless to justify the "necessity" for its facility, ignoring the findings of its own outside

17    engineering consultant that the proposed facility meets this test.  To justify holding multiple

18    hearings on the same topics, the City has conjured up "new evidence," none of which has

19    persuaded its staff to deviate even slightly from its original recommendation that the City approve

20    the application.  And in prolonging the process unnecessarily, the City has ignored the counsel of

21    the City Attorney, who advised the City almost six months ago that any further delay on Verizon

22    Wireless's application would violate federal law.

23    By its conduct, the City has forfeited any right to conduct yet more review of

24    Verizon Wireless's application.  Federal case law makes clear that the proper remedy under these

25    circumstances is for the Court to issue an injunction directing the City to issue a permit for

26    Verizon Wireless to construct and operate its proposed facility.  Verizon Wireless respectfully

27    requests that, in keeping with its mandate to "hear and decide" this claim on an "expedited basis,"

28    47 U.S.C. § 332(c)(7)(v), the Court do so forthwith.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

## II.    UNDISPUTED FACTS

### A.    March 2005 to May 2006: Verizon Wireless Applies For A Permit And The City Delays More Than One Year Before The Zoning Adjustment Board Grants The Permit

On March 8, 2005, Verizon Wireless applied for a conditional use permit to install a wireless communication facility at 2721 Shattuck Avenue, in Berkeley.  Albritton Decl. ¶ 2, Ex. A.  This property is in a commercial zone, with other commercial uses on three sides.  *Id*. ¶ 12, Ex. K at 139.  It is currently occupied by a four-story building used as a moving and mini-storage warehouse.  *Id*. ¶ 12, Ex. K at 139.  The facility was formerly operated by Bekins, and the site is referred to in the administrative record as the "Bekins Site."  For that reason, although the building is now owned by a different entity, we refer to Verizon Wireless's proposed facility as the "Bekins Facility" and to Verizon Wireless's application as the "Bekins Application."  The Bekins Facility would consist of five antennas mounted flush against the existing building, two GPS antennas attached to the building parapet, electronic equipment within an enclosed lease area at ground level, and air-conditioning equipment installed on the roof behind the existing parapet.  *Id*. ¶ 12, Ex. K at 139.

The City determined the Bekins Application was complete as of April 7, 2005.  *Id*. ¶ 12, Ex. K at 138.  The City also determined that the proposed wireless facility was categorically exempt from environmental review under the California Environmental Quality Act ("CEQA"), Cal. Pub. Res. Code §§ 21000 *et seq*. *See* Albritton Decl. ¶ 12, Ex. K at 138.  Based on these determinations, as the City acknowledged in a 2007 staff report, the deadline for granting or denying the Bekins Application under the California Permit Streamlining Act ("PSA"), Cal. Govt. Code §§ 65920 *et seq* , was June 6, 2005.  *See* Albritton Decl. ¶ 12, Ex. K at 138.

On April 13, 2005, Verizon Wireless sent an email to the City Planning Department, inquiring as to the status of the Bekins Application.  Declaration of Linda C. Spranz in Support of Plaintiff's Motion for Partial Summary Judgment on Count II of the Complaint ("Spranz Decl.") ¶ 2, Ex. A.  The City did not respond to this email.  *Id* ¶ 2.  Verizon Wireless sent a follow-up email to the City Planning Department on May 23, 2005, requesting an update on the Bekins Application and noting that it had yet to receive any correspondence from the

1  Planning Department on the project. *Id.* ¶ 3, Ex. B. Once again, the City failed to respond to

2  Verizon Wireless's request. *Id.* ¶ 3.

3          The June 6, 2005 Permit Streamlining Act deadline passed without any action by

4  the City. *Id.* ¶ 4. On June 8, 2005, Verizon Wireless once again inquired as to the status of the

5  Bekins Application:

6              This application was submitted 3/8/05 (90 days ago today), yet I
               still have not received any correspondence from the Berkeley
7              Planning Department since the application was submitted nor from
               emails requesting status.
8
               While I am sympathetic to staffing issues and heavy workloads, I
9              believe that no response in over 90 days is excessive and in
               violation of the Permit Streamlining Act.
10
               Please contact me at your earliest convenience regarding this
11             application

12 *Id.* ¶ 4, Ex. C.

13          Later that month, Verizon Wireless was finally able to begin discussions with a

14 City planner regarding scheduling hearings on the Bekins Application before the Design Review

15 Committee ("DRC") and the ZAB. *Id.* ¶ 5, Ex. D. In early July, a City planner informed Plaintiff

16 that the Department was "trying to get this project to the DRC in July and to the ZAB in August

17 on 8/25." *Id.* ¶ 6, Ex. E.

18          The DRC conditionally approved Plaintiff's application on July 21, 2005.

19 Albritton Decl. ¶ 3, Ex. B at 60. The ZAB, however, delayed even holding a hearing on the

20 Bekins Application until May 25, 2006, nearly a year after the deadline under state law for

21 rendering a final decision on the application. *Id.* ¶ 5, Ex. D at 97. In a report prepared for that

22 hearing, City staff recommended approval of the permit, and summarized their findings as

23 follows:

24             Based on statements in the applicant's narrative statements, the
               report prepared by a registered electrical engineer evaluating the RF
25             levels that will be associated with the project, the report by the
               City's acoustical consultant, and the Design Review Committee
26             approval of the project, Staff believes that the proposed new
               location will enhance wireless connectivity in the area while not
27             posing a threat to public health, or result in a structure that is
               detrimental to views or noise.
28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

*Id*. ¶ 4, Ex. C at 83.  At the May 25 hearing, the ZAB approved the application by a vote of 8-0, with one abstention.  *Id*. ¶ 5, Ex. D at 97.

