# EXHIBIT C



# Z O N I N G
# A D J U S T M E N T S
# B O A R D
## S T A F F   R E P O R T

FOR BOARD ACTION
25 MAY 2006

# 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless;** (C-SA, South Area Commercial District, CW)

## I.   Application Basics

### A. Zoning Permits Required:

- Use Permit to construct a new wireless telecommunications facility (not co-located with an existing facility), under BMC Section 23C.17.100.C
- Use Permit to construct a wireless telecommunications facility in the C-SA District, under BMC Section 23E.52.030

### B. CEQA Determination:  Categorically exempt pursuant to Section 15301 (Existing Facilities) of the CEQA Guidelines.

### C. Parties Involved:

- Applicant      Verizon Wireless, C/o Mr. James Singleton, Cal Com Systems, Inc, 2001 Omega Road, Suite 100, San Ramon, CA 94583

- Property Owner      R & L Bernstein, LLC, 1201 Woodview Terrace, Los Altos, CA 94024

2120 Milvia Street, Berkeley, CA  94704   Tel: 510.981.7410     TDD: 510.981.7474     Fax: 510.981.7420     E-mail: zab@ci.berkeley.ca.us

- 75 -

**Figure 1: Vicinity Map**



**Figure 2: Site Plan**



## Table 1:  Land Use Information

| Location | | Existing Use | Zoning District | General Plan Designation |
|----------|---|--------------|-----------------|--------------------------|
| Subject Property | | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| Surrounding Properties | North | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | South | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | East | Residential | R-2 (Restricted Two-Family Residential) | Low Medium Density Residential |
| | West | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |

## Table 2:  Special Characteristics

| Characteristic | Applies to Project? | Explanation |
|----------------|---------------------|-------------|
| Alcohol Sales/Service | No | |
| Creeks | No | |
| Density Bonus | No | |
| Historic Resources | No | |
| Inclusionary Housing | No | |
| Oak Trees | No | |
| Seismic Hazard Zone | No | |

## Table 3:  Project Chronology

| Date | Action |
|------|--------|
| 8 March 2005 | Application submitted |
| 7 April 2005 | Application deemed complete |
| N/A | CEQA deadline[1] |
| 6 June 2005 | PSA deadline[2] |
| 21 July 2005 | DRC |
| 11 May 2006 | Public hearing notices mailed/posted |
| 25 May 2006 | ZAB hearing |

1.  Negative declaration must be adopted within 180 days after application is deemed complete, EIR within 365 days (CEQA Guidelines, Article 8).
2.  Project must be approved or denied within 60 days after being deemed complete if exempt from CEQA, or 60 days after adoption of a negative declaration, or 180 days after adoption of an EIR (Govt. Code Section 65950).

## II. Project Setting

### A. Neighborhood/Area Description:
The site is located on the southern end of the Shattuck Avenue commercial corridor. Lots to the east of the site are used for residential purposes. Information on existing land use is included in Table 1 of this report.

### B. Site Conditions:
The site is located on the north-eastern corner of Shattuck Avenue and Ward Street. A four-story building is erected on the site. The building is used for a moving and mini-storage warehouse.

## III. Project Description

The proposal involves four main elements:
1. Five **antennas** at three locations on the northern and eastern facades of the building. Antennas will be mounted flush to the top of the wall, without protruding above the existing height of 58 feet;
2. One **GPS antenna** on the parapet of the eastern side of the building, adjacent to the cable tray;
3. **Equipment** at ground level in a 15.25 foot by 25.75 foot enclosed lease area; and
4. A **plug** for an emergency backup generator on the northern side of the building;
5. **Air-conditioning** equipment on the roof of the building behind an existing parapet wall.

Another carrier (Nextel Communications) is proposing to establish a new wireless telecommunications facility on the same site (UP#04-10000068 relates).

## IV. Community Discussion

### A. Neighbor/Community Concerns:

Prior to the writing of this report, staff received correspondence from four individuals outlining objections to the project (see Attachment 11). The issues raised in these letters are summarized below and followed by a staff response.

**Issue 1:**
Existing use permits issued for the site and for nearby uses (eg Kirala, Any Mountain) do not permit the commercial use of the Ward Street frontage of the site. Equipment should be relocated to the northern or western sides of the building.

