# EXHIBIT K



# ZONING ADJUSTMENTS BOARD
## STAFF REPORT

FOR BOARD ACTION
JANUARY 25, 2007

# 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless;** (C-SA, South Area Commercial District, C. Wolf)

## I.    Application Basics

### A. Zoning Permits Required:

- Use Permit to construct a new wireless telecommunications facility (not co-located with an existing facility), under BMC Section 23C.17.100.C
- Use Permit to construct a wireless telecommunications facility in the South Area Commercial (C-SA) District, under BMC Section 23E.52.030

### B. CEQA Determination: Categorically exempt pursuant to Section 15301 (Existing Facilities) of the CEQA Guidelines.

### C. Parties Involved:

| | |
|---|---|
| Applicant | Verizon Wireless, C/o Mr. James Singleton, Cal Com Systems, Inc, 2001 Omega Road, Suite 100, San Ramon, CA 94583 |
| Property Owner | R & L Bernstein, LLC, 1201 Woodview Terrace, Los Altos, CA 94024 |

2120 Milvia Street, Berkeley, CA  94704   Tel: 510.981.7410   TDD: 510.981.7474   Fax: 510.981.7420   E-mail: zab@ci.berkeley.ca.us

- 138 -

2721 SHATTUCK AVENUE (VERIZON WIRELESS)
Page 2 of 16

**Figure 1: Vicinity Map**



ZONING ADJUSTMENTS BOARD
January 25, 2007

2721 SHATTUCK AVENUE

**Figure 2: Site Plan**



2721 SHATTUCK AVENUE (VERIZON WIRELESS)
Page 4 of 16
ZONING A
January 25, 2007

## Table 1:  Land Use Information

| Subject Property | | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
|---|---|---|---|---|
| Surrounding Properties | North | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | South | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | East | Residential | R-2 (Restricted Two-Family Residential) | Low Medium Density Residential |
| | West | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |

## Table 2:  Special Characteristics

| Alcohol Sales/Service | No | |
|---|---|---|
| Creeks | No | |
| Density Bonus | No | |
| Historic Resources | No | |
| Inclusionary Housing | No | |
| Oak Trees | No | |
| Seismic Hazard Zone | No | |

## Table 3:  Project Chronology

| | |
|---|---|
| March 8, 2005 | Application submitted |
| April 7, 2005 | Application deemed complete |
| N/A | CEQA deadline[1] |
| June 6, 2005 | PSA deadline[2] |
| July 21, 2005 | DRC |
| May 11, 2006 | Public hearing notices mailed/posted |
| May 25, 2006 | ZAB hearing – Approved |
| June 19, 2006 | ZAB decision appealed to the City Council |
| September 26, 2006 | City Council remanded project to the ZAB |
| December 22, 2006 | Public hearing notices mailed/posted |
| January 11, 2007 | ZAB hearing – project continued to ZAB meeting on January 25, 2007 |
| January 25, 2007 | ZAB hearing |
| January 27, 2007 | Deadline for ZAB action |

1.  Negative declaration must be adopted within 180 days after application is deemed complete, EIR within 365 days (CEQA Guidelines, Article 8).
2.  Project must be approved or denied within 60 days after being deemed complete if exempt from CEQA, or 60 days after adoption of a negative declaration, or 180 days after adoption of an EIR (Govt. Code Section 65950).

ZONING ADJUSTMENTS BOARD                    2721 SHATTUCK AVENUE
January 25, 2007

## II.  Background

On May 25, 2006, the Zoning Adjustments Board held a public hearing and approved (8-0-1-0; Abstain: Shumer) Use Permit #05-10000033 to construct a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless. This decision was appealed to the City Council on June 19, 2006 by a neighbor located at 2121 Ward Street, Berkeley, on behalf of the "Ward Street Neighbors" (see Attachment 11). On September 26, 2006 the City Council considered the appeal and remanded Use Permit #05-10000033 to the Zoning Adjustments Board to:

"…reconsider the project (including a third-party engineering review), determine parking and loading requirements for the existing legal uses of the site, and consider allegations of illegal uses and work without permits" (see Attachment 12).

The Zoning Adjustments Board has 90 days to act on the City Council's remand pursuant to Section 23B.32.070 of the Berkeley Municipal Code. This deadline cannot be extended even with the applicant's agreement. The deadline for Zoning Adjustments Board action is January 27, 2007 since the Council recess period does not count towards the 90 day limit.

## III.   Project Setting

### A.  Neighborhood/Area Description:
The site is located on the southern end of the Shattuck Avenue commercial corridor. Lots to the east of the site are used for residential purposes. Information on existing land use is included in Table 1 of this report, above.

### B.  Site Conditions:
The project site is located on the north-eastern corner of Shattuck Avenue and Ward Street. A four-story building is erected on the project site. The building is used for a moving and mini-storage warehouse.

## IV.  Project Description

The proposal involves four main elements:
1.  Five (5) antennas at three (3) locations on the northern and eastern facades of the building. Antennas will be mounted flush to the top of the existing wall of the building, without protruding above the existing building height of 58 feet;
2.  Two (2) GPS antennas on the parapet of the eastern side of the building, adjacent to the cable tray;
3.  Equipment at ground level in a 15.25 foot by 25.75 foot enclosed lease area; and
4.  A plug for an emergency backup generator on the northern side of the building;
5.  Air-conditioning equipment on the roof of the building behind the existing parapet wall.

Another carrier (Nextel Communications) is also proposing to establish a new wireless telecommunications facility on the same site (UP#04-10000068 relates).

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 ZAB Staff Report.doc

2721 SHATTUCK AVENUE (VERIZON WIRELESS)
Page 6 of 16

January 25, 2007

## V.  Community Discussion

### A.  Neighbor/Community Concerns:

Public Hearing Notices were mailed on May 11, 2006 for the Zoning Adjustments Board meeting on May 25, 2006.  Public Hearing Notices were mailed on December 22, 2006 for the Zoning Adjustments Board consideration of the City Council remand.  These notices were mailed to owners and occupants within 300 feet of the project site.

A copy of the appeal submitted on June 19, 2006 (see Attachment 11), and all correspondence received from the public in relation to this project prior to January 10, 2007 (see Attachment 12) are attached to this report.  The issues outlined in the appeal and other correspondence is addressed in the Key Issues section of this report, below.

### B.  Committee Review:

The Design Review Committee reviewed the project on July 21, 2005.  The Design Review Committee granted preliminary approved subject to the following conditions:

1.  Coax cable should be routed internally instead of in a cable-tray on the exterior of the eastern elevation unless documentation is supplied to the Zoning Adjustments Board indicating that this design option cannot be reasonably achieved;
2.  If cabling remains on the eastern elevation as proposed, any cable-trays (including for other carriers) should be grouped and run through the parapet, not over it; and
3.  Condensers for air-conditioning equipment should be located on the roof to resolve issues with louvers and possible noise effects on Ward Street.

Routing of the coax cable is discussed in the Key Issues section of this report, below.  The applicant has agreed to the other changes to the project requested by the Design Review Committee.  Staff recommends that a condition be added to any approval given for the project reflecting these changes to the project (refer to Condition 22 in Attachment 1).

No further committee review of this application is required.

