# EXHIBIT M

MACKENZIE & ALBRITTON LLP
ONE POST STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE 415 / 288-4000
FACSIMILE 415 / 288-4010
SENDER'S EMAIL: FALBRITTON@MALLP.COM

CITY OF BERKELEY
CITY CLERK DEPT

07 FEB 20 PM 12: 06

February 20, 2007

HAND DELIVERED

Hon. Tom Bates, Mayor
and Members of the City Council
c/o City Clerk
City of Berkeley
2180 Milvia Street, First Floor
Berkeley, CA 94704

Re:  **Appeal of Zoning Adjustments Board denial of Use Permit No. 05-10000033 (Verizon Wireless Facility, 2721 Shattuck Avenue)**

Dear Mayor Bates and Council Members:

We are submitting this letter on behalf of our client Verizon Wireless ("VZW") in order to appeal the decision of the Zoning Adjustments Board ("ZAB") to deny the use permit application referenced above. Following a public hearing on January 25, 2007, the ZAB denied the application on the following two grounds:

> 1. There is not substantial evidence that the facility proposed is necessary to provide personal wireless services to Verizon Wireless customers since third party engineering review of the project was based on information that was supplied by Verizon Wireless and the review did not include a test of signal reception in the area around the project site; and

> 2. There is not substantial evidence that the facility proposed is necessary in this particular location and that it could not be located in an alternative location further away from residential districts.[1]

We ask that you schedule a public hearing to review this erroneous decision, which violated our client's rights under the federal Telecommunications Act (the "TCA"), the U.S. Constitution, state law, and the City's own code. To understand why, it is important to bear in mind that this project has been reviewed over the course of nearly two years, studied by multiple independent experts, and the subject of 4 public hearings. After this exhaustive review, City staff, in a thorough and well-reasoned report, recommended approval, concluding that the facility will have no significant visual, noise, or any other impacts, is needed to improve service to Verizon Wireless customers, and meets all standards for approval under both the wireless regulations and the general CUP standards.

---

[1] Notice of Decision mailed 2-6-07, Use Permit No. 05-10000033.

- 170 -

Mayor Bates and Council Members
February 20, 2007

Page 2 of 7

In denying the application, the ZAB ignored both the staff report and the conclusions of the City's own third party engineering expert. The denial was unlawful because it: (a) violated § 332 of the TCA because it was not based on substantial evidence,[2] prohibited or had the effect of prohibiting Verizon Wireless from providing service,[3] and was based on the perceived health effects of radio waves, a subject preempted by federal law;[4] (b) violated § 253 of the TCA because the City's requirement that Verizon Wireless demonstrate the need for each wireless facility is preempted by that statute; (c) intruded on the plenary authority of the California Public Utilities Commission by purporting to determine the need for a Verizon Wireless facility; (d) denied Verizon Wireless due process of law in violation of the U.S. Constitution and 42 U.S.C. § 1983; and (e) violated both the City's own code and the California Permit Streamlining Act. We discuss each of these grounds below.

I.   **The Denial Violated § 332 of the TCA.**

**Lack of Substantial Evidence**

The fundamental problem with the denial is that there was no substantial evidence supporting the ZAB's findings for denial. In finding that Verizon Wireless failed to demonstrate the facility is needed, the ZAB had no basis on which to discount either the opinion of the independent engineer retained by the City or the data he relied upon. Rather than substantial evidence, the ZAB simply assumed – with no basis whatsoever – that the extensive data provided by Verizon Wireless to the City's independent engineer was unreliable. Similarly, it simply assumed – again, with no basis at all – that field testing of signal strength was necessary, when in fact field testing is not relevant to the lack of call capacity on which the City's expert based his opinion.

The second finding – that Verizon Wireless did not demonstrate the lack of feasible alternative sites – is also unsupported by substantial evidence. First, there is no requirement under the City's wireless regulations to exhaust alternative sites, and for good reason. As one member of the ZAB noted during the hearing, any such requirement would be never-ending, as there is always some other site that could be considered. Confirming the lack of any such requirement, City staff never requested an alternatives analysis and, in fact, at the hearing, cut off this line of questioning by the ZAB member who ultimately made the motion for denial. Under controlling precedent, the City may not justify a denial for failure to meet a criterion that does not exist under the governing regulations.[5]

The second finding is also factually unsupportable. In fact, as explained in the staff report and the report from the City's engineering expert, Verizon Wireless did consider both other locations (the City Fire station, which was not high enough) and technical alternatives, such as

---

[2] 47 U.S.C. § 332(c)(7)(B)(iii).
[3] 47 U.S.C. § 332(c)(7)(B)(i)(II).
[4] 47 U.S.C. section 332(c)(7)(iv).
[5] See MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 725 (9th Cir. 2005) (to be based on substantial evidence, denial must be "*authorized by applicable local regulations* and supported by a reasonable amount of evidence") (emphasis added); AT&T Wireless Services of California LLC v. City of Carlsbad, 308 F.Supp.2d 1148, 1163 (S.D. Cal. 2003), and cases cited therein ("the city may not arbitrarily impose new CUP criteria not in place at the time of plaintiff's application").

