# EXHIBIT N

CITY OF BERKELEY
CITY CLERK DEPT

**MACKENZIE & ALBRITTON LLP**
ONE POST STREET, SUITE 500   '07 APR 30 PM 4: 13
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE 415 / 288-4000
FACSIMILE 415 / 288-4010
SENDER'S EMAIL: PALBRITTON@MALLP.COM

April 30, 2007

HAND DELIVERED

Hon. Tom Bates, Mayor
and Members of the City Council
c/o City Clerk, City of Berkeley
2180 Milvia Street, First Floor
Berkeley, CA 94704

Re:   Appeal of Zoning Adjustments Board denial of Use Permit No. 05-10000033
(Verizon Wireless Facility, 2721 Shattuck Avenue) filed February 20, 2007

Dear Mayor Bates and Council Members:

We write to you on behalf of our client Verizon Wireless ("VZW") with respect to the above referenced appeal to ask that you determine, in accordance with Section 23B.32.060(B)(2) of the Berkeley Municipal Code ("BMC"), "that the facts ascertainable from the record prepared by the Zoning [Adjustment Board] warrant further hearing."

Simply stated, the two grounds for denial enunciated by the Zoning Adjustment Board ("ZAB") require further factual information, regarding independent testing and site alternatives, and warrant additional review. In addition, as stated in VZW's letter of appeal dated February 20, 2007, a denial based upon the ZAB's findings violates VZW's rights under the federal Telecommunications Act (the "TCA"), the U.S. Constitution, state law, and the City's own code. These issues appeared on your closed session agenda of April 17, 2007, and clearly warrant further hearing by the Council.

For these reasons, we request that the Council set VZW's appeal for hearing.

**ZAB Findings**

Following a public hearing on January 25, 2007, the ZAB denied VZW's application to place five façade-mounted antennas and interior radio equipment on 2721 Shattuck Avenue (the "Proposed Facility") based upon the following two grounds:

1. There is not substantial evidence that the facility proposed is necessary to provide personal wireless services to Verizon Wireless customers since third party engineering review of the project was based on information that was supplied by Verizon Wireless and the review did not include a test of signal reception in the area around the project site; and

2. There is not substantial evidence that the facility proposed is necessary in this particular location and that it could not be located in an alternative location further away from residential districts.[1]

As we will explain, both findings are legally and factually flawed, and both warrant a further hearing.

---

[1] Notice of Decision mailed 2-6-07, Use Permit No. 05-10000033.

Mayor Bates and Council Members
April 30, 2007

Page 2 of 3

### ZAB Finding 1: New RCC Independent Testing and Verizon Wireless Affidavit Warrant Council Hearing

With respect to the ZAB's first finding, that VZW failed to demonstrate the facility is needed, the ZAB had no basis on which to discount either the opinion of the independent engineer retained by the City, RCC Consulting ("RCC"), or the data RCC relied upon. Similarly, the ZAB simply assumed – again, with no basis at all – that field testing of signal strength was necessary, when in fact field testing is not relevant to the lack of call capacity on which RCC based its opinion that the Proposed Facility is necessary. Nevertheless, VZW has voluntarily provided a sworn statement from its Radio Frequency Performance Manager, Dewayne Bonham, testifying to the direct, reliable source of the dropped-call and minutes-of-use data provided to RCC and has certified that the data provided was not altered or modified, and that field testing is irrelevant to determining capacity needs. Mr. Bonham's affidavit is attached as Exhibit A to this letter.

Further, on April 19-20, RCC conducted independent field tests of in-building coverage gaps that VZW seeks to remedy by installation of the Proposed Facility. The ZAB administrative record, by its own findings, is deficient absent this additional information. The Council must schedule a hearing to receive this information from RCC and Mr. Bonham.

