# EXHIBIT T

---

---

**Clean version:**



# CITY OF BERKELEY ZAB

## S T A F F   R E P O R T

FOR BOARD ACTION
JUNE 28, 2007

# 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless;** (C-SA, South Area Commercial District, C. Wolf)

## I. Application Basics

### A. Zoning Permits Required:

- Use Permit to construct a new wireless telecommunications facility (not co-located with an existing facility), under BMC Section 23C.17.100.C
- Use Permit to construct a wireless telecommunications facility in the South Area Commercial (C-SA) District, under BMC Section 23E.52.030

### B. CEQA Determination:
Categorically exempt pursuant to Section 15301 (Existing Facilities) of the CEQA Guidelines.

### C. Parties Involved:

- Applicant — Verizon Wireless, C/o Mr. James Singleton, Cal Com Systems, Inc, 2001 Omega Road, Suite 100, San Ramon, CA 94583

- Property Owner — R & L Bernstein, LLC, 1201 Woodview Terrace, Los Altos, CA 94024

2120 Milvia Street, Berkeley, CA 94704 · Tel: 510.981.7410 · TDD: 510.981.7474 · Fax: 510.981.7420 · E-mail: zab@ci.berkeley.ca.us

**Figure 1: Vicinity Map**



ZONING ADJUSTMENTS BOARD
June 28, 2007

<u>2721 SHATTUCK AVENUE (VERIZON WIRELESS)</u>
Page 3 of 7

**Figure 2: Site Plan**



File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 ZAB Staff Report.doc



## Table 1:  Land Use Information

| Location | | Existing Use | Zoning District | General Plan Designation |
|---|---|---|---|---|
| Subject Property | | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| Surrounding Properties | North | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | South | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |
| | East | Residential | R-2 (Restricted Two-Family Residential) | Low Medium Density Residential |
| | West | Commercial | C-SA (South Area Commercial District) | Avenue Commercial |

## Table 2:  Special Characteristics

| Characteristic | Applies to Project? | Explanation |
|---|---|---|
| Alcohol Sales/Service | No | |
| Creeks | No | |
| Density Bonus | No | |
| Historic Resources | No | |
| Inclusionary Housing | No | |
| Oak Trees | No | |
| Seismic Hazard Zone | No | |

## Table 3:  Project Chronology



| Date | Action |
|---|---|
| March 8, 2005 | Application submitted |
| April 7, 2005 | Application deemed complete |
| N/A | CEQA deadline[1] |
| June 6, 2005 | PSA deadline[2] |
| July 21, 2005 | DRC |
| May 11, 2006 | Public hearing notices mailed/posted |
| May 25, 2006 | ZAB hearing - Approved |
| June 19, 2006 | ZAB decision appealed to the City Council |
| September 26, 2006 | City Council remanded project to the ZAB |
| December 22, 2006 | Public hearing notices mailed/posted |
| January 11, 2007 | ZAB hearing – project continued to ZAB meeting on January 25, 2007 |
| January 25, 2007 | ZAB hearing – Denied |
| February 20, 2007 | ZAB decision appealed to the City Council |
| May 8, 2007 | City Council meeting – continued item to May 22, 2007 |
| May 22, 2007 | City Council meeting – remanded project to the ZAB |
| June 14, 2007 | Public hearing notices mailed/posted |
| June 28, 2007 | ZAB hearing |

1. Negative declaration must be adopted within 180 days after application is deemed complete, EIR within 365 days (CEQA Guidelines, Article 8).
2. Project must be approved or denied within 60 days after being deemed complete if exempt from CEQA, or 60 days after adoption of a negative declaration, or 180 days after adoption of an EIR (Govt. Code Section 65950).



## II. Background

On January 25, 2007, the Zoning Adjustments Board held a public hearing and denied (6-3-0-0) Use Permit #05-10000033 to construct a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless.  Verizon Wireless appealed this decision to the City Council on February 20, 2007.  On May 22, 2007, the City Council considered the appeal and remanded Use Permit #05-10000033 to the Zoning Adjustments Board with the following instructions:

1. Directed ZAB to reconsider in light of new evidence since the ZAB decision; and
2. Directed the City Attorney to review and report any new legal information.

The Zoning Adjustments Board has 90 days to act on the City Council's remand pursuant to Section 23B.32.070 of the Berkeley Municipal Code.  This deadline cannot be extended even with the applicant's agreement.  The deadline for Zoning Adjustments Board action is October 13, 2007 since the Council recess period does not count towards the 90-day limit.

