1  HENRY WEISSMANN (SBN 132418)
   Henry.Weissmann@mto.com
2  MARC BECKER (SBN 138872)
   Marc.Becker@mto.com
3  BRADLEY R. SCHNEIDER (SBN 235296)
   Bradley.Schneider@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
5  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
6  Telephone:     (213) 683-9100
   Facsimile:     (213) 687-3702
7

8  MACKENZIE & ALBRITTON LLP
   JAMES A. HEARD (SBN 114940)
9  jheard@mallp.com
   One Post Street, Suite 500
10 San Francisco, California  94104
   Telephone: (415) 288-4000
11 Facsimile: (415) 288 4010
12

13 Attorneys for Plaintiff
   GTE MOBILNET OF CALIFORNIA LIMITED
   PARTNERSHIP, A CALIFORNIA LIMITED
14 PARTNERSHIP D/B/A VERIZON WIRELESS

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                  OAKLAND DIVISION

18

19 GTE MOBILNET OF CALIFORNIA          CASE NO.  C 07-04034 SBA
   LIMITED PARTNERSHIP, a California
20 limited partnership d/b/a VERIZON    DECLARATION OF BRADLEY R.
   WIRELESS,                           SCHNEIDER IN SUPPORT OF
21                                      PLAINTIFF'S MOTION FOR PARTIAL
                Plaintiff,              SUMMARY JUDGMENT ON COUNT II
22                                      OF THE COMPLAINT
        vs.
23                                      DATE: December 18, 2007
   CITY OF BERKELEY,                    TIME:  1:00 p.m.
24
                Defendant.
25

26

27

28

3706311.1

1

2           I, Bradley R. Schneider, declare:

3               1.     I am an active member of the California state bar and am admitted to

4 practice before the United States District Court for the Northern District of California. I am

5 currently an associate at Munger, Tolles & Olson, which represents Plaintiff GTE Mobilnet of

6 California Limited Partnership d/b/a Verizon Wireless in the above-captioned action. I am

7 making this declaration in support of Verizon Wireless's motion for partial summary judgment on

8 Claim II of the Complaint. I have personal knowledge of the matters set forth in this declaration.

9 If called to testify, I could and would testify competently to the facts set forth herein.

10               2.     Attached hereto as Exhibit A is a true and correct copy of a memorandum

11 that I printed off the City of Berkeley's website on September 30, 2007.[1] The City of Berkeley's

12 website indicates that this memorandum is part of the administrative record of Verizon Wireless's

13 appeal of the Berkeley Zoning Adjustment Board's January 25, 2007, decision denying Verizon

14 Wireless's application for a conditional use permit to construct a wireless communications

15 facility at 2721 Shattuck Avenue in the City of Berkeley, California.

16

17           I declare under penalty of perjury under the laws of the United States of America

18 that the foregoing is true and correct and that this declaration was executed on October 1, 2007 at

19 Oakland, California.

20

21

22                       By: _____

23                           BRADLEY R. SCHNEIDER

24

25

26

27

---

28   [1] *See* http://www.ci.berkeley.ca.us/citycouncil/2007citycouncil/packet/050807/05-08a.htm.

DECLARATION OF BRADLEY R. SCHNEIDER IN
SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT C 07-04034

# EXHIBIT A

Attachment 15
ZAB – 1/25/2007
Pages: 8



Office of the City Attorney

July 5, 2006

To:     Honorable Mayor and
        Members of the City Council and
        City Manager

From:   Manuela Albuquerque, City Attorney

Re:     PREEMPTION OF LOCAL REGULATION BASED ON HEALTH EFFECTS
        OF RADIO FREQUENCY EMISSIONS UNDER THE
        TELECOMMUNICATIONS ACT OF 1996

ISSUE PRESENTED

The City Council has previously been advised a number of occasions that that federal law
preempts local governments from regulating wireless telecommunication facilities based
on concerns about the health effects of radio frequency (RF) emissions.