      B.      **June 2006 to January 2007: A Neighbor Group Appealed The ZAB Decision, The City Council Remanded, And The ZAB Reversed Its Decision**

On June 19, 2006, a neighbor appealed the ZAB's approval of the Bekins Application to the Berkeley City Council.  *Id*. ¶ 6 Ex. E at 106-7.  Among other things, the neighbor claimed that the City should retain independent engineers to determine whether the facility was necessary.  *Id*. ¶ 6, Ex. E at 106.  In a letter to the City Council, Verizon Wireless responded to the neighbor's appeal.  *Id*. ¶ 7, Ex. F at 108-10.  Verizon Wireless explained that request for a third-party engineer not only was untimely under the City's zoning ordinance, but also was unnecessary.  *Id*.

The neighbor's appeal was scheduled for a City Council meeting on September 26, 2006.  *Id*. ¶ 8, Ex. G.  In a report prepared for that hearing, City staff acknowledged that the neither the staff nor the ZAB had requested third party engineering review of the Bekins Application.  *Id*. at 118.  Moreover, the staff agreed with Verizon Wireless that such review was not needed, explaining that its "practice has been to generally only request third-party engineering review if the facility is proposed within a residential zoning district and/or if the project is highly controversial."  *Id*. at 117.  Observing that third party engineering was a costly and "involved exercise," *id*., the staff report stated that no new evidence had been submitted by appellant to negate the ZAB's necessity finding.  *Id*. at 118.  The report also addressed each of the other grounds for the appeal, determined that they were unfounded, and recommended affirming the ZAB and dismissing the appeal.  *Id*. at 117-21 (concluding that "[n]o substantive new issues have been raised in this appeal").

At the conclusion of the September 26, 2006, meeting, the Council voted in favor of third party engineering review.  *Id*. ¶ 9, Ex. H at 125-26.  In its report, the City staff had recommended that, if the Council made such a request, it should schedule a public hearing to consider the engineer's findings, rather than remanding for another ZAB hearing.  *Id*. ¶ 8, Ex. G at 121.  Had the Council followed this recommendation, there would have been only one further

1    hearing on the Bekins Application, before the Council, where the merits of the Bekins

2    Application would have been finally resolved based on the engineer's analysis. Instead, ignoring

3    this recommendation as well, the Council remanded to the ZAB to: "[R]econsider the project

4    (including a third-party engineering review), determine parking and loading requirements for the

5    existing legal uses of the site, and consider allegations of illegal uses and work without permits . .

6    . ." *Id*. ¶ 10, Ex. I at 131. This decision guaranteed at least two additional hearings on the Bekins

7    Application – a hearing on remand before the ZAB and a hearing before the City Council

8    following the inevitable appeal of the ZAB's decision.

9            At the City Council's direction, and over the objection of Verizon Wireless, the

10   City hired (at Verizon Wireless's expense) an independent engineering firm, RCC Consultants,

11   Inc. ("RCC"). In a report dated January 18, 2007, RCC confirmed that the Bekins site was

12   necessary

13           In my professional opinion, after reviewing the coverage plots,
             dropped call data and capacity analysis, it is evident from this data
14           supplied by Verizon Wireless . . . that there is a need for the new
             Berkeley Bekins site proposed at 2721 Shattuck Avenue. It is
15           needed primarily to provide capacity relief, eliminate dropped calls,
             improve in-building coverage, and to enhance outside coverage for
16           the customer.

17   *Id*. ¶ 12, Ex. J at 135.

18           At a public hearing on January 25, 2007, the ZAB considered the Bekins

19   Application for the second time. *Id*. ¶ 12, Ex. K at 135. In a 16-page report prepared for this

20   meeting, City staff addressed each of the neighbors' allegations, as well as the new evidence

21   provided in advance of the hearing:

22           Based on the applicant's submittals and the report by a third-party
             engineer engaged by the City, Staff believes the proposed wireless
23           telecommunications facility is necessary to enhance Verizon's
             Wireless connectivity in the area. Federal law preempts the City
24           from considering public health grounds if it complies with
             applicable Federal Communication Commission regulations. A
25           report prepared by a registered electrical engineer evaluating the
             radio frequency (RF) levels that would be associated with the
26           project concludes that it would comply with these public exposure
             limits and regulations . . . . Other allegations raised by neighbors
27           relating to such issues as required parking/loading, illegal building
             work and use of the existing site do not appear founded, except that
28           one (1) additional parking space (over what was previously

- 8 -

understood by City Staff) should be required within the building.

*Id*. at 149.  The City staff recommended that the application be approved.  *Id*. at 150.