**Staff response:**
Use permits have not been issued for the site since the use was established in about 1922 when a warehouse was constructed. Zoning certificates have been subsequently issued for alterations to the use, however these zoning certificates do not prohibit the commercial use of Ward Street. The use of part of the existing building adjacent to Ward Street for equipment for the wireless facility is appropriate for the following reasons:

1. Customers do not access the wireless telecommunications facility, only technicians come to undertake periodic maintenance;

2. The applicant revised the proposal to relocate condensers for air-conditioning equipment on the roof of the building to resolve issues with louvers and possible noise effects on Ward Street;

3. It appears that Ward Street was historically used by customers to load and unload their storage items;

4. The entire site, including the portion of the lot fronting Ward Street, is included in the C-SA District; and

5. Use permits issued for other nearby uses such as Kirala and Any Mountain do not appear relevant to this case.

**Issue 2:**
The owner of the site has repeatedly shown a lack of respect for the neighborhood and has established uses on the site, which have been detrimental to the neighborhood. These uses include renting out Ryder trucks, the homeless storage locker program, and renting out the parking lot to other vehicles.

**Staff response:**
In this case the appropriate permits for the wireless telecommunications facility have been sought and the potential detriment caused by the facility is assessed in the findings attached to this report (see Attachment 1).

**Issue 3:**
Cell phone antennas should not be placed anywhere near a residential neighborhood.

**Staff response:**
The wireless telecommunication facility provisions of the Berkeley Municipal Code (BMC) do not prohibit the establishment of facilities in or adjacent to residential neighborhoods. New wireless telecommunications facilities may be established in the South Area Commercial (C-SA) District if a finding of necessity is made, the facility complies with all state and federal standards and requirements, co-location is not feasible, and the facility will not be detrimental. These findings are addressed in Section V.A of this report and in Attachment 1.

**Issue 4:**
The design of the wireless telecommunications facility is unsightly.

**Staff response:**
The issue of visibility is addressed in Section V.A of this report.

**Issue 5:**
The wireless telecommunications facility is dangerous to maintain. It will have negative effects on human health and on trees.

**Staff response:**
The carrier is licensed by the Federal Communications Commission (FCC) and the applicant provided a report prepared by an electrical engineer indicating that the facility would comply

with applicable FCC guidelines.  The issue of public safety is addressed in Section V.A of this report.

Staff is not aware of any FCC guidelines that address potential effects on trees.

**B. Committee Review:**
The Design Review Committee (DRC) reviewed the project on 21 July 2005.  The DRC granted preliminary approved subject to the following conditions:
1.  Coax cable should be routed internally instead of in a cable-tray on the exterior of the eastern elevation unless documentation is supplied to the ZAB indicating that this design option cannot be reasonably achieved;
2.  If cabling remains on the eastern elevation as proposed, any cable-trays (including for other carriers) should be grouped and run through the parapet, not over it; and
3.  Condensers for air-conditioning equipment should be located on the roof to resolve issues with louvers and possible noise effects on Ward Street.

## V.  Issues and Analysis

### A. Key Issues:

**Issue:  Public Safety**
Section 704 of the Telecommunications Act of 1996 (47 U.S.C. §332(c)) prohibits local governments from regulating proposed wireless service facilities on the basis of the environmental effects of radio frequency emissions if the facilities comply with the Federal Communication Commission's (FCC) regulations.  Berkeley Municipal Code Section 23C.17.100.B.1 requires the ZAB to make a finding that the facility will comply with these regulations.

The applicant provided a report prepared by an electrical engineer registered with the State of California as required by BMC Section 23C.17.040.F (see Attachment 5).  The report indicates that the public would be exposed to radio frequency (RF) levels well below the applicable public exposure limits (a maximum cumulative level of 2.6% of the public safety standard of 0.58 mW/cm$^2$ for the simultaneous operation of each carrier) and that the proposed facility would comply with FCC guidelines.  Mitigation measures are recommended to prevent occupational exposures that might occur during such activities as building maintenance.  The report recommends that explanatory warning signs be posted to prevent access within eight feet of the antennas.

**Issue:  Visibility**
Under BMC Section 23C.17.100.B the ZAB must make a finding that the facility will either: (1) not be readily visible; or (2) that it is not feasible to incorporate additional measures that would make the facility not readily visible.

The design of the project was reviewed and given preliminary approval by the DRC subject to conditions (see Section IV.B of this report).  The DRC requested that the coax cable be routed internally instead of in a cable-tray on the exterior of the eastern

elevation unless documentation was supplied to the ZAB indicating that this design option cannot be reasonably achieved. The applicant has provided a letter (see Attachment 9) indicating that the coax cable cannot reasonably be routed internally for the following reasons:

1. An abandoned chimney, the egress staircase and the elevator shaft are not suitable to use to route the coax cable through;
2. There are no clear opportunities for a vertical corridor since the floors of the building are completely used for storage and the storage spaces are not consistent in size from one floor to the next; and
3. If the coax cable is routed internally it will need to penetrate the concrete floors of the five-story building and a one-hour fire rating will be required to enclose it. The outside dimensions of the coax shaft would be approximately 4.25 feet by 5.25 feet to accommodate the two carriers that proposed to use the facility.