## VI.  Issues and Analysis

### A.  Key Issues:

**Issue: Public safety**
Some neighbors have expressed concern about potential effects of the proposed wireless telecommunications facility on human health and have indicated that it should not be placed near a residential neighborhood.  They have referred to the ongoing controversy surrounding wireless telecommunications facilities and to studies conflicting with the Federal Communication Commission's (FCC) regulations.

Federal law that preempts local governments from regulating wireless telecommunications facilities based on concerns about the human health effects of radio frequency (RF) emissions.  The City Attorney advises that local governments are prohibited under Section 704 of the Telecommunications Act of 1996 (47 U.S.C. §332(c)) from regulating proposed wireless service facilities on the basis of the environmental effects of radio frequency (RF) emissions providing the facilities

ZONING ADJUSTMENTS BOARD                    2721 SHATTUCK A'
January 25, 2007

comply with current Federal Communication Commission's regulations (see Attachment 15). For this reason the Zoning Adjustments Board may not consider this testimony or base its action on concerns about the human health effects of radio frequency (RF) emissions.

The City Attorney's report also summarizes legal cases relating to this issue. Neighbors have suggested that a recent U.S. Supreme Court decision increases the City's leeway to regulate on the basis of concerns about the human health effects of radio frequency (RF) emissions. The City Attorney's opinion indicates that this is incorrect. In City of Rancho Palos Verdes v. Abrams (2005) 544 U.S. 113, 161 L.Ed.2d 316, 125 S.Ct. 1453, the Court merely held that a violation of the Telecommunications Act of 1996 did not constitute a denial of civil rights under 42 U.S.C. § 1983 for which damages and attorneys' fees were available. It did not give local governments any greater substantive powers under the Telecommunications Act of 1996, and in fact arose out a case in which a city's denial of a Use Permit was invalidated under Section 332.

The limitations of the Telecommunications Act of 1996 are reflected in the wireless telecommunication facility provisions of the Berkeley Municipal Code, which does not prohibit the establishment of facilities adjacent to residential neighborhoods in Berkeley but requires applicants to demonstrate compliance with current Federal Communication Commission's regulations.

The applicant provided a report prepared by an electrical engineer (Hammett & Edison, Inc.) registered with the State of California as required by Berkeley Municipal Code Section 23C.17.040.F (see Attachment 5). The report indicates that the public would be exposed to radio frequency (RF) levels well below the applicable public exposure limits and that the proposed facility would comply with Federal Communication Commission guidelines. The simultaneous operation of facilities proposed by Verizon Wireless and Nextel Communications, as well as a facility being considered by T-Mobile would result in a maximum cumulative level of 2.6% of the public safety standard of 0.58 mW/cm$^2$. Mitigation measures are recommended to prevent occupational exposures that might occur during such activities as building maintenance. The report recommends that explanatory warning signs be posted to prevent access within eight (8) feet of the antennas.

Residents have also expressed human health concerns about the potential cumulative effects of wireless telecommunications facilities located throughout the South Berkeley area. Staff asked Hammett & Edison to evaluate if other nearby wireless telecommunications facilities would cumulatively exceed the Federal Communication Commission's public exposure limits. Hammett & Edison reported that other wireless telecommunication facilities are located too far away to have a significant additive effect and that public exposure limits would not be exceeded (see Attachment 16).

Hammett & Edison also evaluated the potential affect of the wireless facilities proposed at the project site on future occupants of the mixed-use building proposed at

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 ZAB Staff Report.doc

2701 Shattuck Avenue, which is located to the north of the site. The maximum
calculated level at the proposed mixed-use building would be 74% of the public
exposure limit (cumulative level of facilities proposed by Verizon, Sprint Nextel, and
T-Mobile). Since a blank wall is proposed facing the wireless telecommunications
facility at 2721 Shattuck Avenue, an attenuation factor of at least 10 times would apply
for exposure conditions inside the building, resulting in a maximum of 7.4% of the
public exposure limit.

**Issue: Moratorium**
Neighbors have suggested that a moratorium should be declared on new wireless
telecommunications facilities while government agencies consider issues such as
potential effects on human health. The City Council would need to pass such a
moratorium. The Council previously declared a moratorium in December 2000 by an
urgency ordinance that was extended through December 31, 2001. During that
moratorium Staff drafted a more comprehensive local ordinance regulating wireless
telecommunication facilities. In November 2001, the Planning Commission
recommended approval of the ordinance with various amendments. The Council
adopted that ordinance in December 2001, and it is codified as Chapter 23C.17 of the
Berkeley Municipal Code. There is no basis for a second moratorium, especially to
consider human health effects of radio frequency (RF) emissions from wireless
telecommunications facilities, which the City is preempted from considering (as
discussed in section on public safety above).

**Issue: Effects on trees**
An objector to the project was also concerned about potential negative effects of radio
frequency (RF) emissions from wireless telecommunications facilities on nearby trees.
However, as discussed in the section on public safety above, the City is preempted
from considering the effects of radio frequency (RF) emissions from wireless
telecommunications facilities.

**Issue: Third-party engineering review**
Neighbors questioned the Zoning Adjustments Board finding that the facility was
"necessary" for Verizon Wireless to provide personal wireless services pursuant to
Section 23C.17.100.D of the Berkeley Municipal Code. This Section of the Code
provides that a proposed project must be "...*necessary for the provision of personal
wireless services to Berkeley residents and businesses, or their owners, customers,
guests, or invitees, or other persons traveling in or about the City*" and that without the
facility "*...the operator will be unable to provide personal wireless services to its
customers in the proposed coverage area*". Neighbors requested that third party
engineering review be carried out pursuant to Section 23C.17.040.M of the Berkeley
Municipal Code to verify the applicant's representations relating to their need for the
facility. The City Council's remand included a request for this review to be carried
out.

The City has a contract with RCC Consultants, Inc. to undertake third party
engineering review of proposed wireless telecommunications facilities on an as needed
basis. RCC Consultants was engaged by the City to review supplemental material
provided by Verizon Wireless (see Attachment 13). Some of the information provided

ZONING ADJUSTMENTS BOARD                    2721 SHATTUCK AVENUE
January 25, 2007

was proprietary and confidential and was provided directly to RCC Consultants in
accordance with Section 3C.17.100.M of the Berkeley Municipal Code.

RCC Consultants prepared a report outlining their findings (see Attachment 14), which
include:

1. Verizon Wireless stated that the site was necessary to provide adequate capacity
   and that it would also improve in-building coverage and enhance outside
   coverage;
2. RCC Consultants reviewed information provided by Verizon Wireless
   including the location of existing sites; dropped call data; coverage plots;
   capacity analysis; and cellular message unit capacity analysis (some of this data
   was proprietary and confidential);
3. There has been a high increase in dropped calls on the south end of the
   University of California Berkeley campus and north and west of 2721 Shattuck
   Avenue;
4. Existing Verizon Wireless facilities in this area (Berkeley_DT or Site 2, and
   UC Berkeley East or Site 3) that are capable of providing coverage to the area
   are being upgraded to provide additional capacity. However, these upgrades
   would only provide capacity until about the first quarter of 2008 or sooner;
5. Other existing Verizon Wireless facilities are either too far away to improve the
   capacity in the area, or would interfere with many sites well beyond the
   Berkeley area and degrade service by causing increased interference if
   redirected to increase capacity in the area; and
6. The proposed facility at 2721 Shattuck Avenue is necessary to provide adequate
   capacity for Verizon Wireless and would also improve in-building coverage
   and enhance outside coverage.