Mayor Bates and Council Members
February 20, 2007

Page 3 of 7

modifying other nearby sites (which was not feasible due to signal interference). These alternatives are well documented in the administrative record.

### Prohibition of Service

The denial also prohibits or has the effect of prohibiting Verizon Wireless from providing personal wireless services in violation of the TCA. A denial has the effect of prohibiting wireless service if (a) the facility is needed to fill a significant gap in service; and (b) that gap cannot be filled by any less intrusive alternative.[6]

Verizon Wireless meets both of these requirements. As the City's own engineering expert concluded, the site is needed to address both in-building coverage problems, and the need for cell splitting in order to relieve the capacity constraints on other nearby sites. Either of these problems satisfies the requirement of a "significant gap." *See Cingular Wireless, LLC v. Thurston County*, 425 F.Supp.2d 1193, 1195 (W.D. Wash. 2006) (denial had effect of prohibiting service where site was needed to provide coverage in homes and vehicles); *Nextel of NY, Inc. v. City of Mt. Vernon*, 361 F. Supp. 2d 336, 341-42 (S.D.N.Y. 2005) (denial on lack of need not based on substantial evidence, where carrier "documented a need for cell splitting to alleviate the capacity demands due to high usage of" the existing nearby site).

Furthermore, there are no less intrusive alternatives. In fact, as the supplemental alternatives analysis that we will submit will demonstrate, there are essentially no feasible alternatives period, less intrusive or otherwise. To meet coverage and capacity needs, the site must be located either on or close to the Shattuck commercial corridor. That area is surrounded by residential uses, which, according to the City's stated reasons for denial, are unsuitable as an alternative on that basis alone. In addition, the building in question is by far the tallest structure within the search ring, and thus the only one that provides the necessary signal propagation without raising the antennas significantly above the existing roof-line.

### Regulation on the Basis of Alleged Health Effects

As you are no doubt aware, the vocal neighborhood opposition to the project was based almost entirely upon the alleged health risk of radio waves. The TCA preempts local regulation on that basis, so long as a facility complies with the FCC's health standards – and there is no dispute that this one would. Of course, the ZAB did not mention health concerns in its denial. The problem is that there was no evidence, let alone substantial evidence, for any other finding for denial, leaving the inescapable conclusion that the stated reasons were a mere pretext for preempted health concerns.

Federal preemption applies whether the local regulation is explicitly based on the environmental effects of radio frequency ("RF") emissions (which is, of course, unlikely), or through some proxy such as "property values" or lack of need. A federal district court in California has held that in light of the federal preemption of RF regulation, "concern over the decrease in property values may not be considered as substantial evidence if the fear of property value deprecia-

---

[6] *MetroPCS*, *supra*, 400 F.3d at 731-35.

Mayor Bates and Council Members
February 20, 2007

Page 4 of 7

tion is based on concern over the health effects caused by RF emissions." *AT&T Wireless Services of California LLC v. City of Carlsbad*, 308 F.Supp.2d 1148, 1159 (S.D. Cal. 2003).

    II.    **Federal law precludes local determination of need.**

Requiring carriers to prove the need for each facility is inconsistent with federal law. The Telecommunications Act was intended to "accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to *all Americans* by opening all telecommunications markets to competition. . . ." H.R. Conf. Rep. No. 458, 104th Cong., 2d Sess. 1 (1996) (Emphasis added). Local determination of need inevitably requires some judgment – inherently subjective – about what level of service is "adequate," and thus intrudes on the providers' ability to compete on the basis of service quality.

Service quality is primarily a matter for the carriers themselves, in the exercise of their business judgment, subject to certain minimum levels imposed by federal law. The City, by requiring that a carrier demonstrate the need for each facility – with no established standards for doing so – interferes with the carriers' business judgment and replaces it with the City's unbridled discretion to determine whether a facility is "necessary for the provision of personal wireless services to Berkeley."[7] In this case, for example, the denial is premised on the bizarre notion that both the Verizon Wireless professional engineers and the City's own third party engineers erred in their determination that the site is necessary, and that Verizon Wireless would choose to spend hundreds of thousands of dollars to install a wireless facility that is not needed to improve service to its customers.