### ZAB Finding 2: Existing and Updated Alternatives Analyses Warrant Council Review

The second finding – that Verizon Wireless did not demonstrate the lack of feasible alternative sites – is also unsupportable and inaccurate. First, there is no requirement under the City's wireless regulations to exhaust alternative sites. This second finding is also factually unsupportable. Indeed, two alternatives were analyzed in both the staff report and the RCC Report -- the City Fire station (not high enough) and the addition of sectors on a VZW site to the south (not feasible due to signal interference). These alternatives are well documented throughout the administrative record. Notwithstanding the lack of any legal requirement to do so under the BMC, VZW has submitted a supplemental alternatives analysis that shows: (i) the narrow band of commercially zoned parcels along Shattuck Avenue (flanked on either side by residential zoning) where VZW seeks to improve service; and (ii) the multiple alternatives considered by VZW within that narrow band in an effort to identify the least obtrusive alternative that would meet its capacity and coverage objectives. This updated alternatives analysis is attached as Exhibit B to this letter.

### Illegal Nature of ZAB findings Warrants a New Council Hearing.

As thoroughly briefed in our appeal letter, a denial based upon the two grounds enunciated by the ZAB violates our client's rights under the TCA, the U.S. Constitution, state law, and the City's own code. Fundamentally, the ZAB's two grounds do not meet the "substantial evidence" test required for denial of a site under the TCA. Rather than substantial evidence, the ZAB simply assumed that the extensive data provided by Verizon Wireless to the City's independent engineer was unreliable, and that field testing of signal strength was necessary, when in fact field testing is irrelevant to the lack of call capacity identified by RCC. The second finding – that Verizon Wireless did not demonstrate the lack of feasible alternative sites – is also unsupported by substantial evidence. As noted above, while there is no requirement under the City's wireless regulations to exhaust alternative sites, the record is replete with references to the alternatives reviewed by VZW.

The denial also prohibits or has the effect of prohibiting Verizon Wireless from providing personal wireless services, in violation of the TCA. A denial has the effect of prohibiting wireless service if (a) the facility is needed to fill a significant gap in service; and (b) that gap cannot be filled

BEK000403

Mayor Bates and Council Members
April 30, 2007

Page 3 of 3

by any less intrusive alternative.[2]  VZW meets both of these requirements. As RCC concluded, the site is needed to address both in-building coverage problems, and the need for cell splitting in order to relieve the capacity constraints on other nearby sites.

The ZAB denial also violates VZW's due process rights. Our client had no role in choosing RCC as the City's third-party engineer, in the questions addressed to RCC, or in what (if any) field testing RCC should perform. If the City felt it was necessary for RCC to obtain field data, or preferred that RCC not rely on data provided by Verizon Wireless (the sole bases for rejecting RCC's opinion), it should have instructed RCC accordingly.  By waiting until after the close of the public hearing to take RCC's testimony and announce that its conclusion was unreliable on these bases, the ZAB deprived Verizon Wireless of any opportunity to be heard on this issue.

VZW's planned network improvements are designed to improve service for thousands of Berkeley resident customers. In an effort to further demonstrate the need for this facility, VZW has sent a notice to the Berkeley customers anticipated to benefit from the Proposed Facility to advise them of the proposed facility. Scheduling the appeal for public hearing will allow VZW to provide the results of this public outreach to the Council.

An extensive body of information has been provided to the Council and ZAB to evaluate the Proposed Facility.  To assist the Council in its decision, we have included our January 2, 2007, letter to the ZAB and accompanying exhibits as Exhibit C to this letter.  Notable within those exhibits are: graphics showing that VZW customer minutes of use in Berkeley increased 94% between November 2005 and November 2006; and photos from VZW's Berkeley South site confirming that it is too high to serve as an alternate to the Proposed Facility without causing radio interference with facilities as far away as Marin County.

Given the above facts, new information available regarding the ZAB's erroneous findings, the illegal nature of the ZAB's denial and additional resident input VZW seeks to provide to you, we ask that you schedule a further hearing before the Council for this appeal.