The City Council directed City Staff to place the project on the City Council agenda as soon as possible after the Zoning Adjustments Board's meeting to certify the decision. The project is tentatively scheduled for the City Council meeting on July 10, 2007 so that it can be certified before the City Council recess.

## III. Community Discussion

### A. Neighbor/Community Concerns:



Public Hearing Notices were posted and mailed on June 14, 2007 for the Zoning Adjustments Board meeting.  These notices were mailed to owners and occupants within 300 feet of the project site.  At the time of writing this report no additional correspondence was received in response to the posting and mailing.

## IV. Issues and Analysis

### A. Key Issues:

**Issue: Additional Information**
As directed by the City Council information received since the Zoning Adjustments Board meeting on January 25, 2007 is being supplied to members of the Zoning Adjustments Board as attachments to this report.  Information preceding this date has not been included since it has already been provided to the Zoning Adjustments Board; however, it is available on request.  The following information is attached to this report (see last page of report for attachment numbers for each item):

1. City Manager's report to the City Council dated May 8, 2007;
2. Extract of real-time closed captioner's transcript: City Council meeting May 8, 2007;
3. Extract of real-time closed captioner's transcript: City Council meeting May 22, 2007;



*File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 ZAB Staff Report.doc*



4. Supplemental third party engineering report (RCC Consultants);
5. Applicant appeal dated February 20, 2007;
6. Supplemental correspondence from applicant; and
7. Correspondence received (since the last Zoning Adjustments Board meeting).

**Issue: City Attorney Review**
The City Attorney sent the members of the Zoning Adjustments Board a confidential memorandum pursuant to the City Council's directive.

**Issue: Independent Engineering Review**
Verizon Wireless stated that the proposed wireless telecommunication facility is primarily needed for "capacity" reasons. For this reason, the City's independent engineer only evaluated and reported on this aspect of the project. Capacity is the ability of the network of sites to handle demand for service. To evaluate capacity need the City's independent engineer reviewed data such as historic blocked or dropped call data, and technical characteristics about existing sites (such as upgrades and optimization efforts that were undertaken to improve capacity).

Field-tests of signal strength are used to evaluate "coverage" need for a proposed facility, which is different to capacity need. Coverage need relates to coverage "holes", which are areas where signal strength provided by existing facilities is not adequate to make and maintain calls. Since Verizon Wireless stated that improving coverage was a secondary reason for the facility, the City's independent engineer had not previously evaluated this aspect of the project.

After the last Zoning Adjustments Board meeting on January 25, 2007, City Staff asked the City's independent engineer to carry out field-testing of signal strength to also verify coverage need for the proposed facility. The City's independent engineer, RCC Consultants, carried out these tests on April 20, 2007, and prepared a new report outlining their previous findings and results of the field tests (see Attachment 4). RCC Consultants' results related to the field tests include:

1. Coverage maps provided by Verizon Wireless indicate that coverage is acceptable at street level and in-vehicle;
2. Verizon Wireless stated that although the proposed facility is primarily needed for capacity reasons, it is also needed to improve in-building coverage. For these reasons, drive tests were not carried out, and instead three building locations were selected based on customer complaints and their potential use by larger numbers of customers (Fine Arts Building, Alta Bates Medical Center, and Berkeley Unified School District Administration Building); and
3. Dropped calls, poor signal levels and poor in-building voice quality was observed within the buildings that were tested.

## V.  Recommendation

Because of the project's consistency with the Zoning Ordinance and General Plan, and minimal impact on surrounding properties, Staff recommends that the Zoning Adjustments Board:

A.  APPROVE Use Permit #05-10000033 pursuant to BMC Section 23B.32.040 subject to the attached Findings and Conditions (see Attachment 1).

If the Zoning Adjustments Board decides to make an alternative decision, Staff notes that it must be based on substantial evidence, as required by Section 23C.17.100 of the Berkeley Municipal Code.