Most recently, it has asked that the City Attorney list all of the cases decided under this
preemption provision.

This memorandum reiterates our most recent advice, and briefly discusses the cases that
address this issue.

SHORT ANSWER

Local governments, including Berkeley are completely preempted from regulating
wireless telecommunication facilities based on concerns about the health effects of radio
frequency emissions.

BACKGROUND

In December 2000, the Council adopted by urgency ordinance a 45-day moratorium on
the approval of new wireless telecommunications facilities throughout Berkeley. The
Council subsequently extended the moratorium through December 31st of that year.

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 2

During 2001, staff drafted, and the Planning Commission considered, a more
comprehensive and detailed ordinance regulating wireless telecommunication facilities.
In November 2001, the Planning Commission recommended approval of that ordinance,
with various amendments. The Council adopted that ordinance in December 2001, and it
is codified as Chapter 23C.17 of the Berkeley Municipal Code

DISCUSSION

The Telecommunications Act of 1996. ("TCA"; 47 U.S.C. §332(c)) generally preserves
local zoning authority over wireless telecommunications antennas for personal wireless
service:

>  Except as provided in this paragraph, nothing in this chapter shall limit or
>  affect the authority of a State or local government or instrumentality
>  thereof over decisions regarding the placement, construction, and
>  modification of personal wireless service facilities.

(47 U.S.C. 332(c)(7)(A).)

However the TCA also limits this authority in a number of significant respects.
Specifically, it provides that

>  No State or local government or instrumentality thereof may regulate the
>  placement, construction, and modification of personal wireless service
>  facilities on the basis of the environmental effects of radio frequency
>  emissions to the extent that such facilities comply with the [Federal
>  Communication] Commission's regulations concerning such emissions.

(47 U.S.C. 332(c)(7)(B)(iv).)

The courts have been quite clear that this language means what it says, and that local
regulation of personal telecommunication services on the basis of health effects of RF
emissions is preempted. (Cellular Phone Taskforce v. F.C.C. (2nd Cir. 2000) 205 F.3d 82,
cert. denied, 531 U.S. 1070, 121 S.Ct. 758; 148 L.Ed.2d 661; Telespectrum, Inc. v. Public
Service Commission of Kentucky (6th Cir. 2000) 227 F.3d 414.)

It has been suggested that the U.S. Supreme Court's recent decision in City of Rancho
Palos Verdes v. Abrams (2005) 544 U.S. 113, 161 L.Ed.2d 316, 125 S.Ct. 1453,
somehow increases the City's leeway to regulate on the basis of concerns about the health
effects of RF emissions. This is incorrect. Abrams merely held that violation of the TCA
did not constitute a denial of civil rights under 42 U.S.C. § 1983 for which damages and
attorneys' fees were available. It did not give local governments any greater substantive
powers under the TCA, and in fact arose out a case in which a city's denial of a use
permit was invalidated under Section 332.

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 3

Accordingly, the City may not impose any limitations or restrictions on the establishment or location of wireless telecommunication facilities based on concerns about the health effects of radio frequency (RF) emissions.

In response to the Council's request for additional case authority, we digest below a number of cases decided under Section 332.

1. AT&T Wireless Services of California, LLC v. City of Carlsbad (S.D. CA 2003) 308 F.Supp.2nd 1148

AT&T filed suit under Section 332 alleging that the city had unlawfully denied its application for a Conditional Use Permit (CUP) for a cell antenna site. The court ruled that the denial of AT&T's application for permit was not supported by substantial evidence and was impermissibly based on concern over health effects of radio frequency emissions. The court "conclude[d] that concern over the decrease in property values may not be considered as substantial evidence if the fear of property value depreciation is based on concern over the health effects caused by RF emissions. Thus, direct or indirect concerns over the health effects of RF emissions may not serve as substantial evidence to support the denial of an application." (Id. at 1159.)