At the January 25, 2007, ZAB hearing, the primary objection from opponents of the application "related to potential effects on human health."  *Id*. ¶ 16, Ex. O at 203.  After receiving public comment, the ZAB heard from an RCC engineer.  *Id*.  The engineer stated that Verizon Wireless's data "indicated the facility was needed" and that he had not conducted independent field testing because the Bekins Facility was primarily needed to increase capacity (for which field testing was not relevant), not to increase coverage.  *Id*.[2]

Nevertheless, the ZAB (by a vote of 6-3) reversed its prior decision approving the permit, based on the following findings:

> 1.  There is not substantial evidence that the facility proposed is necessary to provide personal wireless services to Verizon Wireless customers since third party engineering review of the project was based on information that was supplied by Verizon Wireless and the review did not include a test of signal reception in the area around the project site; and
>
> 2.  There is not substantial evidence that the facility proposed is necessary in this particular location and that it could not be located in an alternative location further away from residential districts

*Id*. ¶ 13, Ex. L at 164.

**C.**    **February 2007 to May 2007: Verizon Wireless Appealed To The City Council, And After Two Hearings, The Council Remands To The ZAB For The Second Time**

On February 20, 2007, Verizon Wireless appealed the ZAB's decision to the City Council.  *Id*. ¶ 14, Ex. M.  The appeal argued that the ZAB decision violated federal law because, among other things, it was not based on substantial evidence, it prohibited or had the effect of prohibiting wireless service, and it improperly was based on the perceived health risk of radio

---

[2]"Coverage refers to the ability to provide a reliable signal to users in a given area, while capacity is the ability to support simultaneous call traffic."  *Nextel of New York, Inc. v. City of Mount Vernon*, 361 F. Supp. 2d 336, 338 (S.D.N.Y. 2005).  If coverage is inadequate, there will be geographic areas, commonly referred to as "holes" or gaps," where signal strength is poor.  *See* Albritton Decl., Ex. O at 203.  By contrast, if an area's capacity is inadequate to handle the amount of demand on the system (*i.e.*, the number of customers using the network), customers will experience dropped calls.  *Id*.  For that reason, engineers use dropped call data, rather than measures of field signal strength, to determine whether capacity is adequate in an area.  *Id*.

1    waves. *Id.* In fact, the City Attorney had previously sent the Mayor and Council a memorandum

2    confirming that "federal law preempts local governments from regulating wireless

3    telecommunications facilities based on concerns about the health effects of radio frequency (RF)

4    emissions." Declaration of Bradley R. Schneider in Support of Plaintiff's Motion for Partial

5    Summary Judgment on Count II of the Complaint ¶ 2, Ex. A at 3; Albritton Decl. ¶ 16, Ex. O at

6    205.

7           Verizon Wireless provided additional information to the City Council on April 30,

8    2007, including a sworn statement from its Radio Frequency Performance Manager, confirming

9    the accuracy of the dropped-call and minutes-of-use data relied upon by the City's engineer,

10   RCC. *Id.* ¶ 15, Ex. N at 177.

11          Under the City's zoning ordinance, the Council could not simply reverse the ZAB

12   without another public hearing, but was required to choose among the following three options: (i)

13   affirm the decision of the ZAB and dismiss the appeal; (ii) set the matter for a public hearing

14   before the Council; or (iii) remand the matter to the ZAB to reconsider the application. *See*

15   Berkeley Zoning Code ("BZC") § 23B.32.060; *see* Albritton Decl. ¶ 34, Ex. AA (attaching copy

16   of relevant code section).

17          It took two meetings for the Council to decide whether to hold a public hearing on

18   Verizon Wireless's appeal. In a report prepared for the first meeting, on May 8, 2007, City staff

19   reiterated that the Bekins Application met all requirements for approval, and rejected each of the

20   ZAB's stated reasons for denial. Albritton Decl. ¶ 16, Ex O. at 204-07. The report noted that the

21   basis for the ZAB's decision to reject blocked and dropped call data supplied by Verizon Wireless

22   was "unclear" given that "no evidence was provided that the data the City's independent engineer

23   relied on was in any respect inaccurate or incomplete." *Id.* at 205. City staff also observed that

24   the ZAB had failed to "make a finding relating to the primary need for the facility, which is

25   capacity." *Id.* With respect to the ZAB's second stated basis for denial (that there was no

26   evidence the Bekins Facility could not be located further away from residential districts), the

27   report observed that "the City's Ordinance . . . does not provide for the City to deny an

28   application on the basis that an alternative site might exist." *Id.* The staff report recommended

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

1    that the Council schedule a public hearing to occur no later than July 10, 2007.  *Id*. at 199.

2        Had the Council voted at the May 8, 2007, meeting to set a public hearing, the

3    Council would have been required to schedule it within 60 days.  BZC § 23B.32.080(B).  Rather

4    than schedule a public hearing, the Council opted for further delay by continuing the May 8

5    meeting to May 22, 2007.  *Id*. ¶ 17, Ex. P at 218.  At the continued meeting, Verizon Wireless's

6    counsel asked that the City Council resolve the appeal as quickly as possible, specifically

7    requesting a public hearing at one of the Council's four scheduled meetings in June or July.  *Id*. ¶

8    20.  Verizon Wireless's counsel also stated that, if the City Council agreed with the ZAB, it

9    should simply affirm the ZAB's denial rather than subject Verizon Wireless to yet another round

10   of hearings.  *Id*.

11       The City Attorney also spoke at the May 22, 2007, meeting and advised the

12   Council that remanding the matter or setting a public hearing past July would constitute

13   unreasonable delay.  *Id*. ¶ 21.  She further recommended that the Council could set the matter for

14   public hearing in June 2007, and urged a decision by the summer recess.  *Id*. ¶ 21.