The design incorporates a number of features to ensure that the facility would not be readily visible (see photo simulations Attachment 6), including:

1. Cabling would be routed internally where possible. Exposed coaxial cable would be white or match the building color;
2. Cable-trays would run vertically up the east elevation of the building and through the parapet. They would be painted to match the building, and would be grouped with the installation proposed by Nextel Communications;
3. Antennas would be positioned on the northern and eastern walls of the building to avoid locating them on the southern and western sides of the building, which are more visible and architecturally significant. The antennas would be flush-mounted, which would be less visible than bulky housing on an exterior wall that has no fenestration or other articulation;
4. Air-conditioning equipment would be on the roof of the building behind an existing parapet wall; and
5. Other equipment would be located within the existing building in a ground level lease area.

### Issue: No-Co-location
The proposed wireless telecommunications facility would not be co-located with existing wireless equipment since there are no suitable locations in the area. New facilities that are not co-located may be permitted with a Use Permit provided that the ZAB can find, based upon substantial evidence in the record that:

1. The placement of a new wireless telecommunications facility is necessary for the provision of personal wireless services to Berkeley residents and businesses; and
2. Without such an antenna facility, the operator would be unable to provide personal wireless services to its customers in the proposed coverage area (see Berkeley Municipal Code Section 23C.17.100.D).

The applicant has submitted information indicating that the carrier (Verizon Wirelesss) has inadequate coverage in this area. A map modeling existing coverage (see Attachment 7) shows a lack of coverage in the area. The applicant's narrative statement (see Attachment 4) indicates that the only option to meet demand is to install a new cell site. This location was selected for the following reasons:

1. Co-location with existing facilities is not feasible since there are no existing wireless facilities in the vicinity that would satisfy the carrier's coverage and capacity needs;

2. Other locations (without existing wireless facilities) in the vicinity of the site were not suitable, including the fire station on Shattuck Avenue;

3. Another carrier (Nextel Communications) is proposing to establish a new wireless telecommunications facility on the same site (UP#04-10000068 relates), which would establish a co-location site;

4. The building on the site is five stories high and the facility would provide coverage in the needed area; and

5. The building has architecture suitable to screen antennas, and equipment area inside a building to mitigate the potential noise or visual impacts to the surrounding residential and commercial areas.

The applicant has provided a statement that it will cooperate with any future co-location requests, to the extent they are feasible.

**Issue: Noise**
The Land Use Division has found that equipment cabinets required to support wireless antennas can generate noise exceeding the limits of the City's Noise Ordinance outlined in Chapter 13.40 of the Berkeley Municipal Code.

For this reason an acoustical study was conducted for the project (see Attachment 8). In this case the most likely source of audible noise would be the air-conditioning equipment that is proposed on the roof of the building. The findings of the acoustical study indicate that this equipment would not exceed the daytime and nighttime exterior noise limits specified in the City's Noise Ordinance (either the commercial limits or the R-2 limits that apply at the eastern property line). Therefore, the proposed equipment would not have any detrimental noise impacts.

**Summary of key issues**
Based on statements in the applicant's narrative statements, the report prepared by a registered electrical engineer evaluating the RF levels that will be associated with the project, the report by the City's acoustical consultant, and the Design Review Committee approval of the project, Staff believes that the proposed new location will enhance wireless connectivity in the area while not posing a threat to public health, or result in a structure that is detrimental to views or noise.

**B. General and Area Plan Consistency:**

1. **South Shattuck Strategic Plan**
   The site is included in the South Shattuck Strategic Plan area. There are no provisions of the plan that are relevant to this project.

File: G:\Projects by Address\Shattuck\2721\UP 05-10000033\2006-05-25 ZAB\2006-05-25 ZAB Staff Report.doc

2. **General Plan**
The proposal is consistent with the General Plan, including:

a. **Policy LU-7 Neighborhood Quality of Life, Action A:** Require that new development be consistent with zoning standards and compatible with the scale, historic character, and surrounding uses in the area.

**Staff Analysis:** The proposal is consistent with the relevant zoning standards, which require that need for the wireless telecommunications facility be demonstrated and that the facility not be readily visible and not result in negative effects on public health (see Section V.A of this report).

b. **Policy UD-24 Area Character:** Regulate new construction and alterations to ensure that they are truly compatible with and, where feasible, reinforce the desirable design characteristics of the particular area they are in.