**Issue: Co-location**
The applicant stated that there is no suitable existing wireless telecommunications
facility in the area where the proposed wireless telecommunications facility could be
added (or "co-located"). New facilities that are not co-located may be permitted with a
Use Permit provided that the Zoning Adjustments Board finds that co-location:

1. Is not feasible;
2. Would have more significant adverse effects on views or other environmental
   considerations;
3. Is not permitted by the property owner;
4. Would impair the quality of service to the existing facility; or
5. Would require existing facilities at the same location to go off-line for a
   significant period of time (see Berkeley Municipal Code Section
   23C.17.100.F).

Verizon Wireless stated that co-location with an existing site was not feasible and that this
site was selected for the following reasons:

1. Co-location with existing facilities is not feasible since there are no existing
   wireless facilities in the vicinity that would satisfy the carrier's coverage and
   capacity needs;

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 ZAB Staff Report.doc

2.  Other locations (without existing wireless facilities) in the vicinity of the site
    were not suitable, including the fire station on Shattuck Avenue;
3.  Another carrier (Nextel Communications) is proposing to establish a new
    wireless telecommunications facility on the same site (UP#04-10000068
    relates), which would establish a co-location site;
4.  The building on the site is five stories high and the facility would provide
    coverage in the needed area; and
5.  The building has architecture suitable to screen antennas, and equipment area
    inside a building to mitigate the potential noise or visual effects to surrounding
    residential and commercial areas.

The applicant has provided a statement that it will cooperate with any future co-
location requests to the extent they are feasible.

**Issue: Noise**
Equipment cabinets supporting wireless antennas can generate noise exceeding the
limits of the City's Noise Ordinance outlined in Chapter 13.40 of the Berkeley
Municipal Code. For this reason the City engaged an acoustical consultant to study the
project (see Attachment 8). In this case the most likely source of audible noise would
be the air-conditioning equipment that is proposed on the roof of the building. The
findings of the acoustical study indicate that this equipment would not exceed the
daytime and nighttime exterior noise limits specified in the City's Noise Ordinance
(either the commercial limits or the residential limits that apply at the eastern property
line). Therefore, the proposed equipment would not have any significant noise affects.

**Issue: Visibility**
Under Berkeley Municipal Code Section 23C.17.100.B the Zoning Adjustments Board
must make a finding that the facility will either: (1) not be readily visible; or (2) that it
is not feasible to incorporate additional measures that would make the facility not
readily visible. Readily visible is defined in Berkeley Municipal Code Section
23F.04.010 as:

> "A wireless telecommunications facility is readily visible if it can be seen from
> street level or from the main living area of a legal residence in a residential district
> or from a public park by a person with normal vision, and distinguished as an
> antenna or other component of a wireless telecommunication facility, due to the
> fact that it stands out as a prominent feature of the landscape, protrudes above or
> out from the building or structure ridgeline, or is otherwise not sufficiently
> camouflaged or designed to be compatible with the appurtenant architecture or
> building materials. For purposes of this definition, "main living area" means the
> living and dining and similar areas of a dwelling, but not bedrooms, bathrooms or
> similar areas."

The Design Review Committee reviewed the design of the project and gave
preliminary approval subject to conditions (see Section IV.B of this report). The
Design Review Committee requested that the coax cable be routed internally instead of
in a cable-tray on the exterior of the eastern elevation unless documentation was
supplied to the Zoning Adjustments Board indicating that this design option could not
be reasonably achieved. The applicant has provided a letter (see Attachment 9)

ZONING ADJUSTMENTS BOARD                    2721 SHATTUCK AVENUE (
January 25, 2007

indicating that the coax cable cannot reasonably be routed internally for the following
reasons: .
1. An abandoned chimney, the egress staircase and the elevator shaft are not
   suitable to use to route the coax cable through;
2. There are no clear opportunities for a vertical corridor since the floors of the
   building are completely used for storage and the storage spaces are not
   consistent in size from one floor to the next; and
3. If the coax cable is routed internally it will need to penetrate the concrete floors
   of the five-story building and a one-hour fire rating will be required to enclose
   it. The outside dimensions of the coax shaft would be approximately 4.25 feet
   by 5.25 feet to accommodate the two carriers that propose to use the building.

The design incorporates a number of features to ensure that the facility would be
compatible with the existing building and would not be "readily visible" (see photo
simulations Attachment 6), including:
1. Cabling would be routed internally where possible. Exposed coaxial cable
   would be white or match the building color;
2. Cable-trays would run vertically up the east elevation of the building and
   through the parapet. They would be painted to match the building, and would
   be grouped with the installation proposed by Nextel Communications;
3. Antennas would be positioned on the northern and eastern walls of the building
   to avoid locating them on the southern and western sides of the building, which
   are more visible and architecturally significant. The antennas would be flush-
   mounted, which would be less visible than bulky housing on an exterior wall
   that has no fenestration or other articulation;
4. Air-conditioning equipment would be on the roof of the building behind an
   existing parapet wall; and
5. Other equipment would be located within the existing building in a ground
   level lease area.

**Issue: Parking and loading requirements**
Prior to the City Council meeting on September 26, 2006 neighbors submitted a letter
alleging that required parking for the moving and mini-storage building on the site, as
well as signs on the Ward Street side of the building that advised customers not to off-
load their vehicles in the street, had been illegally removed. Neighbors indicated that
two (2) off-street parking spaces were required inside the building and that the parking
lot to the north was required for the use of the building. Nextel Communications
proposes to use one (1) of these two (2) off-street parking spaces within the building
for wireless equipment storage.

Staff researched these issues prior to the Zoning Adjustments Board meeting on May
25, 2006 and concluded that the lot to the north was not required for off-street parking
and that only one (1) parking space was required in the building for off-street
parking/loading. Verizon Wireless or Nextel Communications were not proposing to
use this parking space for wireless equipment storage. Since the use of the building for
moving and mini-storage predates the Zoning Ordinance there are no Use Permits that

Case 4:07-cv-04034-WDB    Document 8-12    Filed 10/02/2007    Page 13 of 29

ATTACHMENT 2
ADMINISTRATIVE RECORD
Page 106 of 393

2721 SHATTUCK AVENUE (VERIZON WIRELESS)                    ZONING ADJUST
Page 12 of 16

provide a clear indication of what areas are required for parking/loading (a warehouse was first established about 1922 with Building Permits).

In response to the letter from neighbors Staff re-examined the building permit records and the zoning certificates that have subsequently been issued for minor alterations to the use/building. Staff now concludes that the parking lot to the north is not legally required for parking for the building as initially thought; however, it appears that a second space in the building should be maintained for off-street parking. This would not affect Verizon Wireless' proposed wireless equipment storage area. However, Nextel Communications would need to find an alternative location within the building for their equipment. Staff recommends that a condition be attached to any approval of this project (as well as the project for Nextel Communications) requiring off-street parking to be maintained in the building and for the applicants to obtain approval from the Zoning Officer for any changes in the proposed location of wireless equipment storage areas (see Condition 22.C in Attachment 1). Staff does not believe that changes to this aspect of either project would need to be reviewed by the Zoning Adjustments Board, since they would not involve changes to the wireless antennas or significant changes to the building.