Such local determination of need is inconsistent with 47 U.S.C. § 253(a), which provides:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

Under controlling court decisions, this provision precludes any local regulations that create undue barriers to entry, including burdensome application requirements. *See City of Auburn v. Qwest Corp.*, 260 F.3d 1160 (9th Cir. 2001); *Qwest Communications Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006).

Requiring carriers to document and prove the need for each site is an undue and boundless intrusion into their business, and unavoidably involve disclosure of proprietary information such as existing and proposed service quality and network design standards. The Ninth Circuit held in *City of Auburn* that local governments may not require such information, finding that requirements for maps and "a description of telecommunications services to be provided" violated the TCA. *See* 260 F.3d at 1176, 1178. The court quoted with approval from *Bellsouth Telecommunications v. City of Coral Springs*, 42 F. Supp. 2d 1304 (S.D. Fla. 1999), which held that: "[T]he City does not have the authority to request information regarding *systems, plans, or purposes* of the telecommunications facilities." 260 F.3d at 1178 (emphasis added).

In fact, the City of Berkeley has previously been enjoined under § 253 from collecting information about the purpose of proposed telecommunications facilities. *See Qwest Comm. Corp. v. City of Berkeley*, 146 F.Supp.2d 1081, 1099 (2001) ("cities cannot collect information about the

---

[7] Berkeley Municipal Code §23C.17.160D

Mayor Bates and Council Members
February 20, 2007

Page 5 of 7

description of telecommunications services to be provided or a carrier's future business and construction plans").[1]

### III. State Law also Precludes Local Determination of Need.

California state law has long precluded local determination of the need for telephone infrastructure – wireless or otherwise. At the state level, the California Public Utilities Commission ("PUC") has primary jurisdiction over utility services, including wireless telecommunications services. A local government may not regulate matters over which the Legislature grants regulatory power to the PUC. *See* California Constitution Article XII, Sec. 8. With regard to cellular telephone service specifically, the PUC has "found in numerous decisions authorizing specific cellular systems that *construction of cellular systems generally serves the public convenience and necessity.*" General Order 159-A, Decision (D.) 96-05-035, Section II (5/8/96)(emphasis added).

More than 20 years ago, the PUC held that local jurisdictions have no authority to determine the need for wireless telephone facilities:

> It has long been settled that the business of supplying the people with various forms of telephone service *is not a municipal affair*; it is a *matter of statewide concern*, and the Legislature, pursuant to the authority contained in Section 23 of Article XII of the California Constitution, has vested in this Commission the exclusive jurisdiction to supervise and regulate telephone utilities. ...
>
> Therefore, after this Commission has determined, after opportunity for objection and hearing, that the public convenience and necessity requires construction or extension of a public utility system, ... *the governing body of a local jurisdiction is precluded to go further and attempt to determine whether the service authorized is locally desired or would be beneficial to the jurisdiction, or whether the location or type fixtures are those preferred locally*. The local agency, under the guise of denying a Conditional Use or other permit, *cannot attempt to determine whether, where, or what utility constructions may be made.*

*In re: GTE MobilNet of San Jose, L.P., etc.*, 1986 Cal. PUC LEXIS 568, *18-19 (Cal. P.U.C. 1986) (emphasis added). *See also Williams Communications, LLC v. City of Riverside*, 114 Cal. App. 4th 642, 649, 8 Cal. Rptr. 3d 96, 103 (2003) (summarizing older cases holding that telephone service is a matter of state, not local, concern; holding that despite technological advances in services, "the basic principle remains the same: regulation of such services is a matter of state concern"). In short, local governments in California simply have no authority to determine the need for wireless facilities.

### IV. The Denial Denied Verizon Wireless Due Process of Law.

As argued above, the inquiry into the need for the facility is not a legitimate area of local regulation. Even if it were, however, the manner in which the ZAB resolved this issue denied Verizon Wireless due process of law, in violation of the U.S. Constitution.

---

[1] While this decision involved a wireline carrier's efforts to gain access to the public rights-of-way, there is nothing in either the statutory language (which applies broadly to "any entity" that provides "telecommunications service") or the court's analysis to limit it to those facts.