Very truly yours,

Paul B. Albritton

Schedule of Exhibits

Exhibit A: Sworn Statement by Dewayne Bonham
Exhibit B: Alternatives Analysis
Exhibit C: January 2, 2007 ZAB Exhibits

cc (via email only):
    Zachary Cowan, Esq. (Deputy City Attorney)
    Ed McGah, Esq.
    Peter Maushardt

---

[2] *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 731-35 (9th Cir. 2005)

BEK000404

04/30/2007  15:07   5252736555           VERIZON WIRELESS            PAGE  01

Exhibit A

STATEMENT OF DEWAYNE BONHAM
RADIO FREQUENCY PERFORMANCE MANAGER
VERIZON WIRELESS

April 30, 2007

I Dewayne Bonham, declare under penalty of perjury under the laws of the State of California that the following statement is true and correct:

1.     I am the Radio Frequency Performance Manager for Verizon Wireless in Northern California, a position I have held since 1995;

2.     As a result of my employment, I have personal knowledge of the data that Verizon Wireless relies upon to determine the performance of the Verizon Wireless network in Northern California, including but not limited to capacity needs and dropped calls. I also have personal knowledge of the data provided to RCC Consulting ("RCC") in connection with its evaluation, on behalf of the City of Berkeley, of the proposed Verizon Wireless facility at 2721 Shattuck Avenue, Berkeley.

3.     The minutes of use data provided to RCC was collected directly from the hourly statistical "SMD" data files received from the Verizon Wireless Mobile Telephone Switching Office ("Switch") located in Pleasanton, California. These comma delimited data files were compiled by the Vallent® Prospect network performance software and are identical to data used by Verizon Wireless performance engineers to determine the capacity needs of the Verizon Wireless system. The data provided to RCC was unaltered and unmodified from that collected directly from the Switch as formatted by the Vallent® Prospect software.

4.     The dropped call map provided to RCC was similarly compiled from error messages received directly from the Switch (known as Pilot Strength Measurement Messages or PSMM data). This data is stored and mapped monthly to identify clusters of dropped calls for a particular geographic area. This exact same data is used by Verizon Wireless engineers to identify problem areas in the Verizon Wireless Network.

5.     Network capacity needs are identified through the use of direct SMD and PSMM data from the Switch as described above. There is no way to field test system capacity needs. The only method to determine system capacity needs is through use of Switch data and capacity projection models.

Executed this 30th day of April, 2007, at Walnut Creek, California

_Dewayne Bonham_  4/30/07
Dewayne Bonham
RF Performance Manager,
Verizon Wireless

BEK000405

# Cal Com Systems Inc.                    EXHIBIT B

2001 Omega Road # 100, San Ramon, CA 94583

April 30, 2007

Mackenzie & Albritton
c/o Paul Albritton
One Post Street, Suite 500
San Francisco, CA 94104

**Memorandum:    2721 Shattuck Avenue – Alternative Analysis**

Paul:

Attached is the alternative analysis information prepared for the "Berkeley Bekins" candidate by Cal Com Systems for Verizon Wireless. The provided PowerPoint presentation indicates identified alternate locations in the South Shattuck Avenue corridor and reasons for why each was rejected, i.e., insufficient height, inadequate spacing for equipment or residential zoning discouraging the use of a wireless facility. Also included is a copy of the most recent City of Berkeley zoning map, identifying the specific alternate locations and their addresses. The map clearly shows the narrow commercial corridor along Shattuck Avenue favored for the placement of sites over the residentially zoned areas to the north and south.

James

BEK000406

Alternate Candidates along South Shattuck Avenue Corridor

BEK000407



Alternate Candidates along South Shattuck Avenue Corridor

BEK000408



**2855 Telegraph Avenue – Shattuck Avenue South**
Structure too tall for required north sector, creating radio interference issues with Verizon Wireless network to the north (descried in prior staff and RCC Consultant reports).

BEK000409



**2860 Shattuck Avenue – Fire Station 5**

Inadequate height requiring antenna support structure (described in ZAB staff report).

BEK000410



## 2108 Russell – "The Church by the Side of the Road"

*Alternative cannot be used – Insufficient height requiring antenna support structure; R-2 (residential) zoning, i.e. disfavored site.*

BEK000411



## 2870 Shattuck Avenue – Harriet Tubman Terrace

Alternative cannot be used – primarily residential structure, i.e disfavored site

BEK000412

## 2777 Shattuck Avenue

Alternative cannot be used - insufficient height requiring Aesthetically unacceptable antenna support configuration.