**Attachments:**

1.  Findings and Conditions
2.  Project Plans, dated March 30, 2006 and received May 8, 2006
3.  Notice of Public Hearing
4.  Independent Engineering Report (RCC Consultants) dated June 19, 2007
5.  City Manager's Report to the City Council dated May 8, 2007
6.  Extract of Real-time Closed Captioner's Transcript: City Council Meeting May 8, 2007
7.  Extract of Real-time Closed Captioner's Transcript: City Council Meeting May 22, 2007
8.  Applicant Appeal dated February 20, 2007
9.  Supplemental Correspondence from Applicant
10.  Correspondence Received (since last ZAB meeting on January 25, 2007)

**Staff Planner:** Christopher Wolf, cwolf@ci.berkeley.ca.us, (510) 981-7410



File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 ZAB Staff Report.doc

# ATTACHMENT 1

## FINDINGS AND CONDITIONS

JUNE 28, 2007

# 2721 Shattuck Avenue

**Use Permit #05-10000033 to construct a Wireless Telecommunications Facility (including five antennas and related equipment) for Verizon Wireless**

CEQA FINDINGS

1.    The project is categorically exempt from the provisions of the California Environmental Quality Act (CEQA, Public Resources Code §21000, et seq.) pursuant to Section 15301 of the CEQA Guidelines ("Existing Facilities").

GENERAL NON-DETRIMENT FINDING

2.    Pursuant to Berkeley Municipal Code Section 23B.32.040, the Zoning Adjustments Board finds that the proposed project "...*under the circumstances of the particular case existing at the time at which the application is granted, will not be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the area or neighborhood of such proposed use or be detrimental or injurious to property and improvements of the adjacent properties, the surrounding area or neighborhood, or to the general welfare of the City*", for the following reasons:

    A.  A report submitted by the applicant and prepared by a registered engineer indicates that the wireless telecommunications facility ("wireless facility") will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project;

    B.  The design of the wireless facility incorporates a number of features to ensure that the facility would be compatible with the existing building and would not be "readily visible". The Design Review Committee reviewed the project and granted preliminary approved subject to conditions that have subsequently been incorporated in the conditions of approval for this permit;

    C.  A noise study prepared for the project demonstrated that the proposed equipment would not generate noise levels exceeding the limits established by Berkeley Municipal Code Chapter 13.40, Community Noise;

    D.  The project would not conflict with the parking/loading requirements for the building since only two (2) off-street parking spaces are legally required. These spaces are in the building and would be maintained. Nextel Communications proposed to use one of these spaces but would now relocate their equipment storage area

elsewhere in the building; The lot to the north of 2721 Shattuck Avenue would not be affected by the project and is not legally required for off-street parking for the moving and mini-storage building;

E. Building and Safety Division Staff have identified no illegal building activity despite numerous inspections in response to neighbor complaints. All building work appears to be in accordance with issued Building Permits; and

F. No evidence has been found of illegal uses being carried out at the project site. A "pod" (location) for one (1) City CarShare vehicle has been established in the parking lot to the north of the buildings at 2721 Shattuck Avenue. The City's practice has not been to treat pods for City CarShare vehicles as an Automobile Rental use, and instead have treated them like any parked vehicle within an existing parking area. Pods have been established throughout the City of Berkeley (including adjacent to City Hall) on this basis.

## OTHER REQUIRED FINDINGS – WIRELESS TELECOMMUNICATIONS FACILITIES

3.  Pursuant to Berkeley Municipal Code Section 23C.17.100.A.1, the Zoning Adjustments Board finds that the proposed project "...is consistent with the general requirements of this chapter and any specific requirements applicable to the proposed facility...", for the following reasons:

A. The project is consistent with relevant provisions of the General Plan, particularly Policy LU-7 Neighborhood Quality of Life, Action A and Policy UD-24 Area Character;

B. There are no provisions of the South Shattuck Strategic Plan that are relevant to this project;

C. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the FCC standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project; and

D. There are no discretionary permits affecting the property that are relevant to the project.

4.  Pursuant to Berkeley Municipal Code Section 23C.17.100.B.1, the Zoning Adjustments Board finds that the proposed project "will comply with all applicable state and Federal standards and requirements", for the following reasons:

A. A report submitted by the applicant and prepared by a registered engineer indicates that the wireless facility will comply with the Federal Communications Commission (FCC) standards for limiting human exposure to radio frequency energy. The measures recommended in the report are incorporated in conditions of approval for the project.

B.  A supplemental study by a registered engineer evaluated other nearby wireless telecommunications facilities and found that other wireless telecommunications facilities are located too far away to have a significant additive effect and that public exposure limits would not be exceeded. The supplemental study also evaluated the potential effect of the wireless facilities proposed at the project site on future occupants of the mixed-use building proposed at 2701 Shattuck Avenue, which is located to the north of the site. The maximum calculated level at the proposed mixed-use building would be 74% of the public exposure limit. Since a blank wall is proposed facing the wireless telecommunications facility at 2721 Shattuck Avenue, an attenuation factor of at least 10 times would apply for exposure conditions inside the building, resulting in a maximum of 7.4% of the public exposure limit.