The court further noted that Congress intended this federal preemption:

The conferees intend section 332(c)(7)(B)(iv) to prevent a State or local government or its instrumentalities from basing the regulation of the placement, construction, or modification of CMS facilities directly or indirectly on the environmental effects of radio frequency emissions if those facilities comply with the Commission's regulations...H.R. Conference Report No. 104-458, 201 (1996)

(Id.)

2. Illinois RSA No. 3 v. County of Peoria (C.D. IL 1997) 963 F.Supp. 732

The plaintiff challenged a county's denial of its application for a special use permit to build a cellular telephone transmission tower in violation of § 704 the Telecommunications Act of 1996. The court rejected the county's concerns about possible health effects of the proposed tower since the county could not consider potential health effects of Plaintiff's proposed cell site under 47 U.S.C. § 332(c)(7)(B)(iv) and ordered the county to grant the special use permit.

3. Iowa Wireless Services., L.P. v. City of Moline (C.D. IL 1998) 29 F.Supp.2nd 915

The court agreed with the city's position that 47 U.S.C.S. § 332(c)(7)(B)(iv) "prevents the denial of a permit on the sole basis that the facility would cause negative environmental effects." (Id. at 924.)

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 4

    4. <u>SBA Communications v. Zoning Commission</u> (2000) 112 F.Supp.2nd 233

SBA challenged a town's denial of special permits to construct a wireless
telecommunication facility. In rejecting citizens' concerns about adverse health
concerns, the court rejected the citizens' testimony at the public hearings as generalized
concerns about the possibility of adverse health effects from radio frequency emissions
emanating from the proposed cell site.

    5. <u>Telespectrum, Inc. v. PSC</u> (6th Cir. 2000) 227 F.3rd 414.

Telespectrum applied to the Public Service Commission of Kentucky for a Certificate of
Public Convenience and Necessity to construct a 199-foot tall wireless
telecommunications tower in Carter County, Kentucky. Two individuals who lived about
412 feet from the proposed site complained because of health dangers from exposure to
waves emitted from the tower. After a public hearing, the commission denied the
application. The U.S. Court of Appeals for the Sixth Circuit affirmed the District Court's
decision that the commission's decision was unsupported by substantial evidence.

It stated that "we recognize that concerns of health risks due to the emissions may not
constitute substantial evidence in support of denial by statutory rule, as no state or local
government or instrumentality thereof may regulate the construction of personal wireless
facilities 'on the basis of the environmental effects of radio frequency emissions to the
extent that such facilities comply with the Commission's regulations concerning such
emissions.'" 47 U.S.C. § 332(c)(7)(B)(iv). (<u>Id.</u> at 424.)

    6. <u>Sprint Spectrum L.P. v. Town of Farmington</u> (D. CT. 1997) 1997 U.S. Dist.
      LEXIS 15832

Sprint Spectrum applied for a special permit to erect a 143-foot tall monopole for
wireless personal communication services. The town denied the application, then passed
a nine-month moratorium on new telecommunications antenna facilities precluding the
company from submitting an application. The court held that the town's grounds for
denial were not supported by substantial evidence because it had based its denial on the
"effect on property values that an unfounded fear of [radio frequency] emissions could
have." (<u>Id.</u> at 13.) The court ruled that the town had therefore violated the TCA by basing
its decision on the effects of radio frequency emissions, contrary to Section
332(c)(7)(B)(iv), which was intended to prohibit the commission from "basing the
regulation of the placement ... [of the monopole] directly or indirectly on the
environmental effects of radio frequency emissions." (<u>Id.</u>)

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 5

    7.   Cellular Phone Taskforce v. FCC (2nd Cir. 2000) 205 F.3rd 82, cert. denied, 531
        U.S. 1070, 121 S.Ct. 758, 148 L.Ed.2d 661