15       Rejecting the City Attorney's advice, the Council again remanded the Bekins

16   Application to the ZAB, with directions that staff refer the ZAB's decision back to the Council

17   for yet another hearing, without the need for an appeal.  *Id*. ¶¶ 22-23, Ex. R at 261.  According to

18   the official minutes, the ZAB was directed "to reconsider [the Bekins Application] in light of new

19   evidence" since its January 2007 decision.  *Id*.  It did not specify what the "new evidence"

20   consisted of.  The City Attorney was also directed "to review [the application] and report any new

21   legal information."  *Id*.

22   **D.**     **June 2007 To Present: ZAB Rejects Application, and City Council Puts Off**
             **Further Hearing Until October 23, 2007, More Than 2 ½ Years From Initial**
23           **Application**

24       The ZAB considered the Bekins Application for the third time on June 28, 2007.

25   *Id*. ¶ 24, Ex. S at 272.  Once again, in advance of that meeting, City staff prepared a report

26   recommending that the permit be approved.  *Id*. ¶ 25, Ex. T at 280.  In that report, City staff

27   summarized a supplemental report submitted by the City's third-party consultant, which reiterated

28   that the site was needed primarily to provide additional capacity, that field testing was not

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

relevant to address capacity constraints (as opposed to lack of signal coverage), and that in any event, field testing undertaken at the City's request confirmed that the Bekins Facility was needed for coverage reasons as well. *Id.* at 279.

Before a vote was taken, one member of the ZAB stated that the City Attorney had advised the ZAB in a "confidential memorandum" that a denial of the Bekins Application would violate state and federal law. *Id.* ¶¶ 26-27, Ex. U. Under the City's wireless ordinance, the ZAB was required to accept this advice in determining whether the Bekins Facility was necessary to provide service. BZC § 23C.17.100(D)(2). Nevertheless, the ZAB ignored this advice, as well as the findings of its staff and outside consultant, and once again denied the Bekins Application by a 5 to 4 vote. *Id.* ¶ 28, Ex. V at 390. The ZAB's stated reasons for denying the application were that: (a) it was unable to make the required finding that the Bekins Facility is necessary to provide service, "since service is currently being provided and since no evidence has been presented that the existing service is not at an adequate level"; (b) "the asserted gaps (dropped calls) of 1-3% for a few hours a day do not constitute 'significant gaps' but are, rather, de minimus" [sic]; (c) that the Bekins Site is "effectively in a residential area," and that such location is not necessary, contrary to the "objective of the ordinance"; and (d) the denial does not have the effect of prohibiting service in violation of federal law, explaining that "[w]ireless service exists with no significant gap; the asserted gaps are *de minimus* [sic]." *Id.* at 393.

In accordance with the City Council's May 22, 2007 remand decision, the ZAB's denial was automatically referred to the City Council for a meeting, making the filing of a formal appeal unnecessary. Nevertheless, Verizon Wireless submitted a formal appeal letter on July 13, 2007.[3] *Id.* ¶ 29, Ex. W. On July 16, 2007, the City Council held a meeting on Verizon Wireless's

---

[3] In that letter, Verizon Wireless explained that none of the ZAB's stated grounds for denying the Bekins Application was supported by substantial evidence. Albritton Decl. ¶ 29, Ex. W. With respect to the ZAB's finding that "no evidence" had been presented that the existing service was not adequate, the letter noted that the City's planning staff and third-party engineer had repeatedly found that the Bekins Facility was needed in order to address limited capacity at existing sites and that the presence of existing service was irrelevant to the issue of capacity. *Id.* at 396. Verizon Wireless further noted that there was no evidence in the record concerning specific levels of dropped calls, as this information was proprietary. *Id.* Accordingly, Verizon Wireless noted that the ZAB's finding that 1-3% dropped calls was not a "significant gap" but rather "de minimis" was factually unsupported. *Id.* Verizon Wireless also noted that even if existing service were fully adequate, which it was not, the ZAB's finding ignored the reality that even after zoning

appeal. *Id.* ¶ 30, Ex. X at 398. At this meeting – the fourth the Council has held on the Bekins Application – Verizon Wireless asked the Council to set a public hearing on its appeal as early as possible. *Id.* ¶¶ 32-33, Ex. Z. Verizon Wireless maintained that delaying a public hearing until October 23, 2007, as suggested in the staff report, was unreasonable. *Id.* Plaintiff noted that it had previously objected to scheduling any date later than July 10, 2007. *Id.* One council member agreed, arguing that the Council should postpone setting a hearing date until City staff could identify a date earlier than October 23 to hold the public hearing. *Id.* The City Council, however, voted to schedule the public hearing for October 23, 2007, in violation of the requirement that the public hearing commence within 60 days of the Council's vote.[4] *Id.* ¶ 31, Ex. Y at 404.

　　　　　In summary, Verizon Wireless's application has been pending for almost two and a half years. During that time, the ZAB has considered the application three times, and the Council has held four public hearings. At every step in the process, Verizon Wireless has provided all of the information requested by the City, and the City staff have consistently recommended approval.[5] As explained below, under these undisputed facts, and as the City Attorney herself has acknowledged, the City has failed to act on the application within a reasonable time, in violation of 47 U.S.C. § 332(c)(7)(B)(ii).