**Staff Analysis:** The proposed design incorporates reasonable measures to reduce the visibility of the facility (see Section V.A of this report). The design was reviewed and given preliminary approval by the DRC subject to conditions (see Section IV.B of this report).

## VI. Recommendation

Because of the project's consistency with the Zoning Ordinance and General Plan, and minimal impact on surrounding properties, Staff recommends that the Zoning Adjustments Board:

A. APPROVE Use Permit #05-10000033 pursuant to BMC Section 23B.32.040 subject to the attached Findings and Conditions (see Attachment 1).

**Attachments:**

1. Findings and Conditions
2. Project Plans, dated 30 March 2006 and received 8 May 2006
3. Notice of Public Hearing
4. Applicant's Statement
5. Engineering Report on Radio Frequency Electromagnetic Fields
6. Photo Simulations (Existing and Proposed)
7. Coverage Maps (Existing and Proposed)
8. Acoustical Study
9. Letter on Routing Coax Cable
10. FCC License
11. Correspondence Received

**Staff Planner:** Christopher Wolf, cwolf@ci.berkeley.ca.us, (510) 981-7410

# ATTACHMENT 1

## FINDINGS AND CONDITIONS

25 MAY 2006

# 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a Wireless Telecommunications Facility (including five antennas and related equipment) for Verizon Wireless**

## CEQA FINDINGS

1. The project is categorically exempt from the provisions of the California Environmental Quality Act (CEQA, Public Resources Code §21000, et seq.) pursuant to Section 15301 of the CEQA Guidelines ("Existing Facilities").

## GENERAL NON-DETRIMENT FINDING

2. Pursuant to Berkeley Municipal Code Section 23B.32.040, the Zoning Adjustments Board finds that the proposed project "...*under the circumstances of the particular case existing at the time at which the application is granted, will not be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the area or neighborhood of such proposed use or be detrimental or injurious to property and improvements of the adjacent properties, the surrounding area or neighborhood, or to the general welfare of the City*", for the following reasons:

   A. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless telecommunications facility ("wireless facility") will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project;

   B. The design of the wireless facility incorporates a number of features to ensure that the facility will not be readily visible. The Design Review Committee reviewed the project and granted preliminary approved subject to conditions that have subsequently been incorporated in the conditions of approval for this permit; and

   C. A noise study prepared for the project demonstrated that the proposed equipment will not generate noise levels exceeding the limits established by Berkeley Municipal Code Chapter 13.40, Community Noise.

## OTHER REQUIRED FINDINGS – WIRELESS TELECOMMUNICATIONS FACILITIES

3. Pursuant to Berkeley Municipal Code Section 23C.17.100.A.1, the Zoning Adjustments Board finds that the proposed project "...*is consistent with the general requirements of this chapter and any specific requirements applicable to the proposed facility...* ", for the following reasons:

A. The project is consistent with relevant provisions of the General Plan, particularly Policy LU-7 Neighborhood Quality of Life, Action A and Policy UD-24 Area Character;

B. There are no provisions of the South Shattuck Strategic Plan that are relevant to this project;

C. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the FCC standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project; and

D. There are no discretionary permits affecting the property that are relevant to the project.

4.     Pursuant to Berkeley Municipal Code Section 23C.17.100.B.1, the Zoning Adjustments Board finds that the proposed project *"will comply with all applicable state and Federal standards and requirements"*, for the following reasons:

A. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project.

5.     Pursuant to Berkeley Municipal Code Section 23C.17.100.B.2, the Zoning Adjustments Board finds that the proposed project will *"...not be readily visible"*, for the following reasons:

A. The Design Review Committee reviewed the project and granted preliminary approved subject to conditions that have subsequently been incorporated in the conditions of approval for this permit;

B. Cabling will be routed internally where possible. Exposed coaxial cable would be white or match the building color;

C. Cable-trays will run vertically up the east elevation of the building and through the parapet. They will be painted to match the building, and will be grouped with the installation proposed by Nextel Communications;

D. Antennas will be positioned on the northern and eastern walls of the building, which are less visible and not as architecturally significant. Flush-mounted antennas will be used, which are not as visible as bulky housing on an exterior wall that has no fenestration or other articulation; and

E. Air-conditioning equipment will be on the roof of the building behind an existing parapet wall; and

F. Other equipment would be located within the existing building in a ground level lease area.

6.     Pursuant to Berkeley Municipal Code Section 23C.17.100.D, the Zoning Adjustments Board finds that the proposed project *"...is necessary for the provision of personal wireless services*

*to Berkeley residents and businesses, or their owners, customers, guests, or invitees, or other persons traveling in or about the City"* and that without the facility *"...the operator will be unable to provide personal wireless services to its customers in the proposed coverage area"*, for the following reasons:

    A. The applicant has indicated that the carrier has unacceptable coverage in this area. A map modeling existing coverage shows a lack of coverage in the area.