Staff relied on the following documents/interpretations in reaching the above conclusion related to required off-street parking (see Attachment 17):

1. The Finance Department's 1976 Land Use Detail Map indicates the lot to the north of the buildings is vacant;

2. A letter dated July 25, 1988 from a Staff person in the Finance Department indicating the lot to the north of the building is coded "83" for parking lot;

3. In April 1986 Zoning Certificate #6370 was issued for interior alterations and to add more self-storage compartments. The description on the application form indicates that three (3) parking spaces would be located in the building and that seven (7) parking spaces would be located at the front and side of the building. A plan was submitted depicting three (3) parking spaces within the building and seven (7) parking spaces on-street (on Ward Street and Shattuck Avenue). The seven (7) on-street parking spaces would not be required parking spaces since they are in the public right of way;

4. In July 1988 Zoning Certificate #8585 was issued to install a sprinkler system and mini-storage in the second building on the site (previously used for bulk storage). The application form indicates that there was no parking lot and that two (2) parking spaces were located off-street. A plan was submitted depicting two parking (2) spaces within the building. The plan and the application notes curb cuts that were to be eliminated on Ward Street (including a curb cut in front of one (1) of the three (3) parking spaces depicted in the building in Zoning Certificate #6370 in April 1986;

5. In November 1991 Temporary Variance #1394 was issued for Christmas Tree Sales on the lot to the north of the building. The staff report indicates that the paved lot adjacent to Bekins Self Storage Warehouse "...has not been used for required off-street parking";

6. Building floor plans submitted to the City's Building and Safety Division in February 1992 identified one (1) off-street parking space within the building.

ZONING ADJUSTMENTS BOARD                      2721 SHATTUCK AV
January 25, 2007

The two (2) other spaces previously used for off-street parking appear to have
been allocated for storage;

7. A letter from City Code Compliance Officer David Smith dated December 28,
1995 indicating that off-loading of vehicles on Ward Street is prohibited and
that off-loading should take place within the building or on the parking lot north
of the building. However, no permits or Berkeley Municipal Code provisions
are referenced in the letter to support these conclusions;

8. In March 1996 Zoning Certificate #Z9073 was issued to add post office boxes
within the building. The application form indicated there was a parking lot for
customers but did not specify the location or number of parking spaces. Staff
does not believe this could be used to require the parking lot to the north to be
used for the building since it is not specific and is not related to the use of the
building for moving and mini-storage;

9. A letter from the previous property owner (Guardsman Storage Associates)
dated September 12, 2005 indicating that when they purchased the building in
about 1988 one (1) off-street parking space was located within the building.
The two (2) other spaces previously used for off-street parking were used for
storage.

Based on these documents Staff believes there is no legal basis for requiring that the
parking lot to the north of the building be used for parking for the moving and mini-
storage use. Although three (3) off-street parking spaces in the building were depicted
in plans submitted for Zoning Certificate #6370 issued in April 1986, one (1) space
appears to have been removed and instructions given to remove a curb cut in front of it
in July 1988. Correspondence after these dates in some cases refers to only one (1)
parking space within the building; however, these submittals do not change what
parking should legally be maintained.

**Issue: Parking on Ward Street**
Neighbors complained that customers of the moving and mini-storage business are
parking their vehicles on Ward Street and un-loading/loading their storage articles.
They also alleged that the new property owner removed signs on the outside of the
Ward Street side of the buildings instructing customers not to do this. Neighbors have
referred to a letter from City Code Compliance Officer David Smith dated December
28, 1995, indicating that off-loading of vehicles on Ward Street is prohibited and that
off-loading should take place within the building or on the parking lot north of the
building. However, no permits or Berkeley Municipal Code provisions are referenced
in the letter to support these statements. Staff believes they are legally invalid for the
reasons described in the section on parking and loading above.

In this instance employees and customers of the moving and mini-storage business are
entitled to park in the public right of way in accordance with other relevant City codes.
There is no Use Permit applying to the use of the site, thus there are no conditions
requiring instructional signs relating to parking for the use. However, as indicated in
the section above, two (2) off-street parking spaces within the building appear to be
required for use of the moving and mini-storage use.

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 ZAB Staff Report.doc

**Issue: Illegal uses**
A "pod" (location) for one (1) City CarShare vehicle has been established in the
parking lot to the north of the buildings at 2721 Shattuck Avenue. A Toyota Tacoma
truck is currently located at the pod, partly to take advantage of the adjacent moving
and mini-storage business. Neighbors have argued that this use constitutes Automobile
Rental, which is a prohibited use in the South Area Commercial (C-SA) District. The
City's practice has not been to treat pods for City CarShare vehicles as an Automobile
Rental use, and instead have treated them like any parked vehicle within an existing
parking area. Pods have been established throughout the City of Berkeley (including
adjacent to City Hall) on this basis. This use is significantly different to a primary use
of property for an Automobile Rental use such as Hertz, Avis or Budget car rentals.

**Issue: Illegal building work**
Neighbors have also alleged that building work has been carried out illegally at the
project site, including electrical work for the wireless telecommunications facilities.
Building and Safety Division Staff have investigated many complaints from neighbors
and have found that work on the project site is being carried out in accordance with
approved building permits. This work is not for the proposed wireless
telecommunications facilities and primarily relates to improvements being made to the
building entrance and to a new elevator being added within the building. This work is
primarily under Building Permit #05-5078 which was applied for on December 5, 2005
and issued on April 20, 2006. Other work is being carried out under miscellaneous
Fire and Public Works permits have also been issued for the project site.

**Issue: Commercial use of Ward Street**
Neighbors also argued that existing Use Permits issued for the site and for nearby uses
(e.g. Kirala, Any Mountain) do not permit the commercial use of their Ward Street
frontages. Staff assumes that this means entrances/exits and other activity areas
associated with these businesses. They requested that proposed wireless
telecommunications equipment be relocated to the northern or western sides of the
building. As indicated above, City Staff researched the zoning history for the site and
found that there are no Use Permits for the moving and mini-storage use since it
predates the Zoning Ordinance. Zoning Certificates were subsequently issued for
alterations to the use and the building; however these Zoning Certificates do not
prohibit the commercial use of Ward Street. The proposed use of part of the existing
building adjacent to Ward Street for wireless telecommunications equipment (except
for the area required for off-street parking as detailed above) is appropriate for the
following reasons:
1. Customers do not access the wireless telecommunications facility, only
technicians come to undertake periodic maintenance;
2. The applicant revised the proposal to relocate condensers for air-conditioning
equipment on the roof of the building to resolve issues with louvers and
possible noise effects on Ward Street;
3. It appears that Ward Street was historically used by customers to load and
unload their storage items;
4. The entire site, including the portion of the lot fronting Ward Street, is included
in the C-SA District; and

ZONING ADJUSTMENTS BOARD                2721 SHATTUCK AVENU
January 25, 2007

5.  Use Permits issued for other nearby uses such as Kirala and Any Mountain do not appear relevant to this case.

**Summary of key issues**
Based on the applicant's submittals and the report by a third-party engineer engaged by the City, Staff believes the proposed wireless telecommunications facility is necessary to enhance Verizon's wireless connectivity in the area. Federal law preempts the City from considering public health grounds if it complies with applicable Federal Communication Commission regulations. A report prepared by a registered electrical engineer evaluating the radio frequency (RF) levels that would be associated with the project concludes that it would comply with these public exposure limits and regulations. The City also engaged an acoustical consultant that found that the wireless telecommunications equipment would comply with the City's Community Noise Ordinance. The project is also designed so that it would not be readily visible and was preliminarily approved by the Design Review Commission. Other allegations raised by neighbors relating to such issues as required parking/loading, illegal building work and use of the existing site do not appear founded, except that one (1) additional parking space (over what was previously understood by City Staff) should be required within the building.