Mayor Bates and Council Members
February 20, 2007

Page 6 of 7

In reviewing the ZAB's previous decision to approve this same facility, this Council decided – over our objection – to require third-party engineering review. Our client had no role in choosing the third-party engineer, the questions addressed to him, or what if any field testing be performed. If the City felt it was necessary for him to obtain field data, or preferred that he not rely on data provided by Verizon Wireless (the sole bases for rejecting his opinion), it should have instructed him accordingly.

By waiting until after the close of the public hearing to take his testimony and announce that his conclusion was unreliable on these bases, the ZAB deprived Verizon Wireless of any opportunity to be heard on this issue. Notice and a meaningful opportunity to be heard are the bedrock requirements of due process of law. See, e.g., Beck Development Co. v. Southern Pacific Transportation Co., 44 Cal. App. 4th 1160, 1189 (1996) ("At a minimum, due process requires notice and an opportunity for a hearing . . . ."). If not remedied, this violation of due process would expose the City to liability for damages and attorneys' fees. See 42 U.S.C. §§ 1983, 1988.

In a separate letter to the City Attorney, we have asked that the City obtain a supplemental report from the third-party engineer to either incorporate any necessary field testing, or explain why none is necessary. We also intend to submit a statement from our client's engineer to confirm the reliability of the data obtained from Verizon Wireless, and explain why field testing is not relevant. We ask the Council to defer consideration of this appeal in order to provide time for submittal of this supplemental information, and thus remedy the due process violation.

V.  The Denial Violated the City's Code and the California Permit Streamlining Act.

This application was originally filed on March 8, 2005, and determined complete on April 7, 2005. At that point, the City had not requested either third-party review or any analysis of alternative sites [confirm]. Indeed, the City did not raise either issue until September 26, 2006, when this Council, in considering the appeal of the ZAB's original decision to approve the application, remanded in part for third party engineering review. The supposed failure to exhaust alternatives was not raised by the City until after the ZAB closed the most recent public hearing and during questioning of the City's third party engineer; questioning which was truncated by City staff. Thereafter, the Board member whose question was interrupted moved to deny on the basis that there may be alternatives. Under both the City's code and the California Permit Streamlining Act ("PSA"), the City raised each of these issues far too late in the process to justify a denial on either basis.

While the City's code authorizes third-party engineering review, it does so in Section 23C.17.040.M, which is part of a section labeled "Minimum Application Requirements." Subsection M provides that the applicant must agree to pay for third party review "at the discretion of the Zoning Officer." Here, the Zoning Officer never determined that third-party review was necessary, and consequently did not request it. Such a request would have been proper – at the latest – up until the application was determined complete. Coming as it did after the ZAB first decided to approve the application, the demand for third-party engineering review was obviously

- 175 -

Mayor Bates and Council Members
February 20, 2007

Page 7 of 7

far too late.[9] The same applies to the alleged failure to exhaust alternative sites, even if that were a legitimate basis for denial (as noted above, it is not).

State law dictates the same result. As noted, the requirements of third party review and exhaustion of alternative sites were first raised long after the application was deemed complete – and indeed formerly approved by the ZAB. It is precisely in order to prevent this sort of moving target that the Permit Streamlining Act requires the City to advise an applicant at the outset of all information and criteria which will be used to review its project. See Cal. Gov. Code, §§ 65940 –942. The PSA specifically states that an applicant cannot be subjected to new requirements enacted while an application is pending:

> Any revisions shall apply prospectively only and shall not be a basis for determining that an application is not complete pursuant to Section 65943 if the application was received before the revision is effective . . . .

Section 65942, Cal. Gov. Code (emphasis added).

By denying on the basis of new criteria imposed long after the application was complete, the City violated the Permit Streamlining Act.

\* \* \*

We appreciate you considering the concerns of our client. For the reasons stated, we ask that you schedule a public hearing, reverse the erroneous decision of the ZAB, and approve this application. We also ask that, in your deliberations, you remember the tens of thousands of Berkeley residents and visitors who daily depend on their cell phones for the health, safety and welfare of their families and businesses; and in particular the need for the Berkeley network to function in times of crisis such as earthquake or fire. Thank you for your careful review of this matter.

Very truly yours,

Paul B. Albritton

cc (via email only):

Zachary Cowan, Esq. (Deputy City Attorney)
Ed McGah, Esq.
Peter Maushardt
James Singleton

---

[9] The sections of the Code relating to any appeal to the Council clearly contemplate review of the existing record. Please see sections 23.B.32.060.B (1)–(3), all of which refer to Council review of "facts ascertainable from the record."