BEK000413



## 2600 Shattuck Avenue - Honda Dealership

*Alternative cannot be used - insufficient height, requiring mono-pole of 50' or more*

BFK000414

**2001 Dwight Way**

**Alta-Bates Hospital**

Alternative cannot be used – inadequate space availability; complicated lease process.



BEK000415

## 2451-2471 Shattuck Avenue

### Fine Arts Building

Alternative cannot be used - primarily residential structure, i.e. disfavored site; inadequate equipment space inside building.



RFK000416

## 2437 Shattuck Avenue

### Mixed Use Building

Alternative cannot be used - primarily residential structure, i.e. disfavored site; also less than adequate space requiring complicated cable runs.



BFK000417

EXHIBIT C

**MACKENZIE & ALBRITTON**
ONE POST STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94104

TELEPHONE 415 / 288-4000
FACSIMILE 415 / 288-4010

January 2, 2007

Zoning Adjustments Board
c/o Land Use Planning Division
Planning & Development Department
City of Berkeley
2120 Milvia Street
Berkeley, CA 94704

RE:  Appeal of Use Permit 05-0000033; Verizon Wireless Facility at 2721 Shattuck Ave.
     Remand for third party engineering review

Distinguished Members of the Zoning Adjustments Board:

        We write to you on behalf of our client Verizon Wireless ("VZW") regarding the
appeal from your prior approval of a use permit for VZW's co-location wireless facility
at 2721 Shattuck Avenue. With respect to that appeal, the Berkeley City Council, through
Resolution No. 63,439-NS dated September 26, 2006 (the "Resolution"), remanded the
project to the Zoning Adjustments Board ("ZAB") to "reconsider the project (including a
third party engineering review)".

        In response to the Council's Resolution and in voluntary compliance with the
provisions of the Berkeley Municipal Code ("BMC"), VZW has diligently and
cooperatively provided sufficient technical information to the City-selected third-party
engineer, RCC Consultants, Inc. ("RCC"), to allow independent verification of the need
for the site. By this letter VZW asks the ZAB to re-affirm its prior findings of necessity,
reject all other claims of appellant Ellen McGovern ("Appellant") and re-affirm the
ZAB's prior approval of Use Permit 05-0000033.

**Determination of Necessity**

        Under Section 23C.17.100D of the Berkeley Municipal Code, the ZAB must find
that a wireless facility is, "necessary for the provision of personal wireless services to
Berkeley residents and businesses, or their owners, customers, guests, or invitees, or
other persons traveling in or about the City."  Section 23C.17.100A clarifies that, "All
findings must be based on substantial information in the record."

        Prior to the May 25, 2006, meeting of the ZAB, VZW submitted coverage maps
and reports supporting the need for the improved coverage in the area surrounding the
proposed site, for both increased capacity and in-building coverage, and to provide

BEK000418

Zoning Adjustments Board
January 2, 2007

Page 2

emergency 911 "pin-pointing" coverage for police and fire emergency purposes.
Sprint/Nextel, based upon their own independent analysis, also presented evidence
regarding their need to locate facilities at this address to remedy their service
deficiencies. No contrary evidence was submitted. Based on the substantial information
on the record, the ZAB determined on May 25, 2006, that the site is necessary and
approved the conditional use permit for the project.

        Section 23C.17.100A of the BMC further states that the City may "require
that any determination required by this Chapter be supported by independent analysis by
an approved engineer retained by the City."    Although VZW did not consider the
request to be timely, as noted, in response to the Resolution and in voluntary compliance
with the BMC, VZW has supplied RCC with substantial information for RCC to
determine the site to be necessary.  Principally that information includes:

        1: Berkeley Site Map and Spreadsheet: A map of Verizon Wireless current sites
and proposed site and spreadsheet that include latitude and longitude of current sites in
Berkeley, antenna heights and antenna orientation.  A copy of the map is Attachment 1 to
this letter.

        2: VZW Engineer Statement re: Use of Carriers and Anticipated Exhaustion
Dates.  A redacted version of this narrative is Attachment 2 to this letter.  The conclusion
of this narrative is that approvals are needed now to allow construction of this site to
prevent critical exhaustion of signal availability prior to completion of site construction.