5.  Pursuant to Berkeley Municipal Code Section 23C.17.100.B.2, the Zoning Adjustments Board finds that the proposed project will *"...not be readily visible"*, because it will not be distinguishable as an antenna or other component from street level, from the main living area of a legal residence in a residential district, or from a public park by a person with normal vision, because it will not stand out as a prominent feature of the landscape or protrude above or out from the building's roof, and is otherwise sufficiently camouflaged and designed to be compatible with the subject property. The basis for this finding is that:

A.  The design incorporates a number of features to ensure that the wireless telecommunications facility would be compatible with the existing building;

B.  The Design Review Committee reviewed the project and granted preliminary approved subject to conditions that have subsequently been incorporated in the conditions of approval for this permit;

C.  Cabling will be routed internally where possible. Exposed coaxial cable would be white or match the building color;

D.  Cable-trays will run vertically up the east elevation of the building and through the parapet. They will be painted to match the building, and will be grouped with the installation proposed by Nextel Communications;

E.  Antennas will be positioned on the northern and eastern walls of the building, which are less visible and not as architecturally significant. Flush-mounted antennas will be used, which are not as visible as bulky housing on an exterior wall that has no fenestration or other articulation; and

F.  Air-conditioning equipment will be on the roof of the building behind an existing parapet wall; and

G.  Other equipment would be located within the existing building in a ground level lease area.

File:  G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 F&C.doc

6.    Pursuant to Berkeley Municipal Code Section 23C.17.100.D, the Zoning Adjustments
      Board finds that the proposed project *"...is necessary for the provision of personal
      wireless services to Berkeley residents and businesses, or their owners, customers,
      guests, or invitees, or other persons traveling in or about the City"* and that without the
      facility *"...the operator will be unable to provide personal wireless services to its
      customers in the proposed coverage area"*, for the following reasons:

      A. Verizon Wireless stated that the site was necessary to provide adequate capacity
         and that it would also improve in-building coverage and enhance outside coverage;

      B. The City engaged RCC Consultants to undertake third party engineering review of
         material provided by Verizon Wireless. Some of the information provided was
         proprietary and confidential and was provided directly to RCC Consultants in
         accordance with Section 3C.17.100.M of the Berkeley Municipal Code;

      C. RCC Consultants reviewed information provided by Verizon Wireless including the
         location of existing sites; dropped call data; coverage plots; capacity analysis; and
         cellular message unit capacity analysis (some of this data was proprietary and
         confidential);

      D. RCC Consultants carried out field tests of in-building signal strength (coverage);

      E. RCC Consultants concluded that:
         i.   There has been a high increase in dropped calls on the south end of the
              University of California Berkeley campus and north and west of 2721 Shattuck
              Avenue;
         ii.  Existing Verizon Wireless facilities in this area (Berkeley_DT or Site 2, and UC
              Berkeley East or Site 3) that are capable of providing coverage to the area are
              being upgraded to provide additional capacity. However, these upgrades would
              only provide capacity until about the first quarter of 2008 or sooner;
         iii. Other existing Verizon Wireless facilities are either too far away to improve the
              capacity in the area, or would interfere with many sites well beyond the
              Berkeley area and degrade service by causing increased interference if
              redirected to increase capacity in the area;
         iv.  Independent in-building tests of signal strength was carried out in three
              buildings, namely the Fine Arts Building, Alta Bates Medical Center, and
              Berkeley Unified School District Administration Building. Dropped calls, poor
              signal levels and poor in-building voice quality was observed within the
              buildings; and
         v.   The proposed facility at 2721 Shattuck Avenue is necessary to provide
              adequate capacity for Verizon Wireless and would also improve in-building
              coverage and enhance outside coverage.