Petitioners appealed from two final opinions and orders in which the FCC promulgated
guidelines for health and safety standards of radio frequency ("RF") radiation and
"retained the exclusive ability to regulate the relevant radio facility operations." (Id. at
87.)  Pursuant to its rulemaking authority, the FCC has issued an interpretive ruling
preempting state and local governments from regulating, personal wireless service
facilities that comply with FCC regulations based on RF emissions. (Id. at 95-96.)
Petitioners claimed that the "FCC's interpretation is contrary to plain congressional
intent." (Id.)  The court rejected the petitioners' arguments, recognizing that "[t]he FCC
has broad preemption authority under the Telecommunications Act."  Thus, "[s]ection
332(c)(7)(B)(iv) does not amount to clear congressional intent to permit state and local
governments to regulate the operation of such facilities. The FCC's interpretation is
therefore entitled to deference and, because the FCC's interpretation is reasonable, we are
bound to accept it." (Id; emphasis added.)

    8.   Nextel Communications of the Mid-Atlantic, Inc. v. Town of Provincetown (D.
        MA 2003) 2003 U.S. Dist. LEXIS 10932

The Massachusetts district court noted that "in general, the Federal Communications
Commission has broad preemption authority under the Telecommunications Act,
particularly with respect to attempts by a state or locality to regulate wireless services on
the basis of perceived environmental effects of radio frequency emissions. 47 U.S.C. §
332(c)(7)(B)" (Id. at 40.)

    9.   Cellular Tel. Co. v. Town of Oyster Bay (2nd Cir. 1999) 166 F.3rd 490

The defendant town denied plaintiff's petitions for two cell sites, and plaintiff sued. The
district court granted summary judgment for plaintiff, holding that the permit denials
violated the Telecommunications Act of 1996. The U.S. Court of Appeals for the Second
Circuit affirmed the injunction requiring town to issue special use permits to applicant
was proper because the town's denial of the permits was clearly based on concerns over
the environmental effects of radio frequency emissions, in violation of the
Telecommunications Act. The court noted that it considers the terms "environmental
effects" and "health concerns" to be interchangeable. (Id. at 494 fn.3.)

    10.  APT Minneapolis, Inc. v. Stillwater Township (D. MN 2001) 2001 U.S. Dist.
        LEXIS 24610

The plaintiff challenged the township's denial of its application to build a cell tower and
imposition of a moratorium on such facilities. The court ruled for the plaintiff and issued
an injunction, because even though the moratorium was based in part on aesthetic
concerns, it was also based in part on potential adverse health effects. The court stated
that "[t]he record also contains numerous references regarding the possible adverse health

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 6

effects of the proposed tower. However, numerous courts have concluded that §
332(c)(7)(B)(iv) precludes consideration of such concerns and thus cannot constitute
substantial evidence." (Id. at 42.)

11. Omnipoint Corp. v. Zoning Hearing Bd. (E.D. PA 1998) 20 F.Supp.2nd 875

The district court ordered the zoning board to grant the plaintiffs' application to build a
cell tower because it had violated the Telecommunications Act by considering the health
effects of radio frequency emissions. It stated that "[e]ven if such purported health effects
were based on scientific evidence, which they are not, this court is not permitted to
consider evidence of supposed ill health effects of radio frequency emissions pursuant to
the TCA…" (Id. at 880, fn.7.)

12. New Par v. City of Saginaw (E.D. MI 2001) 161 F.Supp.2nd 759

Plaintiff, a provider of cellular telephone service, challenged the city's denial of a
variance to allow the placement of a cellular telephone tower. The court ruled for the
plaintiff. It noted that one neighbor had expressed concern at public hearings about
electromagnetic emissions and that the plaintiff's engineer had stated that the antennae's
emissions would be well below FCC standards, and then stated: "Congress has expressly
prohibited local authorities from denying permits to construct telecommunications towers
'on the basis of the environmental effects of radio frequency emissions to the extent that
such facilities comply with the [FCC]'s regulations concerning such emissions.' 47
U.S.C. § 332(c)(7)(B)(iv)." (Id. at 770.)