## III.    ARGUMENT

### A.    Standard of Review

　　　　　By this motion, Verizon Wireless moves for summary judgment on its second claim for relief – that the City has unreasonably delayed acting upon the Bekins Application in violation of § 332(c)(7)(B)(ii). The motion is based on facts as established in the record of actions and proceedings of the City. Because the adjudication of this claim does not depend on

---

approval, it would take several more months to complete construction and begin providing service from the facility. *Id.* Verizon Wireless thus implored the City to act expeditiously to reverse the ZAB's denial at the earliest possible date. *Id.* At the same time, Verizon Wireless expressly reserved its rights with respect to the prolonged and unreasonable delay that it had already experienced in the processing of the Bekins Application. *Id.*

[4] BZC § 23B32.080(B).

[5] Exhibit A to this Motion illustrates the procedural roundabout to which the City has subjected Verizon Wireless in violation of § 332(c)(7)(B)(ii).

1   the resolution of any disputed material facts, summary judgment is appropriate.  *See*, *e.g.*,

2   *Masterpage Communications, Inc. v. Town of Olive*, 418 F. Supp. 2d 66, 80 (N.D.N.Y. 2005)

3   (granting carrier summary judgment on its claim for unreasonable delay).

4         The Court should decide Verizon Wireless's claim for unreasonable delay in the

5   first instance and not accord any deference to the zoning decisions that were made by the City

6   Council or the ZAB.  *See Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22

7   (1st Cir. 2002) (noting that "anti-prohibition, anti-discrimination, *and unreasonable delay*

8   *provisions* [of § 332(c)(7)] present questions that a federal district court determines in the first

9   instance without any deference to the" locality) (emphasis added).  In deciding this claim,

10   moreover, the Court may consider evidence "that is outside of the administrative record compiled

11   by the local authority."  *Id*.

12      **B.**    **The City's Failure To Act On The Bekins Application Violates 47 U.S.C. §**

13           **332(c)(7)**

14        **1.**    **Section 332(c)(7)(B)(ii) Requires The City To Reach A Final Decision**
               **On The Bekins Application Within A Reasonable Period of Time**

15         "The Telecommunications Act is intended to facilitate the construction of personal

16   wireless service facilities by preventing local zoning authorities from unreasonably delaying

17   wireless providers in the application process."  *Omnipoint Communications., Inc. v. Common*

18   *Council of the City of Peekskill*, 202 F. Supp. 2d 210, 223 (S.D.N.Y. 2002).  Toward that end,

19   § 332(c)(7) provides, in relevant part:

20         A State or local government or instrumentality thereof ***shall act*** on
           any request for authorization to place, construct, or modify personal

21         wireless service facilities within ***a reasonable period of time*** after
           the request is duly filed with such government or instrumentality,

22         taking into account the nature and scope of such request.

23   47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added).  The purpose of this provision is to "'stop local

24   authorities from keeping wireless providers tied up in the hearing process' through invocation of

25   state procedures, moratoria, or gimmicks."  *Lucas v. Planning Bd. of the Town of LaGrange*, 7 F.

26   Supp. 2d 310, 321-22 (S.D.N.Y 1998) (quoting *Sprint Spectrum L.P. v. Town of Easton*, 982 F.

27   Supp. 47, 50 (D. Mass. 1997)).

28         The City's protracted delay in processing the Bekins Application is precisely the

1    kind of intransigence that § 332(c)(7)(B)(ii) prohibits.  The City has violated the deadlines set by

2    state law, which mandated final action by City more than two years ago.  At every step of the

3    application process, the City has raised additional procedural obstacles – many of which are

4    inconsistent with the City's own zoning code – as a pretext for further delay.  In the process, the

5    City has ignored the judgment of its own third party engineers, who have repeatedly found that

6    the Bekins Facility is necessary, and its own staff, who have consistently recommended

7    approving the Bekins Application.

8       **2.    The City's Prolonged And Unjustified Delay On The Bekins**
        **Application Is Unreasonable As A Matter Of Law**

9

10          **a.    The City's Failure To Act Within The Time Required By State**
            **Law Establishes Unreasonable Delay Under Federal Law**

11              The City's failure to take final action on the Bekins Application within the time

12   mandated by state law in itself establishes, as a matter of law, that the City has failed to act within

13   a reasonable period of time, as required by federal law.  Where state law requires government

14   action on an application for a wireless facility within a prescribed time, a locality's failure to

15   abide by that deadline is unreasonable as a matter of law for purposes of § 332(c)(7)(B)(ii).  *See*,

16   *e.g.*, *Sprint Spectrum L.P. v. Zoning Hearing Bd. of Williston*, 43 F. Supp. 2d 534, 538-39 (E.D.

17   Pa. 1999) (interpreting § 332(c)(7)'s "reasonable period of time" as "congruent" with a state

18   statute imposing a thirty day time limit for processing a conditional use application).  This

19   conclusion is particularly compelling where, as here, state law provides that a government's

20   failure to comply with its deadline results in the application being constructively granted.  *See*,

21   *e.g.*, *Flynn v. Burman*, 30 F. Supp. 2d 68, 72-73 (D. Mass. 1998).