7.    Pursuant to Berkeley Municipal Code Section 23C.17.100.F, the Zoning Adjustments Board finds that *"... co-location is not feasible, would have more significant adverse effects on views or other environmental considerations, is not permitted by the property owner, would impair the quality of service to the existing facility, or would require existing facilities at the same location to go off-line for a significant period of time"*, for the following reasons:

    A. Co-location with existing facilities is not feasible since there are no existing wireless facilities in the vicinity that would satisfy the carrier's coverage and capacity needs;

    B. Other locations (without existing facilities) in the vicinity of the site were not suitable, including the fire station on Shattuck Avenue; and

    C. Another carrier (Nextel Communications) is proposing to establish a new wireless telecommunications facility on the same site (UP#05-10000033 relates), which would establish a co-location site.

## STANDARD CONDITIONS

**1.**    **Conditions Shall be Printed on Plans**

The conditions of this Permit shall be printed on the first sheet of each plan set submitted for a building permit pursuant to this Use Permit, under the title 'Use Permit Conditions'. The second sheet may also be used if the first sheet is not of sufficient size to list all of the conditions. The sheet(s) containing the conditions shall be of the same size as those sheets containing the construction drawings; 8-1/2" by 11" sheets are not acceptable.

**2.**    **Applicant Responsible for Compliance with Conditions**

The applicant shall ensure compliance with all of the following conditions, including submittal to the project planner of required approval signatures at the times specified. Failure to comply with any condition may result in construction being stopped, issuance of a citation, and/or modification or revocation of the Use Permit.

**3.**    **Uses Approved Deemed to Exclude Other Uses (Section 23B.56.010)**

    A.    This Permit authorizes only those uses and activities actually proposed in the application and exclude other uses and activities.

B.    Except as expressly specified herein, this Permit terminates all other uses at the location subject to it.

4.    **Modification of Permits** (Section 23B.56.020)

No change in the use for which this Permit is approved is permitted unless the Permit is modified by the Zoning Adjustments Board, in conformance with Section 23B.56.020.A.

Changes in the plans for the construction of a building or structure, may be modified prior to the completion of construction, in accordance with Section 23B.56.030.D. The Zoning Officer may approve changes to plans approved by the Board, consistent with the Board's policy adopted on May 24, 1978, which reduce the size of the project. The Zoning Officer may also approve a maximum two-foot variation to Board approved plans, provided, that such variation does not increase a structure's height, reduce the minimum distance to any property line, and/or does not conflict with any special objective sought by the Board. In the case of modifications to Use Permits for construction of, or additions of changes to single family homes which required Board review, the Zoning Officer shall follow Board policy adopted March 13, 1997, as follows:

A.    Upon applications for modifications to a home where a Use Permit has been granted, Staff shall review the Use Permit to determine if any explicit conditions were placed on the Use Permit that would be affected by the proposed modification.

B.    If, prior to acting on a Building Permit, Staff becomes aware of controversy over an earlier application, Staff may choose to conduct a more detailed review of the record to determine if conditions were implied by the Board or offered by the applicant (but not included in the Use Permit conditions) that would be affected by the proposed modification (this does not imply that Staff will review the whole Use Permit record for all applications).

C.    If there are explicit conditions (#A) or implied conditions (#B) affected by the proposed modification, the project shall be brought back to the Board as a Use Permit Modification.

D.    If there are no explicit conditions that would be affected by the proposed modification, and if Staff is not otherwise aware of implied conditions, and the project would otherwise meet the requirements of the Zoning Ordinance, Staff will approve the Building Permit without Board or public review.

5.    **Plans and Representations Become Conditions** (Section 23B.56.030)

Except as expressly specified herein, the site plan, floor plans, building elevations and any additional information or representations submitted by the applicant during the Staff review and public hearing process leading to the approval of this Permit, whether oral or written, which indicated the proposed structure or manner of operation are deemed conditions of approval.

2721 SHATTUCK AVENUE (VERIZON WIRELESS)          FINDINGS AND CONDITIONS
25 May 2006                                                    Page 5 of 10

6.    **Subject to all City and Other Regulations** (Section 23B.56.040)

The approved use and/or construction are subject to, and shall comply with, all applicable City Ordinances and laws and regulations of other governmental agencies.