B.  **General and Area Plan Consistency:**

1.  **South Shattuck Strategic Plan**
    The site is included in the South Shattuck Strategic Plan area. There are no provisions of the plan that are relevant to this project.

2.  **General Plan**
    The proposal is consistent with the General Plan, including:

    a.  **Policy LU-7 Neighborhood Quality of Life, Action A:** Require that new development be consistent with zoning standards and compatible with the scale, historic character, and surrounding uses in the area.

        **Staff Analysis:** The proposal is consistent with the relevant zoning standards, which require that need for the wireless telecommunications facility be demonstrated and that the facility not be readily visible and not result in negative effects on public health (see Section V.A of this report).

    b.  **Policy UD-24 Area Character:** Regulate new construction and alterations to ensure that they are truly compatible with and, where feasible, reinforce the desirable design characteristics of the particular area they are in.

        **Staff Analysis:** The proposed design incorporates reasonable measures to reduce the visibility of the facility (see Section V.A of this report). The design was reviewed and given preliminary approval by the DRC subject to conditions (see Section IV.B of this report).

File:  G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000003\2007-01-25 ZAB\2007-01-25 ZAB Staff Report.doc

2721 SHATTUCK AVENUE (VERIZON WIRELESS)                    ZONING ADJ
Page 16 of 16

## VII. Recommendation

Because of the project's consistency with the Zoning Ordinance and General Plan, and minimal impact on surrounding properties, Staff recommends that the Zoning Adjustments Board:

A.  APPROVE Use Permit #05-10000033 pursuant to BMC Section 23B.32.040 subject to the attached Findings and Conditions (see Attachment 1).

Attachments:

1.   Findings and Conditions
2.   Project Plans, dated March 30, 2006 and received May 8, 2006
3.   Notice of Public Hearing
4.   Applicant's Statement dated February 24, 2005
5.   Engineering Report on Radio Frequency Electromagnetic Fields
6.   Photo Simulations (Existing and Proposed)
7.   Coverage Maps (Existing and Proposed)
8.   Acoustical Study
9.   Letter on Routing Coax Cable
10.  FCC License
11.  Appeal
12.  City Council Resolution #63,439-N.S.
13.  Applicant's Supplemental Submittal dated January 2, 2007
14.  Third Party Engineering Report (RCC Consultants)
15.  City Attorney Opinion on Federal Law
16.  Supplemental Engineering Report on Radio Frequency Electromagnetic Fields dated January 19, 2007
17.  Zoning Documents Related to Parking/Loading
18.  Correspondence Received

Staff Planner: Christopher Wolf, cwolf@ci.berkeley.ca.us, (510) 981-7410

# ATTACHMENT 1

## FINDINGS AND CONDITIONS

### JANUARY 25, 2007

## 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a Wireless Telecommunications Facility (including five antennas and related equipment) for Verizon Wireless**

### CEQA FINDINGS

1.  The project is categorically exempt from the provisions of the California Environmental Quality Act (CEQA, Public Resources Code §21000, et seq.) pursuant to Section 15301 of the CEQA Guidelines ("Existing Facilities").

### GENERAL NON-DETRIMENT FINDING

2.  Pursuant to Berkeley Municipal Code Section 23B.32.040, the Zoning Adjustments Board finds that the proposed project "...*under the circumstances of the particular case existing at the time at which the application is granted, will not be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the area or neighborhood of such proposed use or be detrimental or injurious to property and improvements of the adjacent properties, the surrounding area or neighborhood, or to the general welfare of the City*", for the following reasons:

    A.  A report submitted by the applicant and prepared by a registered engineer indicates that the wireless telecommunications facility ("wireless facility") will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project;

    B.  The design of the wireless facility incorporates a number of features to ensure that the facility would be compatible with the existing building and would not be "readily visible". The Design Review Committee reviewed the project and granted preliminary approved subject to conditions that have subsequently been incorporated in the conditions of approval for this permit;

    C.  A noise study prepared for the project demonstrated that the proposed equipment would not generate noise levels exceeding the limits established by Berkeley Municipal Code Chapter 13.40, Community Noise;

    D.  The project would not conflict with the parking/loading requirements for the building since only two (2) off-street parking spaces are legally required. These spaces are in the building and would be maintained. Nextel Communications proposed to use one of these spaces but would now relocate their equipment storage area elsewhere in the building. The lot to the

north of 2721 Shattuck Avenue would not be affected by the project and is not legally required for off-street parking for the moving and mini-storage building;

E. Building and Safety Division Staff have identified no illegal building activity despite numerous inspections in response to neighbor complaints. All building work appears to be in accordance with issued Building Permits; and

F. No evidence has been found of illegal uses being carried out at the project site. A "pod" (location) for one (1) City CarShare vehicle has been established in the parking lot to the north of the buildings at 2721 Shattuck Avenue. The City's practice has not been to treat pods for City CarShare vehicles as an Automobile Rental use, and instead have treated them like any parked vehicle within an existing parking area. Pods have been established throughout the City of Berkeley (including adjacent to City Hall) on this basis.

## OTHER REQUIRED FINDINGS – WIRELESS TELECOMMUNICATIONS FACILITIES

3.    Pursuant to Berkeley Municipal Code Section 23C.17.100.A.1, the Zoning Adjustments Board finds that the proposed project *"...is consistent with the general requirements of this chapter and any specific requirements applicable to the proposed facility...."*, for the following reasons:

A. The project is consistent with relevant provisions of the General Plan, particularly Policy LU-7 Neighborhood Quality of Life, Action A and Policy UD-24 Area Character;

B. There are no provisions of the South Shattuck Strategic Plan that are relevant to this project;

C. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the FCC standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project; and

D. There are no discretionary permits affecting the property that are relevant to the project.

4.    Pursuant to Berkeley Municipal Code Section 23C.17.100.B.1, the Zoning Adjustments Board finds that the proposed project *"will comply with all applicable state and Federal standards and requirements"*, for the following reasons:

A. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project.

B. A supplemental study by a registered engineer evaluated other nearby wireless telecommunications facilities and found that other wireless telecommunications facilities are located too far away to have a significant additive effect and that public exposure limits would not be exceeded. The supplemental study also evaluated the potential effect of the wireless facilities proposed at the project site on future occupants of the mixed-use building proposed at 2701 Shattuck Avenue, which is located to the north of the site. The maximum

2721 SHATTUCK AVENUE (VERIZON WIRELESS)                          FINDINGS AND CONDITIONS
January 25, 2007                                                              Page 3 of 12

calculated level at the proposed mixed-use building would be 74% of the public exposure limit. Since a blank wall is proposed facing the wireless telecommunications facility at 2721 Shattuck Avenue, an attenuation factor of at least 10 times would apply for exposure conditions inside the building, resulting in a maximum of 7.4% of the public exposure limit.