        3: Statement from CalComm Systems regarding the timeline for Planning and
Building Permit Approval for Sites in Berkeley.  This statement includes two actual
project timelines for sites completed in Berkeley in the last two years.  A redacted version
of this narrative is Attachment 3 to this letter.  The data shows an average timeline for
successful sites of twenty (20) months from planning application to completion of the
site.

        4: Thirty-Day Historic Drop Call Map.  This proprietary data was provided to
RCC of actual dropped calls during the month of October 2006, within the vicinity of
proposed site. It conclusively demonstrates the need for the site in order for Verizon
Wireless to provide service to its Berkeley customers in the South Shattuck Avenue
corridor.  This information must remain confidential for proprietary reasons.

        5: Statement from VZW engineers and photographs facing north from the VZW
Shattuck South site.  This documentation, requested by RCC in connection with their
alternatives analysis, shows that this existing VZW site is too high to provide coverage of
the South Shattuck Avenue corridor without conflicting with other Verizon Wireless
sites.

BEK000419

- 194 -

Zoning Adjustments Board
January 2, 2007

Page 3

6. _Actual Cluster Growth in Minutes of Use for City of Berkeley sites from 2005 to 2006._ A graphic representation of this data is provided as Attachment 6A (with respect to minutes of use for voice calls) and 6B (with respect to minutes used for short messaging and data) to this letter. Overall, the data shows a 94% annual increase in minutes of use for voice calls and a 196% annual increase in minutes of use for short messaging and data for the seven wireless sites serving Berkeley. The data also reflects the substantial impact of seasonal student use. The data clearly demonstrates the critical need for VZW to add capacity to its wireless service in the City of Berkeley.

In addition, to the foregoing, Verizon Wireless engineers replied to written inquiries and participated in two extensive conference calls with RCC engineers to clarify data provided.

Finally, RCC was provided with suggested additional information related to the vicinity of the site including:

A. References to the South Shattuck Strategic Plan prepared by the Berkeley Planning and Development Department around 1998, which appears to be the most current planning document for the neighborhood. Among other facts, the plan notes in the Introduction, that this area of Shattuck Avenue is part of "the major southern transportation corridor into Downtown Berkeley." The Background section indicates that, at the time, there were some 46,000 housing units in the area. The "Transportation Strategies" section states that "Shattuck between Dwight and Ward is two-lanes in both directions, and carries about 33,500 cars per day." This section also notes that this corridor is categorized as a "major street" under the City's Master Plan, defined as a "high volume street connecting areas of the city and/or adjoining communities". The entire report can be viewed at:
http://www.ci.berkeley.ca.us/planning/landuse/plans/southshattuck/toc.htm

and;

B. References to the student population of the University of California at Berkeley. On-line data indicates that total student registration for 2005-2006 was 33,558 students. Information is also available regarding faculty, staff and the economic impact of the University on the City of Berkeley generally. See http://www.berkeley.edu/about/statistics/ . There is a strong trend for students to rely exclusively on cell phones in lieu of wire-line phones, suggesting a very high demand for wireless capacity within and adjacent to the University of California at Berkeley. The minutes of use data provided by VZW shows seasonal increases in use coinciding with University semesters.

In sum, RCC has been provided with substantial technical (and proprietary) information with which to determine that proposed VZW site is necessary for the

BFK000420

Zoning Adjustments Board
January 2, 2007

Page 4

provision of wireless service to the citizens of Berkeley. With such evidence and the
conclusions of RCC regarding the need for the site, the ZAB clearly fulfills the City
Council request to "reconsider the project (including a third party engineering review)"
and the BMC "substantial information" requirement. We ask that you re-affirm approval
of the site.