7.    Pursuant to Berkeley Municipal Code Section 23C.17.100.F, the Zoning Adjustments
      Board finds that *"...co-location is not feasible, would have more significant adverse
      effects on views or other environmental considerations, is not permitted by the
      property owner, would impair the quality of service to the existing facility, or would*

*require existing facilities at the same location to go off-line for a significant period of time"*, for the following reasons:

A. The applicant's statements indicate that co-location with existing facilities is not feasible since there are no existing wireless facilities in the vicinity that would satisfy the carrier's coverage and capacity needs;

B. Other locations (without existing facilities) in the vicinity of the site were not suitable, including the fire station on Shattuck Avenue; and

C. Another carrier (Nextel Communications) is proposing to establish a new wireless telecommunications facility on the same site (UP#05-10000033 relates), which would establish a co-location site.

## STANDARD CONDITIONS

**1.    Conditions Shall be Printed on Plans**

The conditions of this Permit shall be printed on the first sheet of each plan set submitted for a building permit pursuant to this Use Permit, under the title 'Use Permit Conditions'. The second sheet may also be used if the first sheet is not of sufficient size to list all of the conditions. The sheet(s) containing the conditions shall be of the same size as those sheets containing the construction drawings; 8-1/2" by 11" sheets are not acceptable.

**2.    Applicant Responsible for Compliance with Conditions**

The applicant shall ensure compliance with all of the following conditions, including submittal to the project planner of required approval signatures at the times specified. Failure to comply with any condition may result in construction being stopped, issuance of a citation, and/or modification or revocation of the Use Permit.

**3.    Uses Approved Deemed to Exclude Other Uses** (Section 23B.56.010)

A.    This Permit authorizes only those uses and activities actually proposed in the application and exclude other uses and activities.

B.    Except as expressly specified herein, this Permit terminates all other uses at the location subject to it.

**4.    Modification of Permits** (Section 23B.56.020)

No change in the use for which this Permit is approved is permitted unless the Permit is modified by the Zoning Adjustments Board, in conformance with Section 23B.56.020.A.

Changes in the plans for the construction of a building or structure, may be modified prior to the completion of construction, in accordance with Section 23B.56.030.D. The Zoning Officer may approve changes to plans approved by the Board, consistent with the Board's policy adopted on May 24, 1978, which reduce the size of the project. The Zoning Officer may also approve a maximum two-foot variation to Board approved plans, provided, that such variation does not increase a structure's height, reduce the minimum distance to any property line, and/or does not conflict with any special objective sought by the Board. In the case of modifications to Use Permits for construction of, or additions of changes to single family homes which required Board review, the Zoning Officer shall follow Board policy adopted March 13, 1997, as follows:

A.    Upon applications for modifications to a home where a Use Permit has been granted, Staff shall review the Use Permit to determine if any explicit conditions were placed on the Use Permit that would be affected by the proposed modification.

B.    If, prior to acting on a Building Permit, Staff becomes aware of controversy over an earlier application, Staff may choose to conduct a more detailed review of the record to determine if conditions were implied by the Board or offered by the applicant (but not included in the Use Permit conditions) that would be affected by the proposed modification (this does not imply that Staff will review the whole Use Permit record for all applications).

C.    If there are explicit conditions (#A) or implied conditions (#B) affected by the proposed modification, the project shall be brought back to the Board as a Use Permit Modification.

D.    If there are no explicit conditions that would be affected by the proposed modification, and if Staff is not otherwise aware of implied conditions, and the project would otherwise meet the requirements of the Zoning Ordinance, Staff will approve the Building Permit without Board or public review.

5.    **Plans and Representations Become Conditions** (Section 23B.56.030)

Except as expressly specified herein, the site plan, floor plans, building elevations and any additional information or representations submitted by the applicant during the Staff review and public hearing process leading to the approval of this Permit, whether oral or written, which indicated the proposed structure or manner of operation are deemed conditions of approval.

6.    **Subject to all City and Other Regulations** (Section 23B.56.040)

The approved use and/or construction are subject to, and shall comply with, all applicable City Ordinances and laws and regulations of other governmental agencies.

7.    **Exercised Permit for Use Survives Vacancy of Property** (Section 23B.56.080)

Once a Permit for a use is exercised and the use is established, that use is legally recognized, even if the property becomes vacant, except as set forth in Standard Condition #8 below.

8.    **Exercise and Lapse of Permits** (Section 23B.56.100)

    A.    A permit for the use of a building or a property is exercised when, if required, a valid City business license has been issued, and the permitted use has commenced on the property.

    B.    A permit for the construction of a building or structure is deemed exercised when a valid City building permit, if required, is issued, and construction has lawfully commenced.