13. Cellco Partnership v. Board of Supervisors (W.D. VA 2004) 2004 U.S. Dist.
    LEXIS 27348

The plaintiff alleged that defendant county violated the Telecommunications Act of 1996
by denying its application for a special use permit to construct a broadcast tower in the
county. Although it upheld the county's decision, the court noted: "Some citizens
mentioned health concerns in opposing the tower; however, these concerns are precluded
by the Act. 47 U.S.C. § 332(c)(7)(B)(iv)." (Id. at 15.)

14. Seattle SMSA Ltd., Pshp. v. San Juan County (W.D. WA 1997) 88 F.Supp.2nd
    1128

Petitioner applied for conditional use permits from San Juan County to build two cellular
facilities on San Juan Island and two on Lopez Island. The county denied these requests,
and petitioners filed suit alleging a violation of the Telecommunications Act of 1996.
The court remanded the case to the county in part because it had improperly based its
decision on environmental concerns. The court stated:

        The Court also concludes that remand is appropriate because the members
    of the Board relied upon evidence which could not be considered in making their

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 7

> decision as a matter of law. The Board based its decision in part on the "vehement opposition" of residents and property owners and in part on fears of reduced property values, n6 see Finding Nos. 2 & 5, both of which flowed from concerns about the health effects of radio frequency emissions from the cellular facilities. As reflected in the Telecommunications Act, Congress has determined that facilities that comply with applicable Federal Communications Commission ("FCC") regulations do not pose a health risk and cannot be a basis for denying a permit. 47 U.S.C § 332(c) (7) (B) (IV). Although the Board's Finding No. 7 acknowledged that "it has been decided by the Federal Government that the proposed use will not cause significant adverse impacts on the human or natural environments," it is not possible for the Court to know whether or to what extent the Board relied on testimony or other evidence about these possible adverse impacts in reaching its decision. Remand is appropriate for the Board to explain what it did rely upon so that the Court can be assured that it did not rely upon concerns related to radio frequency emissions.

(Id. at 1131.)

15. Bellsouth Mobility v. Gwinnett County (N.D. GA 1996) 944 F.Supp. 923

Plaintiffs, filed suit under the Telecommunications Act of 1996 after defendant county denied their application for a permit to build a cellular tower. The court ruled that the decision was not supported by substantial evidence because it was based on expressed health concerns about being exposed to microwave emissions. (Id. at 926.)

16. Nextel of N.Y., Inc. v. City of Mt. Vernon (S.D. NY 2005) 361 F.Supp.2nd 336

Plaintiff sued the city, the city under the Telecommunications Act of 1996 because city denied two applications to install panel antennas located on rooftops. The court restated the general rule that:

> [H]ealth concerns expressed by residents cannot constitute substantial evidence. See 47 U.S.C. § 332(c)(7)(B)(iv) ("No . . . local government . . . may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.").

(Id. at 341.)

17. MetroPCS, Inc. v. City & County of San Francisco (9th Cir 2004) 400 F.3rd 715

In a comprehensive opinion that resolved a number of issues that had remained unresolved in the Ninth Circuit, the court went out of its way to make clear that "[t]he TCA provides that localities may not base zoning decisions on concerns over radio

Preemption Of Local Regulation Based On Health Effects Of Radio Frequency Emissions Under The
Telecommunications Act Of 1996
January 19, 2007
Page 8

frequency emissions if the proposed wireless facility complies with FCC emissions
requirements..." (Id. at 736.)

18. <u>AT&T Wireless PCS v. City Council of Va. Beach</u> (4th Cir. 1998) 155 F.3[rd] 423

After upholding the city's denial of a conditional use permit to erect communications
towers in a residential area of Virginia Beach, the court nevertheless restated the rule: "A
few citizens did mention health concerns from radio emissions, a concern the Act
precludes, 47 U.S.C. 332(c)(7)(B)(iv)..." (Id. at 431. fn.6.)


cc:    City Clerk
Index: V.A.; V.B.1., V.B.3.