22              In *Flynn*, for example, plaintiffs asserted that the defendant, a Town Zoning

23   Adjustment Board, had unreasonably delayed acting on their application for a special use permit

24   and variance to repair a communications facility.  *Id*.  State law required the local zoning

25   authority to "issue decisions on applications for special permits and variances within certain

26   prescribed time periods."  *Id*. at 72.  If a local government failed to comply with those deadlines,

27   a special use permit or variance application would be "deemed constructively granted."  *Id*.  The

28   plaintiffs asserted the defendants had not complied with the state law deadlines.  *Id*.  By failing to

1    do so, plaintiffs argued that the defendant had also violated § 332(c)(7)(B)(ii) because "what is

2    unreasonable delay under applicable state law must, as a matter of law, be considered

3    unreasonable delay under the Telecommunications Act." *Id*. 72-73.

4           The *Flynn* court agreed that the plaintiffs' argument accorded with the purpose of

5    § 332(c)(7)(B)(ii) (even though it ultimately concluded that the defendant had complied with the

6    state deadlines). *Id*. at 73 n.5. The court observed that the contention that a violation of state law

7    renders a delay unreasonable for purposes of § 332(c)(7)(B)(ii) was supported by the Conference

8    Committee Report on that provision, which states: "If a request for placement of a personal

9    wireless facility involves a zoning variance or a public hearing or comment process, the time

10   period for rendering a decision will be the ***usual period under such circumstances***." *Id*. (citation

11   omitted) (emphasis added). Indeed, the Conference Report cited by *Flynn* continues: "It is not the

12   intent of [§ 332(c)(7)(B)(ii)] to give preferential treatment to the personal wireless service

13   industry in the processing of requests, or to subject their request to any but the ***generally***

14   ***applicable time frames*** for zoning decisions." H.R. Conf. Rep. No. 104-458, at 208 (emphasis

15   added).

16          The "generally applicable time frame" for acting on the Bekins Application is the

17   California PSA, which establishes deadlines for a local government's processing of development

18   permits. *See* Cal. Gov. Code § 65940 *et seq*. If a local government fails to act within the time

19   required by the PSA, and the public has been given statutory notice of the application (which was

20   provided for Bekins), "the failure to act shall be deemed approval of the permit application for the

21   development project." *Id*. § 65956(b). The PSA reflects the state's determination, binding on the

22   City, as to what constitutes a "reasonable period of time" to process the Bekins Application.

23          As the City has acknowledged, the PSA required the City to approve or disapprove

24   the Bekins Application no later than June 6, 2005. There is no dispute that the City failed to do

25   so. And the City's violation can hardly be characterized as minor. The City delayed even

26   scheduling a hearing on the Bekins Application until almost a year after the PSA deadline, a

27   hearing that turned out to be only the start of a procedural maze that continues to this day.

28   Because the City has refused to comply with the deadline that state law dictates is the outer time

1 limit for processing a conditional use permit application, the City has unreasonably delayed

2 acting on the Bekins Application in violation of § 332(c)(7)(B)(ii).

3 **b.    The City's Delay Has Been Unreasonable**

4 Separate and apart from the City's violation of California's PSA, the actions taken

5 by the City establish that its delay has been unreasonable.

6 Since the ZAB's initial (and belated) approval of the Bekins Application on May

7 25, 2006, the City has erected one procedural hurdle after another to delay reaching a final

8 decision. Disregarding the City Attorney's warnings that further delay would be unreasonable,

9 the City Council has remanded the application twice to the ZAB to consider the "necessity" for

10 the site, an issue the original ZAB decision and the City's third party engineer had already

11 resolved in Verizon Wireless's favor. The Council alone has held four of its own hearings on the

12 application, two of which were devoted to whether the Council should hold a hearing. Yet

13 another Council hearing is set for October 23, 2007, although the Municipal Code requires a

14 hearing no later than September. BZC § 23B.32.080(B) (hearing shall commence within 60

15 days). "[A]t some point, acts such as raising additional procedural hurdles well after the process

16 has begun . . . can create an unreasonable delay." *Omnipoint Communications Enters., Inc. v.*

17 *Town of Amherst*, 74 F. Supp. 2d 109, 122 (D. N.H. 1998). That point has been reached here.

18 The district court in *Masterpage Communications, Inc. v. Town of Olive*, *supra*,

19 found that a locality had delayed unreasonably based on facts less egregious than those presented

20 in this case. 418 F. Supp. 2d at 80. The plaintiff in *Masterpage*, a wireless carrier, had applied

21 for a special use permit from the defendant Town to construct a communications tower. *Id.* at 68.

22 After attempting unsuccessfully to obtain a ruling on its applications for almost two years, the

23 carrier sought relief in district court under § 332(c)(7)(B)(ii). *Id.* The court granted the carrier's

24 motion for summary judgment, holding that the delay was unreasonable as a matter of law for the

25 following reasons:

26 • The Town initially delayed even acting on the carrier's application due to a

27 self-imposed moratorium, "which the Town continued for almost a year

28 after learning [the carrier] intended to apply to build a wireless facility."

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

1    *Id*. at 80.

2    •   When an issue was raised concerning a recreational use restriction on the

3        property where the tower would be constructed, the carrier explained to the

4        Town's planning board that its proposed use of the property would be

5        consistent with the restriction. *Id*. at 79. Even though the planning board

6        appeared satisfied with this explanation, the Town board referred the use

7        restriction issue back to the planning board two more times. *Id*. at 80. The

8        third time it did so, the Town board directed the carrier to apply for a

9        change of use restriction on the property, although the board had no right to

10       do so under its local ordinance. Id.