7.    **Exercised Permit for Use Survives Vacancy of Property** (Section 23B.56.080)

Once a Permit for a use is exercised and the use is established, that use is legally recognized, even if the property becomes vacant, except as set forth in Standard Condition #8 below.

8.    **Exercise and Lapse of Permits** (Section 23B.56.100)

A.    A permit for the use of a building or a property is exercised when, if required, a valid City business license has been issued, and the permitted use has commenced on the property.

B.    A permit for the construction of a building or structure is deemed exercised when a valid City building permit, if required, is issued, and construction has lawfully commenced.

C.    A permit may be declared lapsed and of no further force and effect if it is not exercised within one year of its issuance, except that permits for construction or alteration of structures or buildings may not be declared lapsed if the permittee has (1) applied for a building permit or (2) made substantial good faith efforts to obtain a building permit and begin construction, even if a building permit has not been issued and/or construction has not begun.

## ADDITIONAL CONDITIONS

Pursuant to BMC Section 23B.32.040.D, the Zoning Adjustments Board attaches the following conditions to this Permit:

### Prior to Issuance of Any Building Permit

9.    Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall submit to the Zoning Officer for review and approval a written compliance-monitoring plan. The plan shall include:
A. Contact information for the individual empowered to manage compliance with this Use Permit. The Zoning Officer shall be notified if this information changes; and
B. Timing of deliverables (including acoustical study and reports on compliance with FCC standards) required by conditions of this Use Permit.

10.    Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall either secure a bond or provide financial assurances, in a form acceptable to the City Manager, for the removal of the facility in the event that its use is abandoned or the approval is otherwise terminated.

File:  G:\Projects by Address\Shattuck\2721\UP 05-10000033\2006-05-25 ZAB\2006-05-25 F&C.doc

11.    Prior to issuance of a building permit, the applicant shall provide the project planner with the name and telephone number of the individual empowered to manage construction noise from the project. The individual's name, telephone number, and responsibility for noise management shall be posted at the project site for the duration of construction in a location easily visible to the public. The individual shall record all noise complaints received and actions taken in response, and submit this record to the project planner upon request.

☐ Noise Management Individual _____

      Name                    Phone #

12.    Prior to issuance of a building permit, the applicant shall complete a "Construction and Demolition Recycling Plan," submit the plan to the Solid Waste Management Division for approval, and attach the approved plan to the construction drawings. The plan is available at www.ci.berkeley.ca.us/onlineservice/forms.htm#planning (look under "Land Use Planning") or by contacting Land Use Planning at 510-981-7410. After completing the form contact Solid Waste Management at 510-981-6368 for approval.

☐ City Monitor: Solid Waste Mgmt. Staff _____

      Signature                    Date

13.    Prior to issuance of a building permit, the applicant shall secure the City Traffic Engineer's approval of a construction traffic management plan. Please contact the Office of Transportation at 510-981-7010, or 1947 Center Street, 3rd floor, and ask to speak to a traffic engineer. In addition to other requirements of the Traffic Engineer, this plan shall include the locations of material and equipment storage, trailers, worker parking, a schedule of site operations that may block traffic, and provisions for traffic control. The City Zoning Officer and/or Traffic Engineer may limit off-site parking of construction-related vehicles if necessary to protect the health, safety, or convenience of the surrounding neighborhood.

☐ City Monitor: Traffic Engineer _____

      Signature                    Date

**During Construction:**

14.    Construction activity shall be limited to between the hours of 8:00 a.m. and 6:00 p.m. on Monday through Friday, and between 9:00 a.m. and noon on Saturday. No construction-related activity shall occur on Sunday.

15.    If underground utilities leading to adjacent properties are uncovered and/or broken, the contractor involved shall immediately notify the Public Works Department and the Building & Safety Division, and carry out any necessary corrective action to their satisfaction.

16.    Subject to approval of the Public Works Department, the applicant shall repair any damage to public streets and/or sidewalks by construction vehicles traveling to or from the project site.

17.    All piles of debris, soil, sand, or other loose materials shall be covered at night and during rainy weather with plastic at least one-eighth millimeter thick and secured to the ground.

18.  All active construction areas shall be watered at least twice daily, and all piles of debris, soil, sand or other loose materials shall be watered or covered.

19.  Trucks hauling debris, soil, sand, or other loose materials shall be covered or required to maintain at least two feet of board.