5.    Pursuant to Berkeley Municipal Code Section 23C.17.100.B.2, the Zoning Adjustments Board finds that the proposed project will *"...not be readily visible"*, because it will not be distinguishable as an antenna or other component from street level, from the main living area of a legal residence in a residential district, or from a public park by a person with normal vision, because it will not stand out as a prominent feature of the landscape or protrude above or out from the building's roof, and is otherwise sufficiently camouflaged and designed to be compatible with the subject property. The basis for this finding is that:

      A.   The design incorporates a number of features to ensure that the wireless telecommunications facility would be compatible with the existing building;

      B.   The Design Review Committee reviewed the project and granted preliminary approval subject to conditions that have subsequently been incorporated in the conditions of approval for this permit;

      C.   Cabling will be routed internally where possible. Exposed coaxial cable would be white or match the building color;

      D.   Cable-trays will run vertically up the east elevation of the building and through the parapet. They will be painted to match the building, and will be grouped with the installation proposed by Nextel Communications;

      E.   Antennas will be positioned on the northern and eastern walls of the building, which are less visible and not as architecturally significant. Flush-mounted antennas will be used, which are not as visible as bulky housing on an exterior wall that has no fenestration or other articulation; and

      F.   Air-conditioning equipment will be on the roof of the building behind an existing parapet wall; and

      G.   Other equipment would be located within the existing building in a ground level lease area.

6.    Pursuant to Berkeley Municipal Code Section 23C.17.100.D, the Zoning Adjustments Board finds that the proposed project *"...is necessary for the provision of personal wireless services to Berkeley residents and businesses, or their owners, customers, guests, or invitees, or other persons traveling in or about the City"* and that without the facility *"...the operator will be unable to provide personal wireless services to its customers in the proposed coverage area"*, for the following reasons:

      A.   Verizon Wireless stated that the site was necessary to provide adequate capacity and that it would also improve in-building coverage and enhance outside coverage;

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 F&C.doc

B. The City engaged RCC Consultants, Inc. to undertake third party engineering review of material provided by Verizon Wireless. Some of the information provided was proprietary and confidential and was provided directly to RCC Consultants in accordance with Section 3C.17.100.M of the Berkeley Municipal Code;

C. RCC Consultants reviewed information provided by Verizon Wireless including the location of existing sites; dropped call data; coverage plots; capacity analysis; and cellular message unit capacity analysis (some of this data was proprietary and confidential);

D. RCC Consultants concluded that:

    i.   There has been a high increase in dropped calls on the south end of the University of California Berkeley campus and north and west of 2721 Shattuck Avenue;

    ii.  Existing Verizon Wireless facilities in this area (Berkeley_DT or Site 2, and UC Berkeley East or Site 3) that are capable of providing coverage to the area are being upgraded to provide additional capacity. However, these upgrades would only provide capacity until about the first quarter of 2008 or sooner;

    iii. Other existing Verizon Wireless facilities are either too far away to improve the capacity in the area, or would interfere with many sites well beyond the Berkeley area and degrade service by causing increased interference if redirected to increase capacity in the area; and

    iv. The proposed facility at 2721 Shattuck Avenue is necessary to provide adequate capacity for Verizon Wireless and would also improve in-building coverage and enhance outside coverage.

7.    Pursuant to Berkeley Municipal Code Section 23C.17.100.F, the Zoning Adjustments Board finds that "... *co-location is not feasible, would have more significant adverse effects on views or other environmental considerations, is not permitted by the property owner, would impair the quality of service to the existing facility, or would require existing facilities at the same location to go off-line for a significant period of time*", for the following reasons:

A. The applicant's statements indicate that co-location with existing facilities is not feasible since there are no existing wireless facilities in the vicinity that would satisfy the carrier's coverage and capacity needs;

B. Other locations (without existing facilities) in the vicinity of the site were not suitable, including the fire station on Shattuck Avenue; and

C. Another carrier (Nextel Communications) is proposing to establish a new wireless telecommunications facility on the same site (UP#05-10000033 relates), which would establish a co-location site.

## STANDARD CONDITIONS

1.    **Conditions Shall be Printed on Plans**

The conditions of this Permit shall be printed on the first sheet of each plan set submitted for a building permit pursuant to this Use Permit, under the title 'Use Permit Conditions'. The second sheet may also be used if the first sheet is not of sufficient size to list all of the

2721 SHATTUCK AVENUE (VERIZON WIRELESS)    FINDINGS AND CONDITIONS
January 25, 2007                                        Page 5 of 12

conditions. The sheet(s) containing the conditions shall be of the same size as those sheets containing the construction drawings; 8-1/2" by 11" sheets are not acceptable.

**2.    Applicant Responsible for Compliance with Conditions**

The applicant shall ensure compliance with all of the following conditions, including submittal to the project planner of required approval signatures at the times specified. Failure to comply with any condition may result in construction being stopped, issuance of a citation, and/or modification or revocation of the Use Permit.

**3.    Uses Approved Deemed to Exclude Other Uses (Section 23B.56.010)**

A.    This Permit authorizes only those uses and activities actually proposed in the application and exclude other uses and activities.

B.    Except as expressly specified herein, this Permit terminates all other uses at the location subject to it.

**4.    Modification of Permits (Section 23B.56.020)**

No change in the use for which this Permit is approved is permitted unless the Permit is modified by the Zoning Adjustments Board, in conformance with Section 23B.56.020.A.

Changes in the plans for the construction of a building or structure, may be modified prior to the completion of construction, in accordance with Section 23B.56.030.D. The Zoning Officer may approve changes to plans approved by the Board, consistent with the Board's policy adopted on May 24, 1978, which reduce the size of the project. The Zoning Officer may also approve a maximum two-foot variation to Board approved plans, provided, that such variation does not increase a structure's height, reduce the minimum distance to any property line, and/or does not conflict with any special objective sought by the Board. In the case of modifications to Use Permits for construction of, or additions of changes to single family homes which required Board review, the Zoning Officer shall follow Board policy adopted March 13, 1997, as follows:

A.    Upon applications for modifications to a home where a Use Permit has been granted, Staff shall review the Use Permit to determine if any explicit conditions were placed on the Use Permit that would be affected by the proposed modification.

B.    If, prior to acting on a Building Permit, Staff becomes aware of controversy over an earlier application, Staff may choose to conduct a more detailed review of the record to determine if conditions were implied by the Board or offered by the applicant (but not included in the Use Permit conditions) that would be affected by the proposed modification (this does not imply that Staff will review the whole Use Permit record for all applications).

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 F&C.doc

FINDINGS AND CONDITIONS                                   2721 SHATTUCK AVENUE (VERIZON WIRELESS)
Page 6 of 12                                                                          January 25, 2007

    C.    If there are explicit conditions (#A) or implied conditions (#B) affected by the proposed modification, the project shall be brought back to the Board as a Use Permit Modification.

    D.    If there are no explicit conditions that would be affected by the proposed modification, and if Staff is not otherwise aware of implied conditions, and the project would otherwise meet the requirements of the Zoning Ordinance, Staff will approve the Building Permit without Board or public review.