**Federal Law**

Applicable federal standards are also relevant to the ZAB reconsideration of the
proposed site. The federal Telecommunications Act of 1996 ("TCA") contains
fundamental limits on the right of a local jurisdiction to regulate the placement of
wireless facilities. Section 332 states:

> No State or local government or instrumentality thereof may regulate the
> placement, construction, and modification of personal wireless service facilities
> on the basis of the environmental effects of radio frequency emissions to the
> extent that such facilities comply with the [FCC] Commission's regulations
> concerning such emissions.[1]

Another section of the TCA limits the scope of local zoning authority specifically with
respect to wireless facilities. Section 332(c)(7)(B) states that local regulations:

> (I) shall not unreasonably discriminate among providers of functionally
> equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal
> wireless services.[2]

Most importantly with respect to this appeal, that same section of the TCA requires that
any decision to deny an application must be in writing and supported by "substantial
evidence."[3]

**Appellant Has Failed to Submit either TCA-required "Substantial Evidence" or
BMC-required "Substantial Information" to Justify a ZAB Finding that the VZW
Site is Not Needed**

Without having submitted any counter evidence at the May ZAB hearing, Ms.
McGovern also failed to submit any written evidence with her appeal letter or at the City
Council meeting of September 26, 2006. Instead she relies on her statement that the site
was supported by "corporate representatives" of Verizon Wireless, and anecdotal

---

[1] 47 USC § 332(c)(7)(B)(iv).
[2] 47 USC 332(c)(7)(B)(i).
[3] 47 USC § 332(c)(7)(B)(iii).

RFK000421

Zoning Adjustments Board
January 2, 2007

Page 5

evidence of call surveys and call mapping that has never been submitted in writing. This
is not sufficient to cast any doubt upon the ZAB's findings under federal "substantial
evidence", or BMC "substantial information" requirements for any findings supporting
denial of the site.

In this regard, VZW has made the legal argument by letter dated December 8,
2006, to the Planning and Development Department, the City Attorney and RCC, that the
Resolution and BMC require third party review of call surveys and mapping submitted by
Appellant and the Ward Street Neighbors. Although compelling to Appellant, the
completion of independent, static calls from differing locations at a particular time of day
has little to do with the requirements of a wireless telecommunications company to
provide reliable service at all times of day this year, and the years after, taking into
account continued increases in customers and improved technologies and services that
increase minutes of use. Other variables that must be considered include times of peak
usage for voice and text messaging, and the increasing mobility of customers from car to
street to commercial establishment, office or home and through various clutter and
interference environments. Of greatest importance is planning for usage during times of
crisis, such as natural catastrophe or fire, when call volume spikes. Absent third party
review, Appellant's anecdotal call evidence cannot be considered to be substantive, and is
subject to challenge under the Resolution, the BMC and federal law.

**Appellant Has Failed to Submit any Substantial Evidence for ZAB Reversal or
Denial of the Site.**

More fundamentally, there is simply no "substantial evidence" to justify the ZAB
reversing its approval of this project. The ZAB determined on May 25, 2006, in part that
the project "is necessary for the provision of personal wireless services to Berkeley
residents and businesses..." and that the project will "not be readily visible." No contrary
evidence was submitted. The bases for opposition at the ZAB hearing were (1) concern
over the alleged impact of radio waves upon nearby residential areas; and (2) compliance
with existing commercial criteria for the site.

Having considered all the evidence, in its formal findings, the ZAB accurately
determined that the project "will comply with all applicable state and Federal standards
and requirements." (*In fact, maximum cumulative levels of emissions for simultaneous
operation of both carriers at this site is still less than 3% of the applicable FCC safety
standards - both on the ground and on the roof of the nearest adjacent building.*) The
ZAB further found the project "will not be detrimental to the health, safety, peace,
morals, comfort, or general welfare of persons residing or working in the area or
neighborhood" nor would it be "detrimental or injurious to property or improvements of
the adjacent properties, the surrounding area or neighborhood, or to the general welfare
of the City." The ZAB also confirmed compliance with all applicable zoning restrictions.