    C.    A permit may be declared lapsed and of no further force and effect if it is not exercised within one year of its issuance, except that permits for construction or alteration of structures or buildings may not be declared lapsed if the permittee has (1) applied for a building permit or (2) made substantial good faith efforts to obtain a building permit and begin construction, even if a building permit has not been issued and/or construction has not begun.



File:  G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 F&C.doc



## ADDITIONAL CONDITIONS

Pursuant to BMC Section 23B.32.040.D, the Zoning Adjustments Board attaches the following conditions to this Permit:

### Prior to Issuance of Any Building Permit

9.   Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall submit to the Zoning Officer for review and approval a written compliance-monitoring plan. The plan shall include:
   A. Contact information for the individual empowered to manage compliance with this Use Permit. The Zoning Officer shall be notified if this information changes; and
   B. Timing of deliverables (including acoustical study and reports on compliance with FCC standards) required by conditions of this Use Permit.

10.  Prior to issuance of a building permit to erect or install the proposed facility, the applicant shall either secure a bond or provide financial assurances, in a form acceptable to the City Manager, for the removal of the facility in the event that its use is abandoned or the approval is otherwise terminated.



11.  Prior to issuance of a building permit, the applicant shall provide the project planner with the name and telephone number of the individual empowered to manage construction noise from the project. The individual's name, telephone number, and responsibility for noise management shall be posted at the project site for the duration of construction in a location easily visible to the public. The individual shall record all noise complaints received and actions taken in response, and submit this record to the project planner upon request.

   ☐  Noise Management Individual _____
                                               Name                              Phone #

12.  Prior to issuance of a building permit, the applicant shall complete a "Construction and Demolition Recycling Plan," submit the plan to the Solid Waste Management Division for approval, and attach the approved plan to the construction drawings. The plan is available at www.ci.berkeley.ca.us/onlineservice/forms.htm#planning (look under "Land Use Planning") or by contacting Land Use Planning at 510-981-7410. After completing the form contact Solid Waste Management at 510-981-6368 for approval.

   ☐  City Monitor: Solid Waste Mgmt. Staff _____
                                                            Signature                    Date

13.  Prior to issuance of a building permit, the applicant shall secure the City Traffic Engineer's approval of a construction traffic management plan. Please contact the Office of Transportation at 510-981-7010, or 1947 Center Street, 3rd floor, and ask to speak to a traffic engineer. In addition to other requirements of the Traffic Engineer, this plan shall include the locations of material and equipment storage, trailers, worker parking, a schedule of site operations that may block traffic, and provisions for traffic control. The City Zoning Officer and/or Traffic Engineer may limit off-site parking of



construction-related vehicles if necessary to protect the health, safety, or convenience of the surrounding neighborhood.

☐  City Monitor:  Traffic Engineer _____

                                                            Signature                    Date

**During Construction:**

14.    Construction activity shall be limited to between the hours of 8:00 a.m. and 6:00 p.m. on Monday through Friday, and between 9:00 a.m. and noon on Saturday.  No construction-related activity shall occur on Sunday.

15.    If underground utilities leading to adjacent properties are uncovered and/or broken, the contractor involved shall immediately notify the Public Works Department and the Building & Safety Division, and carry out any necessary corrective action to their satisfaction.

16.    Subject to approval of the Public Works Department, the applicant shall repair any damage to public streets and/or sidewalks by construction vehicles traveling to or from the project site.

17.    All piles of debris, soil, sand, or other loose materials shall be covered at night and during rainy weather with plastic at least one-eighth millimeter thick and secured to the ground.

18.    All active construction areas shall be watered at least twice daily, and all piles of debris, soil, sand or other loose materials shall be watered or covered.

19.    Trucks hauling debris, soil, sand, or other loose materials shall be covered or required to maintain at least two feet of board.

20.    Public streets shall be swept (preferably with water sweepers) of all visible soil material carried from the site.

**Prior to Issuance of Occupancy Permit or Final Inspection:**

21.    The project shall conform to the plans and statements in the Use Permit.

22.    All landscape, site and architectural improvements shall be completed per the attached approved drawings dated 30 March 2006 and received on 8 May 2006, except for the following changes/clarifications:
A. Any cable-trays (including for other carriers) on the eastern elevation should be grouped and run through the parapet, not over it;
B. Condensers for air-conditioning equipment should be located on the roof to resolve issues with louvers and possible noise effects on Ward Street; and
C. The Zoning Officer shall approve any change requested by the applicant to the location of the equipment area proposed on the ground floor.