11   •   The Town board repeatedly raised questions about the proposed facility

12       that the carrier had previously addressed. *Id*. For example, the City

13       questioned the carrier about its justification for the height of the proposed

14       facility, "notwithstanding its own consultant's opinion that the height [the

15       carrier] requests . . . was necessary to provide adequate coverage." *Id*. The

16       town board also repeatedly asked about the carrier's right of access to the

17       site, even though under "well-settled state law" that was not a valid basis

18       for denying the permit. *Id*.

19       The court concluded that the "Town's persistent and repetitive requests regarding

20   issues previously resolved, tower height and right of access to the site, for instance, and its

21   direction that [the carrier] go before the Planning Board three times to resolve the [use restriction]

22   issue, demonstrates its disregard of clearly established New York law, its own Tower Law, and its

23   failure to move ahead on [the carrier's] application within a reasonable period of time." *Id*. at 81.

24       The City's delay in this case is even more clearly unreasonable than in

25   *Masterpage*. The Bekins Application has been pending for two and a half years—more than the

26   two years that the *Masterpage* court concluded was unreasonable. Indeed, the City did not even

27   hold a hearing until more than a year after Plaintiff filed the Bekins Application. Unlike the

28   defendant in *Masterpage*, though, the City cannot even invoke the excuse of a "moratorium" to

- 18 -

1    justify its delay.  The City simply ignored its obligation under state law to act expeditiously.

2             The City, moreover, has engaged in a series of procedurally improper maneuvers

3    that are even more egregious than those of the Town in *Masterpage*.  At its first hearing, for

4    example, the City Council remanded the application to the ZAB for third party engineering

5    review.  Because the City had not requested third party engineering review before accepting

6    Verizon Wireless's application, however, the City's request for such review was untimely under

7    state law.[6]

8             In an attempt to justify its requirement that the Bekins Application undergo

9    additional review, the City has repeatedly invented requirements that are unsupported by the

10   City's Ordinance.  For example, when the ZAB reversed itself on January 25, 2007, it justified

11   ignoring the findings of its third party engineering consultant because his "study was based on

12   information that was supplied by Verizon Wireless and the review did not include" field testing in

13   the surrounding area.  But the ZAB failed entirely to explain why the fact that the data were

14   supplied by Verizon Wireless rendered such data unreliable.  There is no provision in the City's

15   Ordinance precluding a third party engineer from relying on data provided by the applicant.  On

16   the contrary, the Ordinance expressly contemplates that the engineer may rely on such

17   information.  *See* § 23C.17.040(M) (providing that any proprietary information disclosed to the

18   city or its consultant "shall remain confidential and not be disclosed").

19             Likewise, the Ordinance provides no basis for the ZAB's conclusion that the

20   engineer's findings should be disregarded because no field testing was undertaken.  As the

21   engineer and the City's staff pointed out, the Bekins Facility is needed for additional capacity, not

22   additional coverage, and the need for capacity cannot be measured by field testing of signal

23   _____

24   [6] The California PSA provides that "[*p*]*rior to accepting an application*, each public agency shall
     inform the applicant of any information included in the list prepared pursuant to Section 65940

25   which will subsequently be required from the applicant in order to complete final action on the
     application."  Cal. Gov't Code § 65944(b) (emphasis added).  The "list prepared pursuant to

26   Section 65940" refers to the requirement under state law that a locality "specify in detail the
     information that will be required from any applicant for a development project."  *Id.* § 65940(a).
     The City's "list" is set forth at § 23C.17.040 of the Ordinance.  While that section contemplates

27   third party engineering review upon request, *id.* at § 23C.17.040(M), the City did not request such
     review until after the ZAB's initial decision.  Accordingly, the request was untimely because it

28   was not made prior to the City's acceptance of the Bekins application.

1    strength.

2            Similarly, in the same decision, the ZAB justified its denial on the grounds that

3    there was not "substantial evidence" that the Bekins Facility "could not be located in an

4    alternative location further away from residential districts." Yet, as the City's staff has

5    acknowledged, the Ordinance does not require an applicant to exhaust alternative locations, and

6    City staff never asked Verizon Wireless to do so. Indeed, any such requirement – as a member of

7    the ZAB noted in the hearing – would be never-ending, as one could continually posit an

8    alternative to any given location. Further, as the City staff has recognized, Verizon Wireless did

9    consider alternative locations to the Bekins Facility. In materials it submitted well before the

10   ZAB's decision, Verizon Wireless explained why those alternative locations would not work.

11           For its part, the City Council has shown no inclination to review the merits of the

12   ZAB's decisions in a serious fashion, choosing instead to abdicate its responsibilities by

13   repetitively remanding to the ZAB for even more hearings. The City Council has done so despite

14   Verizon Wireless's urging that it either schedule the Bekins Application for a public hearing,

15   where the Council would need to consider the merits of Verizon Wireless's challenge to the ZAB

16   decision, or simply uphold the ZAB's denial, which would allow Verizon Wireless to challenge

17   the denial in court as a violation of the substantive standards of federal law.

18           Furthermore, the Council has introduced additional delay by holding several

19   meetings without ever taking final action on the Bekins Application. For example, after the ZAB

20   reversed itself and denied the application on January 25, 2007, the Council held two meetings for

21   the purpose of deciding whether to hold a public hearing to consider Verizon Wireless's appeal,

22   before ultimately deciding to remand to the ZAB.