20.  Public streets shall be swept (preferably with water sweepers) of all visible soil material carried from the site.

**Prior to Issuance of Occupancy Permit or Final Inspection:**

21.  The project shall conform to the plans and statements in the Use Permit.

22.  All landscape, site and architectural improvements shall be completed per the attached approved drawings dated 30 March 2006 and received on 8 May 2006, except for the following changes/clarifications:
A. Any cable-trays (including for other carriers) on the eastern elevation should be grouped and run through the parapet, not over it; and
B. Condensers for air-conditioning equipment should be located on the roof to resolve issues with louvers and possible noise effects on Ward Street.

23.  The applicant shall provide signage identifying the name and phone number of a party to contact in event of an emergency. The design, materials, colors, and location of signs shall be subject to design review.

**At All Times:**

24.  Within two (2) months of the final building inspection for the facility the applicant shall submit to the Zoning Officer a written acoustical study demonstrating compliance with the Berkeley Community Noise Ordinance (BMC Chapter 13.40). The applicant shall be responsible for paying all costs (including City staff time) associated with completing the acoustical study and for third party review if required.

25.  The mitigations recommended by William F. Hammett, registered engineer, in the 10 May 2006 (and any subsequent engineering recommendations) evaluation of the facility for radio frequency fields shall be implemented, including:
A. There shall be no access within eight feet in front of the antennas while the site is in operation, unless other measures can be demonstrated to ensure that occupational protection requirements are met.
B. Warning signs shall be posted at roof access location(s) and at the antennas such that the sings are readily visible from any angle of approach. The signs shall comply with ANSI C95.2 color, symbol and content conventions. Contact information should be provided on the sign (e.g. a telephone number) to arrange for access to restricted areas.

26.  The applicant shall allow future co-location on the subject property subject to a determination of feasibility and the property owner's consent.

File: G:\Projects by Address\Shattuck\2721\UP 05-10000033\2006-05-25 ZAB\2006-05-25 F&C.doc

27.  Future changes to or replacement of the wireless equipment shall be permitted through issuance of a Zoning Certificate, rather than a Modification of the Use Permit, so long as the proposed changes are not detrimental, comply with performance standards within this Use Permit (e.g. noise, levels, RF standards, and visual appearance) and fit within the designated equipment area

28.  The wireless telecommunications facility and related equipment, including lighting, fences, shields, cabinets, and poles, shall be maintained in good repair, free from trash, debris, litter and graffiti and other forms of vandalism, and any damage from any cause shall be repaired as soon as reasonably possible so as to minimize occurrences of dangerous conditions or visual blight.  Graffiti shall be removed from any facility or equipment as soon as practicable, and in no instance more than forty-eight (48) hours from the time of notification by the city.

29.  The wireless telecommunications facility shall be operated in a manner that will minimize noise impacts to surrounding residents and persons using nearby parks, trails, and similar recreation areas.  Except for emergency repairs, testing and maintenance activities that will be audible beyond the property line shall only occur between the hours of 8:00 am and 7 pm on Monday through Friday, excluding holidays.   All air conditioning units and any other equipment that may emit noise that would be audible from beyond the property line shall be enclosed or equipped with noise attenuation devices.  Backup generators shall only be operated during periods of power outages or for testing.  At no time shall equipment noise from any source exceed the standards specified in the Berkeley Community Noise Ordinance (BMC Chapter 13.40).

30.  The exterior walls and roof covering of all aboveground equipment shelters and cabinets shall be constructed of materials rated as nonflammable in the Uniform Building Code.

31.  Openings in all aboveground equipment shelters and cabinets shall be protected against penetration by fire and windblown embers to the extent feasible.

32.  Material used as supports for antennas shall be fire resistant, termite proof, and subject to all applicable requirements of the Uniform Building Code.

33.  All portions of the facility shall be anchored so that an earthquake does not dislodge them or tip them over. All equipment mounting racks and attached equipment shall be anchored so that a quake would not tip them over, throw equipment off its shelves, or otherwise damage equipment.

34.  All connections between various components of the wireless telecommunications facility and necessary power and telephone lines shall, to the extent feasible, be protected against damage by fire, flooding, and earthquake.   Reasonable measures shall be taken to keep wireless telecommunication facilities in operation in the event of a natural disaster.

35.  Routine maintenance and repairs shall be limited to 8 a.m. to 7 p.m. Monday through Friday, excluding holidays.

36.  No wireless telecommunications facility or combination of facilities shall at any time produce power densities that exceed the FCC's limits for electric and magnetic field strength and power density for transmitters. In order to ensure continuing compliance with all applicable emission

standards, all wireless telecommunications facilities shall be reviewed by an approved engineer in accord with the schedule and procedures set forth in Section 23C.17.090. All reasonable costs of such inspections shall be born by the owner or operator of the facility. The City may require, at the operator's expense, independent verification of the results of any analysis. If an operator of a telecommunications facility fails to supply the required reports or fails to correct a violation of the Federal Communications Commission standard following notification, the Use Permit is subject to modification or revocation by the Zoning Adjustments Board following a public hearing.