**5.    Plans and Representations Become Conditions (Section 23B.56.030)**

Except as expressly specified herein, the site plan, floor plans, building elevations and any additional information or representations submitted by the applicant during the Staff review and public hearing process leading to the approval of this Permit, whether oral or written, which indicated the proposed structure or manner of operation are deemed conditions of approval.

**6.    Subject to all City and Other Regulations (Section 23B.56.040)**

The approved use and/or construction are subject to, and shall comply with, all applicable City Ordinances and laws and regulations of other governmental agencies.

**7.    Exercised Permit for Use Survives Vacancy of Property (Section 23B.56.080)**

Once a Permit for a use is exercised and the use is established, that use is legally recognized, even if the property becomes vacant, except as set forth in Standard Condition #8 below.

**8.    Exercise and Lapse of Permits (Section 23B.56.100)**

    A.    A permit for the use of a building or a property is exercised when, if required, a valid City business license has been issued, and the permitted use has commenced on the property.

    B.    A permit for the construction of a building or structure is deemed exercised when a valid City building permit, if required, is issued, and construction has lawfully commenced.

    C.    A permit may be declared lapsed and of no further force and effect if it is not exercised within one year of its issuance, except that permits for construction or alteration of structures or buildings may not be declared lapsed if the permittee has (1) applied for a building permit or (2) made substantial good faith efforts to obtain a building permit and begin construction, even if a building permit has not been issued and/or construction has not begun.

2721 SHATTUCK AVENUE (VERIZON WIRELESS)          FINDINGS AND CONDITIONS
January 25, 2007                                                              Page 7 of 12

## ADDITIONAL CONDITIONS

Pursuant to BMC Section 23B.32.040.D, the Zoning Adjustments Board attaches the following conditions to this Permit:

### Prior to Issuance of Any Building Permit

9.    Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall submit to the Zoning Officer for review and approval a written compliance-monitoring plan. The plan shall include:
   A. Contact information for the individual empowered to manage compliance with this Use Permit. The Zoning Officer shall be notified if this information changes; and
   B. Timing of deliverables (including acoustical study and reports on compliance with FCC standards) required by conditions of this Use Permit.

10.   Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall either secure a bond or provide financial assurances, in a form acceptable to the City Manager, for the removal of the facility in the event that its use is abandoned or the approval is otherwise terminated.

11.   Prior to issuance of a building permit, the applicant shall provide the project planner with the name and telephone number of the individual empowered to manage construction noise from the project. The individual's name, telephone number, and responsibility for noise management shall be posted at the project site for the duration of construction in a location easily visible to the public. The individual shall record all noise complaints received and actions taken in response, and submit this record to the project planner upon request.

   ▢  Noise Management Individual _____
                                                    Name                                    Phone #

12.   Prior to issuance of a building permit, the applicant shall complete a "Construction and Demolition Recycling Plan," submit the plan to the Solid Waste Management Division for approval, and attach the approved plan to the construction drawings. The plan is available at www.ci.berkeley.ca.us/onlineservice/forms.htm#planning (look under "Land Use Planning") or by contacting Land Use Planning at 510-981-7410. After completing the form contact Solid Waste Management at 510-981-6368 for approval.

   ▢  City Monitor: Solid Waste Mgmt. Staff _____
                                                          Signature                               Date

13.   Prior to issuance of a building permit, the applicant shall secure the City Traffic Engineer's approval of a construction traffic management plan. Please contact the Office of Transportation at 510-981-7010, or 1947 Center Street, 3rd floor, and ask to speak to a traffic engineer. In addition to other requirements of the Traffic Engineer, this plan shall include the locations of material and equipment storage, trailers, worker parking, a schedule of site operations that may block traffic, and provisions for traffic control. The City Zoning Officer

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 F&C.doc

and/or Traffic Engineer may limit off-site parking of construction-related vehicles if necessary to protect the health, safety, or convenience of the surrounding neighborhood.

☐  City Monitor: Traffic Engineer _____

                                              Signature                      Date

## During Construction:

14.    Construction activity shall be limited to between the hours of 8:00 a.m. and 6:00 p.m. on Monday through Friday, and between 9:00 a.m. and noon on Saturday. No construction-related activity shall occur on Sunday.

15.    If underground utilities leading to adjacent properties are uncovered and/or broken, the contractor involved shall immediately notify the Public Works Department and the Building & Safety Division, and carry out any necessary corrective action to their satisfaction.

16.    Subject to approval of the Public Works Department, the applicant shall repair any damage to public streets and/or sidewalks by construction vehicles traveling to or from the project site.

17.    All piles of debris, soil, sand, or other loose materials shall be covered at night and during rainy weather with plastic at least one-eighth millimeter thick and secured to the ground.

18.    All active construction areas shall be watered at least twice daily, and all piles of debris, soil, sand or other loose materials shall be watered or covered.

19.    Trucks hauling debris, soil, sand, or other loose materials shall be covered or required to maintain at least two feet of board.

20.    Public streets shall be swept (preferably with water sweepers) of all visible soil material carried from the site.

## Prior to Issuance of Occupancy Permit or Final Inspection:

21.    The project shall conform to the plans and statements in the Use Permit.

22.    All landscape, site and architectural improvements shall be completed per the attached approved drawings dated 30 March 2006 and received on 8 May 2006, except for the following changes/clarifications:
    A.  Any cable-trays (including for other carriers) on the eastern elevation should be grouped and run through the parapet, not over it;
    B.  Condensers for air-conditioning equipment should be located on the roof to resolve issues with louvers and possible noise effects on Ward Street; and
    C.  The Zoning Officer shall approve any change requested by the applicant to the location of the equipment area proposed on the ground floor.

23.    The applicant shall provide signage identifying the name and phone number of a party to contact in event of an emergency. The design, materials, colors, and location of signs shall be subject to design review.

2721 SHATTUCK AVENUE (VERIZON WIRELESS)        FINDINGS AND CONDITIONS
January 25, 2007                                                                Page 9 of 12

### At All Times:

24.    Within two (2) months of the final building inspection for the facility the applicant shall submit to the Zoning Officer a written acoustical study demonstrating compliance with the Berkeley Community Noise Ordinance (BMC Chapter 13.40). The applicant shall be responsible for paying all costs (including City staff time) associated with completing the acoustical study and for third party review if required.

25.    The mitigations recommended by William F. Hammett, registered engineer, in the 10 May 2006 (and any subsequent engineering recommendations) evaluation of the facility for radio frequency fields shall be implemented, including:
    A.  There shall be no access within eight feet in front of the antennas while the site is in operation, unless other measures can be demonstrated to ensure that occupational protection requirements are met.
    B.  Warning signs shall be posted at roof access location(s) and at the antennas such that the sings are readily visible from any angle of approach. The signs shall comply with ANSI C95.2 color, symbol and content conventions. Contact information should be provided on the sign (e.g. a telephone number) to arrange for access to restricted areas.

26.    The applicant shall allow future co-location on the subject property subject to a determination of feasibility and the property owner's consent.

27.    Future changes to or replacement of the wireless equipment shall be permitted through issuance of a Zoning Certificate, rather than a Modification of the Use Permit, so long as the proposed changes are not detrimental, comply with performance standards within this Use Permit (e.g. noise, levels, RF standards, and visual appearance) and fit within the designated equipment area.