BEK000422

Zoning Adjustments Board
January 2, 2007

Page 6

There is also no basis for the appellant's claim that the facility will reduce property values. The noise study prepared at staff's request confirmed that there will be no significant noise impact, and the ZAB properly found that there will be no significant visual impact. Therefore, the only conceivable basis for the claim of reduced property values is the appellant's unfounded fear of radio waves. As noted above, the facility will operate well within the FCC's safety standards, which means that any local regulation on this basis is preempted by the federal Telecommunications Act of 1996.[4] That is true whether the local regulation is explicitly based on RF concerns (which is, of course, unlikely), or through some proxy such as "property values." A federal district court in California has held that in light of the federal preemption of RF regulation, "concern over the decrease in property values may not be considered as substantial evidence if the fear of property value depreciation is based on concern over the health effects caused by RF emissions." *AT&T Wireless Services of California LLC v. City of Carlsbad,* 308 F.Supp.2d 1148, 1159 (S.D. Cal. 2003).

**Allegations of Illegal Construction are Unfounded**

Appellant raised issues at the September 26, 2006, City Council Meeting of illegal construction and violation of parking requirements at the building where the site is to be located. According to VZW's landlord, Patrick Kennedy, certain life safety and ADA improvements are being constructed in the building, but all of these improvements are the subject of valid building permits issued by the City of Berkeley. The City web page references eight (8) current building permits for the building and no violations or stop work orders. The landlord has indicated to VZW that the Appellant's statements are entirely false.

Finally, staff has raised with the landlord the possibility that a prior permit condition may require minimum off-street parking requirements for the building which might be affected by the location of the VZW radio cabinets. In the event this is a concern, VZW and the landlord have identified an alternative equipment location that would avoid any reduction of off-street parking at the site. These issues are addressed in the staff report.

**Conclusion**

Through the release of technical and proprietary information, VZW has more than established the need for its proposed facility at 2721 Shattuck Ave., to the satisfaction of the City's third party independent engineer and meeting the "substantial information" requirements of the BMC. In contrast, there is no evidence, much less the "substantial evidence" required by federal law, with which to overturn ZAB's approval of the appealed conditional use permit. For all the reasons stated above, we respectfully request

---

[4] *See* 47 U.S.C. § 332(c)(7)(B)(iv).

BEK000423

Zoning Adjustments Board
January 2, 2007

Page 7

that the Zoning Adjustments Board adopt the findings of necessity made by the City's third party engineer and affirm the conditional use permit granted to VZW.

Very truly yours,

Paul B. Albritton

cc: Peter Maushardt
    James Singleton
    Zach Cowan, Esq.
    Edward McGah, Esq.

BEK000424



Attachment 1

BEK000425

**From:** Stefano.Iachella
**Date:** Tue, 28 Nov 2006 11:42:32 -0800
**To:** "Paul Albritton (E-mail)"
**Cc:** <Dewayne.Bonham, Jerry.Kinney
**Conversation:** Berkeley Bekins Carrier Exhaustion
**Subject:** FW: Berkeley Bekins Carrier Exhaustion

Berkeley is one of the areas of highest utilization in the Bay Area.
With the large enrollment of the university and the trend of students
using cell phones in large numbers, we are rapidly exhausting our
capacity.   All cell sites in Berkeley are at [REDACTED] carriers, or
[REDACTED] as we call it. We will  add the [REDACTED] carrier to
the worst sites in the area in January of 2007. Our last available
carrier is [REDACTED] and our projections indicate we will need to
add that in [REDACTED].  The projections also show that we will
reach complete exhaustion of our RF spectrum [REDACTED]
months after the last carrier is added. That will be in [REDACTED].

When we reach complete carrier exhaustion, the only way to
address the utilization in a particular area is to cell split. This is the
adding of additional cell sites to off load  the surrounding sites.

At Verizon Wireless, we pro-actively address utilization so that our
customers do not experience call blocking. We cannot wait until
there is call blocking before taking action, as this would affect the
customers who rely on our service. Adequate capacity is particularly
critical for our customers in times of crisis, such as individual 911
calls, (and the geographic pinpointing of those calls for local public
safety agencies), and natural catastrophe or fire, when call volume
spikes.

[REMAINDER OF TECHNICAL STATEMENT REDACTED]

Stefano Iachella
Verizon Wireless
Desk: (925) 279-6394
Cell: (510) 381-2904

Attachment 2

BEK000426

- 201 -