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 F&C.doc





23. The applicant shall provide signage identifying the name and phone number of a party to contact in event of an emergency. The design, materials, colors, and location of signs shall be subject to design review.

**At All Times:**

24. Within two (2) months of the final building inspection for the facility the applicant shall submit to the Zoning Officer a written acoustical study demonstrating compliance with the Berkeley Community Noise Ordinance (BMC Chapter 13.40). The applicant shall be responsible for paying all costs (including City staff time) associated with completing the acoustical study and for third party review if required.

25. The mitigations recommended by William F. Hammett, registered engineer, in the 10 May 2006 (and any subsequent engineering recommendations) evaluation of the facility for radio frequency fields shall be implemented, including:
    A. There shall be no access within eight feet in front of the antennas while the site is in operation, unless other measures can be demonstrated to ensure that occupational protection requirements are met.
    B. Warning signs shall be posted at roof access location(s) and at the antennas such that the sings are readily visible from any angle of approach. The signs shall comply with ANSI C95.2 color, symbol and content conventions. Contact information should be provided on the sign (e.g. a telephone number) to arrange for access to restricted areas.

26. The applicant shall allow future co-location on the subject property subject to a determination of feasibility and the property owner's consent.

27. Future changes to or replacement of the wireless equipment shall be permitted through issuance of a Zoning Certificate, rather than a Modification of the Use Permit, so long as the proposed changes are not detrimental, comply with performance standards within this Use Permit (e.g. noise, levels, RF standards, and visual appearance) and fit within the designated equipment area.

28. The wireless telecommunications facility and related equipment, including lighting, fences, shields, cabinets, and poles, shall be maintained in good repair, free from trash, debris, litter and graffiti and other forms of vandalism, and any damage from any cause shall be repaired as soon as reasonably possible so as to minimize occurrences of dangerous conditions or visual blight. Graffiti shall be removed from any facility or equipment as soon as practicable, and in no instance more than forty-eight (48) hours from the time of notification by the city.

29. The wireless telecommunications facility shall be operated in a manner that will minimize noise impacts to surrounding residents and persons using nearby parks, trails, and similar recreation areas. Except for emergency repairs, testing and maintenance activities that will be audible beyond the property line shall only occur between the hours of 8:00 am and 7 pm on Monday through Friday, excluding holidays. All air conditioning units and any other equipment that may emit noise that





would be audible from beyond the property line shall be enclosed or equipped with noise attenuation devices. Backup generators shall only be operated during periods of power outages or for testing. At no time shall equipment noise from any source exceed the standards specified in the Berkeley Community Noise Ordinance (BMC Chapter 13.40).

30.   The exterior walls and roof covering of all aboveground equipment shelters and cabinets shall be constructed of materials rated as nonflammable in the Uniform Building Code.

31.   Openings in all aboveground equipment shelters and cabinets shall be protected against penetration by fire and windblown embers to the extent feasible.

32.   Material used as supports for antennas shall be fire resistant, termite proof, and subject to all applicable requirements of the Uniform Building Code.

33.   All portions of the facility shall be anchored so that an earthquake does not dislodge them or tip them over. All equipment mounting racks and attached equipment shall be anchored so that a quake would not tip them over, throw equipment off its shelves, or otherwise damage equipment.

34.   All connections between various components of the wireless telecommunications facility and necessary power and telephone lines shall, to the extent feasible, be protected against damage by fire, flooding, and earthquake. Reasonable measures shall be taken to keep wireless telecommunication facilities in operation in the event of a natural disaster.

35.   Routine maintenance and repairs shall be limited to 8 a.m. to 7 p.m. Monday through Friday, excluding holidays.

36.   No wireless telecommunications facility or combination of facilities shall at any time produce power densities that exceed the FCC's limits for electric and magnetic field strength and power density for transmitters. In order to ensure continuing compliance with all applicable emission standards, all wireless telecommunications facilities shall be reviewed by an approved engineer in accord with the schedule and procedures set forth in Section 23C.17.090. All reasonable costs of such inspections shall be born by the owner or operator of the facility. The City may require, at the operator's expense, independent verification of the results of any analysis. If an operator of a telecommunications facility fails to supply the required reports or fails to correct a violation of the Federal Communications Commission standard following notification, the Use Permit is subject to modification or revocation by the Zoning Adjustments Board following a public hearing.