23           When the City Council finally decided to hold a public hearing to consider the

24   ZAB's latest denial, it again ignored Verizon Wireless's request that it schedule a hearing as soon

25   as possible. Violating the requirement in its own code that it schedule a hearing within sixty days

26   of its vote to hold a hearing, the Council instead scheduled the hearing for October 23, 2007

27   (more than 90 days after its vote).

28           When the October 23 hearing date finally arrives, there is no assurance that the

- 20 -

1 Council will actually make a decision, rather than remanding to the ZAB or rescheduling the

2 matter once again.  Indeed, if the past is any guide, there is every reason to believe that the City

3 will continue to put off making a decision on the Bekins Application.  The political pressure of

4 local residents has stymied the City from granting the Bekins Application, but federal law

5 prohibits the City from denying the application on the grounds animating the opposition—fears

6 about the purported health effects of wireless facilities.  In these circumstances, the City has every

7 reason to continue deferring any decision.

8        The City has already kept Verizon Wireless entangled in procedural snares for two

9 and a half years.  At every turn, the City has prolonged the process by inventing new, improper

10 procedural requirements long after Verizon Wireless's initial application was deemed complete

11 and should have been approved.  And the City has persistently and repetitively asked Verizon

12 Wireless to justify the "necessity" of the Bekins Facility, while disregarding its own engineer's

13 consistent findings on this very point.  The City's stalling tactics are exactly what

14 § 332(c)(7)(B)(ii) was intended to prevent.

15 **IV.    THE COURT SHOULD ENJOIN THE CITY TO ISSUE  A CUP FOR THE**
   **BEKINS SITE**

16

17        Where a locality has violated § 332(c)(7), federal courts have generally  held that

18 "the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits."

19 *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) (citing cases).

20 Injunctive relief best serves the TCA's goal of expedited relief, *id.*, and is especially warranted

21 where a remand to the local authority would serve no useful purpose.  *See id* at 497 (affirming

22 injunction where "remand would serve no useful purpose in this case"); *see also Omnipoint*, 74 F.

23 Supp. at 126 (noting that remand was "particularly inappropriate where the case would go back

24 before a local government that has already demonstrated hostility toward the location of [a

25 carrier's] facilities within its borders").

26        In *Masterpage*, for example, the court declared that, by virtue of its disregard of

27 state law and other delaying tactics, the Town had "relinquished its right to seek further review of

28 [the carrier's] application."  418 F. Supp. 2d at 81.  Although the Town had yet to consider the

- 21 -

1    environmental impact of the proposed facility, the court noted the Town had "two years to

2    address that issue, but failed to take the first step." *Id.* Holding that an injunction was

3    appropriate, the court reasoned that it was "unlikely remand would serve any purpose and would

4    further delay [the carrier's] application in a swamp of hearings and meetings with no resolution in

5    sight." *Id.*

6    So too here. The City has had more than two years to act on the Bekins

7    Application and it has failed to do so. It has held seven hearings on the proposed facility without

8    reaching a final decision. By its delay, the City has demonstrated its willingness to ignore the

9    advice of the City Attorney, to disregard the recommendations and findings of its staff and

10   independent engineer, and to violate its obligations under the California PSA as well as its own

11   municipal code. Under these circumstances, the only appropriate remedy for the City's violation

12   of § 332(c)(7)(B)(ii) is an injunction directing the City to issue Verizon Wireless a CUP to

13   construct the Bekins Facility.

14                                       **<u>CONCLUSION</u>**

15   For the foregoing reasons, the Court should enter summary judgment in favor of

16   Plaintiff Verizon Wireless on its second claim for relief and order the City to issue Verizon

17   Wireless a conditional use permit to construct a wireless communications facility at 2721

18   Shattuck Avenue, Berkeley, California, consistent with Plaintiff's long-pending application.

19

20   DATED: October 2, 2007                    Munger, Tolles & Olson LLP
                                               HENRY WEISSMANN
21                                             MARC BECKER
                                               BRADLEY R. SCHNEIDER
22

23                                             By:_____
24                                                   BRADLEY R. SCHNEIDER

25                                             Attorneys for Plaintiff
                                               GTE MOBILNET OF CALIFORNIA
26                                             LIMITED PARTNERSHIP, A CALIFORNIA
                                               LIMITED PARTNERSHIP D/B/A VERIZON
27                                             WIRELESS

28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON CLAIM II OF THE COMPLAINT
C 07 -04034 SBA

**EXHIBIT A**



**The City's Unreasonable Delay**

March 8, 2005 Bekins Application Submitted

July 6, 2005
PSA Deadline

July 21, 2005 DRC Approval

Sept. 26, 2006
City Council
remands
Bekins Application
to ZAB.

May 8, 2007
Second City Council
meeting on Bekins
Application. The
Council votes for
another hearing.

May 22, 2007
Third City Council meeting on
Bekins Application. Council
remands (again) to ZAB.

July 13, 2007
Fourth City Council
Meeting on Bekins
Application. Council
votes to set hearing on
October 23.

May 25, 2006 ZAB
Approves Bekins
Application

Jan. 25, 2007
ZAB reverses its
prior approval.

June 28, 2007
Third ZAB
Hearing. ZAB
votes to deny
Bekins
Application.