37.    Within forty five (45) days of initial operation or modification of a telecommunications facility, the operator of each telecommunications antenna shall submit to the Zoning Officer written certification by an approved engineer that the facility's radio frequency emissions are in compliance with the approved application and any required conditions. The engineer shall measure the radio frequency radiation of the approved facility and determine if it meets the FCC requirements of the A report of these measurements and the engineer's findings with respect to compliance with the FCC's MPE limits shall be submitted to the Zoning Officer. If the report shows that the facility does not comply with applicable FCC requirements, the owner or operator shall cease operation of the facility until the facility complies with, or has been modified to comply with, this standard. Proof of compliance shall be a certification provided by the engineer who prepared the original report. In order to assure the objectivity of the analysis, the City may require, at the applicant's expense, independent verification of the results of the analysis.

38.    Once every two (2) years, the City shall retain, at the operator's expense, an approved engineer to conduct an unannounced spot check of the facility's compliance with applicable FCC radio frequency standards.

39.    In the event of a change in the FCC's Maximum Permissible Exposure (MPE) limits for electric and magnetic field strength and power density for transmitters, the operator of the facility shall be required to submit to the Zoning Officer written certification by an approved engineer of compliance with applicable FCC radio frequency standards within 90 days of any change in applicable FCC radio frequency standards or of any modification of the facility requiring a new submission to the FCC to determine compliance with emission standards. If calculated levels exceed 50% of the FCC's MPE limits, the operator of the facility shall hire an approved engineer to measure the actual exposure levels. If calculated levels are not in compliance with the FCC's MPE limit, the operator shall cease operation of the facility until the facility is brought into compliance with the FCC's standards and all other applicable requirements. A report of these calculations, required measurements, if any, and the engineer's findings with respect to compliance with current MPE limits shall be submitted to the Zoning Officer.

40.    If the Zoning Officer at any time finds that there is good cause to believe that a telecommunications antenna is not in compliance with applicable FCC radio frequency standards, he/she may require the operator to submit written certification that the facility is in compliance with such FCC standards.

File:  G:\Projects by Address\Shattuck\2721\UP 05-10000033\2006-05-25 ZAB\2006-05-25 F&C.doc

41. Within thirty (30) days of cessation of operations of any wireless telecommunications facility approved pursuant to this chapter, the operator shall notify the Zoning Officer in writing. The permit for said wireless telecommunications facility shall be deemed lapsed and of no further effect six (6) months thereafter unless:
    A. The Zoning Officer has determined that the same operator resumed operation within six (6) months of the notice; or
    B. The City has received an application to transfer the permit to another operator.

42. No later than thirty (30) days after a permit has lapsed under the preceding subsection, the operator shall remove all wireless telecommunication facilities from the site. If the operator fails to do, the property owner shall be responsible for removal, and may use any bond or other assurances provided by the operator pursuant to the requirements of Section 23C.17.050 to do so. If such facilities are not removed, the site shall be deemed to be a nuisance pursuant to Section 23B.64 and the City may call the bond to pay for removal.

43. Failure to inform the Zoning Officer of cessation of operations of any existing facility shall constitute a violation of the Zoning Ordinance and be grounds for:
    A. Prosecution;
    B. Revocation or modification of the permit:
    C. Calling of any bond or assurance secured by the operator pursuant to the requirements of Section 23C.17.050; and/or
    D. Removal of the facilities.

44. Prior to selling or leasing the facility to another carrier, the existing operator shall provide written notification to the Zoning Officer. The carrier that is buying or leasing the facility shall also provide written notification to the Zoning Officer and request a transfer of the existing Use Permit. The Zoning Officer may require submission of any supporting materials or documentation necessary to determine that the proposed use is in compliance with the existing Use Permit and all of its conditions including, but not limited to, statements, photographs, plans, drawings, models, and analysis by a State-licensed radio frequency engineer demonstrating compliance with all applicable regulations and standards of the Federal Communications Commission and the California Public Utilities Commission. If the Zoning Officer determines that the proposed operation is not consistent with the existing Use Permit, he/she shall notify the applicant who may revise the application or apply for modification to the Use Permit pursuant to the requirements of Section 23B.56.

45. The applicant shall be responsible for paying all costs (including City staff time) associated with monitoring and/or enforcement of the above conditions. Fees shall be based on the adopted City fee schedule in place at the time the work is performed or action is taken.