28.    The wireless telecommunications facility and related equipment, including lighting, fences, shields, cabinets, and poles, shall be maintained in good repair, free from trash, debris, litter and graffiti and other forms of vandalism, and any damage from any cause shall be repaired as soon as reasonably possible so as to minimize occurrences of dangerous conditions or visual blight. Graffiti shall be removed from any facility or equipment as soon as practicable, and in no instance more than forty-eight (48) hours from the time of notification by the city.

29.    The wireless telecommunications facility shall be operated in a manner that will minimize noise impacts to surrounding residents and persons using nearby parks, trails, and similar recreation areas. Except for emergency repairs, testing and maintenance activities that will be audible beyond the property line shall only occur between the hours of 8:00 am and 7 pm on Monday through Friday, excluding holidays. All air conditioning units and any other equipment that may emit noise that would be audible from beyond the property line shall be enclosed or equipped with noise attenuation devices. Backup generators shall only be operated during periods of power outages or for testing. At no time shall equipment noise from any source exceed the standards specified in the Berkeley Community Noise Ordinance (BMC Chapter 13.40).

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 F&C.doc

30.   The exterior walls and roof covering of all aboveground equipment shelters and cabinets shall be constructed of materials rated as nonflammable in the Uniform Building Code.

31.   Openings in all aboveground equipment shelters and cabinets shall be protected against penetration by fire and windblown embers to the extent feasible.

32.   Material used as supports for antennas shall be fire resistant, termite proof, and subject to all applicable requirements of the Uniform Building Code.

33.   All portions of the facility shall be anchored so that an earthquake does not dislodge them or tip them over. All equipment mounting racks and attached equipment shall be anchored so that a quake would not tip them over, throw equipment off its shelves, or otherwise damage equipment.

34.   All connections between various components of the wireless telecommunications facility and necessary power and telephone lines shall, to the extent feasible, be protected against damage by fire, flooding, and earthquake. Reasonable measures shall be taken to keep wireless telecommunication facilities in operation in the event of a natural disaster.

35.   Routine maintenance and repairs shall be limited to 8 a.m. to 7 p.m. Monday through Friday, excluding holidays.

36.   No wireless telecommunications facility or combination of facilities shall at any time produce power densities that exceed the FCC's limits for electric and magnetic field strength and power density for transmitters. In order to ensure continuing compliance with all applicable emission standards, all wireless telecommunications facilities shall be reviewed by an approved engineer in accord with the schedule and procedures set forth in Section 23C.17.090. All reasonable costs of such inspections shall be born by the owner or operator of the facility. The City may require, at the operator's expense, independent verification of the results of any analysis. If an operator of a telecommunications facility fails to supply the required reports or fails to correct a violation of the Federal Communications Commission standard following notification, the Use Permit is subject to modification or revocation by the Zoning Adjustments Board following a public hearing.

37.   Within forty five (45) days of initial operation or modification of a telecommunications facility, the operator of each telecommunications antenna shall submit to the Zoning Officer written certification by an approved engineer that the facility's radio frequency emissions are in compliance with the approved application and any required conditions. The engineer shall measure the radio frequency radiation of the approved facility and determine if it meets the FCC requirements of the A report of these measurements and the engineer's findings with respect to compliance with the FCC's MPE limits shall be submitted to the Zoning Officer. If the report shows that the facility does not comply with applicable FCC requirements, the owner or operator shall cease operation of the facility until the facility complies with, or has been modified to comply with, this standard. Proof of compliance shall be a certification provided by the engineer who prepared the original report. In order to assure the objectivity of the analysis, the City may require, at the applicant's expense, independent verification of the results of the analysis.

2721 SHATTUCK AVENUE (VERIZON WIRELESS)          <u>FINDINGS AND CONDITIONS</u>
January 25, 2007                                                      Page 11 of 12

38.   Once every two (2) years, the City shall retain, at the operator's expense, an approved engineer
      to conduct an unannounced spot check of the facility's compliance with applicable FCC radio
      frequency standards.

39.   In the event of a change in the FCC's Maximum Permissible Exposure (MPE) limits for
      electric and magnetic field strength and power density for transmitters, the operator of the
      facility shall be required to submit to the Zoning Officer written certification by an approved
      engineer of compliance with applicable FCC radio frequency standards within 90 days of any
      change in applicable FCC radio frequency standards or of any modification of the facility
      requiring a new submission to the FCC to determine compliance with emission standards. If
      calculated levels exceed 50% of the FCC's MPE limits, the operator of the facility shall hire an
      approved engineer to measure the actual exposure levels. If calculated levels are not in
      compliance with the FCC's MPE limit, the operator shall cease operation of the facility until
      the facility is brought into compliance with the FCC's standards and all other applicable
      requirements. A report of these calculations, required measurements, if any, and the engineer's
      findings with respect to compliance with current MPE limits shall be submitted to the Zoning
      Officer.

40.   If the Zoning Officer at any time finds that there is good cause to believe that a
      telecommunications antenna is not in compliance with applicable FCC radio frequency
      standards, he/she may require the operator to submit written certification that the facility is in
      compliance with such FCC standards.

41.   Within thirty (30) days of cessation of operations of any wireless telecommunications facility
      approved pursuant to this chapter, the operator shall notify the Zoning Officer in writing. The
      permit for said wireless telecommunications facility shall be deemed lapsed and of no further
      effect six (6) months thereafter unless:
      A.  The Zoning Officer has determined that the same operator resumed operation within six (6)
          months of the notice; or
      B.  The City has received an application to transfer the permit to another operator.

42.   No later than thirty (30) days after a permit has lapsed under the preceding subsection, the
      operator shall remove all wireless telecommunication facilities from the site. If the operator
      fails to do, the property owner shall be responsible for removal, and may use any bond or other
      assurances provided by the operator pursuant to the requirements of Section 23C.17.050 to do
      so. If such facilities are not removed, the site shall be deemed to be a nuisance pursuant to
      Section 23B.64 and the City may call the bond to pay for removal.

43.   Failure to inform the Zoning Officer of cessation of operations of any existing facility shall
      constitute a violation of the Zoning Ordinance and be grounds for:
      A.  Prosecution;
      B.  Revocation or modification of the permit:
      C.  Calling of any bond or assurance secured by the operator pursuant to the requirements of
          Section 23C.17.050; and/or
      D.  Removal of the facilities.



File:  G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-01-25 ZAB\2007-01-25 F&C.doc

44.   Prior to selling or leasing the facility to another carrier, the existing operator shall provide written notification to the Zoning Officer. The carrier that is buying or leasing the facility shall also provide written notification to the Zoning Officer and request a transfer of the existing Use Permit. The Zoning Officer may require submission of any supporting materials or documentation necessary to determine that the proposed use is in compliance with the existing Use Permit and all of its conditions including, but not limited to, statements, photographs, plans, drawings, models, and analysis by a State-licensed radio frequency engineer demonstrating compliance with all applicable regulations and standards of the Federal Communications Commission and the California Public Utilities Commission. If the Zoning Officer determines that the proposed operation is not consistent with the existing Use Permit, he/she shall notify the applicant who may revise the application or apply for modification to the Use Permit pursuant to the requirements of Section 23B.56.

45.   The applicant shall be responsible for paying all costs (including City staff time) associated with monitoring and/or enforcement of the above conditions. Fees shall be based on the adopted City fee schedule in place at the time the work is performed or action is taken.