37.   Within forty five (45) days of initial operation or modification of a telecommunications facility, the operator of each telecommunications antenna shall submit to the Zoning Officer written certification by an approved engineer that the facility's radio frequency emissions are in compliance with the approved application and any required



File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP 05-10000033\2007-06-28 ZAB\2007-06-28 F&C.doc



conditions. The engineer shall measure the radio frequency radiation of the approved facility and determine if it meets the FCC requirements of the A report of these measurements and the engineer's findings with respect to compliance with the FCC's MPE limits shall be submitted to the Zoning Officer. If the report shows that the facility does not comply with applicable FCC requirements, the owner or operator shall cease operation of the facility until the facility complies with, or has been modified to comply with, this standard. Proof of compliance shall be a certification provided by the engineer who prepared the original report. In order to assure the objectivity of the analysis, the City may require, at the applicant's expense, independent verification of the results of the analysis.

38.    Once every two (2) years, the City shall retain, at the operator's expense, an approved engineer to conduct an unannounced spot check of the facility's compliance with applicable FCC radio frequency standards.

39.    In the event of a change in the FCC's Maximum Permissible Exposure (MPE) limits for electric and magnetic field strength and power density for transmitters, the operator of the facility shall be required to submit to the Zoning Officer written certification by an approved engineer of compliance with applicable FCC radio frequency standards within 90 days of any change in applicable FCC radio frequency standards or of any modification of the facility requiring a new submission to the FCC to determine compliance with emission standards. If calculated levels exceed 50% of the FCC's MPE limits, the operator of the facility shall hire an approved engineer to measure the actual exposure levels. If calculated levels are not in compliance with the FCC's MPE limit, the operator shall cease operation of the facility until the facility is brought into compliance with the FCC's standards and all other applicable requirements. A report of these calculations, required measurements, if any, and the engineer's findings with respect to compliance with current MPE limits shall be submitted to the Zoning Officer.

40.    If the Zoning Officer at any time finds that there is good cause to believe that a telecommunications antenna is not in compliance with applicable FCC radio frequency standards, he/she may require the operator to submit written certification that the facility is in compliance with such FCC standards.

41.    Within thirty (30) days of cessation of operations of any wireless telecommunications facility approved pursuant to this chapter, the operator shall notify the Zoning Officer in writing. The permit for said wireless telecommunications facility shall be deemed lapsed and of no further effect six (6) months thereafter unless:
       A. The Zoning Officer has determined that the same operator resumed operation within six (6) months of the notice; or
       B. The City has received an application to transfer the permit to another operator.

42.    No later than thirty (30) days after a permit has lapsed under the preceding subsection, the operator shall remove all wireless telecommunication facilities from the site. If the operator fails to do, the property owner shall be responsible for removal, and may use any bond or other assurances provided by the operator pursuant to the requirements of Section 23C.17.050 to do so. If such facilities are not removed, the



site shall be deemed to be a nuisance pursuant to Section 23B.64 and the City may call the bond to pay for removal.

43. Failure to inform the Zoning Officer of cessation of operations of any existing facility shall constitute a violation of the Zoning Ordinance and be grounds for:
A. Prosecution;
B. Revocation or modification of the permit:
C. Calling of any bond or assurance secured by the operator pursuant to the requirements of Section 23C.17.050; and/or
D. Removal of the facilities.

44. Prior to selling or leasing the facility to another carrier, the existing operator shall provide written notification to the Zoning Officer. The carrier that is buying or leasing the facility shall also provide written notification to the Zoning Officer and request a transfer of the existing Use Permit. The Zoning Officer may require submission of any supporting materials or documentation necessary to determine that the proposed use is in compliance with the existing Use Permit and all of its conditions including, but not limited to, statements, photographs, plans, drawings, models, and analysis by a State-licensed radio frequency engineer demonstrating compliance with all applicable regulations and standards of the Federal Communications Commission and the California Public Utilities Commission. If the Zoning Officer determines that the proposed operation is not consistent with the existing Use Permit, he/she shall notify the applicant who may revise the application or apply for modification to the Use Permit pursuant to the requirements of Section 23B.56.

45. The applicant shall be responsible for paying all costs (including City staff time) associated with monitoring and/or enforcement of the above conditions. Fees shall be based on the adopted City fee schedule in place at the time the work is performed or action is taken.

File: G:\LANDUSE\Projects by Address\Shattuck\2721\UP-05-10000033\2007-06-28 ZAB\2007-06-28 F&C.doc









