1   HENRY WEISSMANN (SBN 132418)
    Henry.Weissmann@mto.com
2   MARC BECKER (SBN 138872)
    Marc.Becker@mto.com
3   BRADLEY R. SCHNEIDER (SBN 235296)
    Bradley.Schneider@mto.com
4   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
5   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
6   Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
7

8   MACKENZIE & ALBRITTON LLP
    JAMES A. HEARD (SBN 114940)
9   jheard@mallp.com
10  One Post Street, Suite 500
    San Francisco, California  94104
11  Telephone:  (415) 288-4000
    Facsimile:  (415) 288 4010
12
    Attorneys for Plaintiff
13  GTE MOBILNET OF CALIFORNIA LIMITED
    PARTNERSHIP, A CALIFORNIA LIMITED
14  PARTNERSHIP D/B/A VERIZON WIRELESS

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                    OAKLAND DIVISION

18

19  GTE MOBILNET OF CALIFORNIA          CASE NO.  C 07-04034 WDB
    LIMITED PARTNERSHIP, a California
20  limited partnership d/b/a VERIZON    **SUPPLEMENTAL DECLARATION OF**
    WIRELESS,                            **PAUL B. ALBRITTON IN SUPPORT OF**
21                                       **PLAINTIFF'S MOTION FOR PARTIAL**
                 Plaintiff,              **SUMMARY JUDGMENT ON COUNT II**
22                                       **OF THE COMPLAINT**
         vs.
23                                       **DATE: December 5, 2007**
    CITY OF BERKELEY,                    **TIME:  3:00 p.m.**
24
                 Defendant.
25

26

27

28

1
2          I, Paul B. Albritton, do hereby declare and say:
3          1.     I am an active member of the State Bar of California.  I am a partner at
4     Mackenzie & Albritton LLP.  My firm represents GTE Mobilnet of California Limited
5     Partnership d/b/a Verizon Wireless in connection with its application for a conditional use permit
6     ("CUP") from the City of Berkeley ("City") to construct a wireless communications facility at
7     2721 Shattuck Avenue, Berkeley (the "Bekins facility").  I have represented Verizon Wireless at
8     hearings concerning that application (the "Bekins application") before the City's Zoning
9     Adjustment Board ("ZAB") and the Berkeley City Council.  I am making this declaration in
10    support of Verizon Wireless's motion for partial summary judgment on its second claim for relief.
11    I have personal knowledge of the matters set forth in this declaration.  If called to testify, I could
12    and would testify competently to the facts set forth herein.

13
14         2.     Attached hereto as Exhibit A is a true and correct copy of a letter dated
15    October 15, 2007, I caused to be hand delivered to the Berkeley City Council in advance of the
16    October 23, 2007, Council Hearing on the Bekins application.

17         3.     Attached hereto as Exhibit B is a true and correct copy of the Agenda for
18    the October 23, 2007, Berkeley City Council meeting.

19         4.     I attended the October 23, 2007, City Council hearing on the Bekins
20    application.  During the public hearing, nearly all of the two dozen members of the public who
21    spoke in opposition to the proposed antennas addressed alleged adverse health effects.   Naming
22    cancer patients and infants and the proximity of their bedrooms to the antennas, one opponent
23    labeled Councilmembers "murderers" if they voted for the project.  Another described how RF
24    emissions from the antennas would create mutant skin cells while tugging at the flesh of her
25    forearm. Councilmember Anderson, whose district includes the location where the Bekins site
26    will be located, expressed concerns about the unknown dangerous health effects of the proposed
27
28

3832512.1                                    - 2 -

1   Bekins facility, and cited a need to "stand up" to the Federal Government in the same manner that

2   abolitionists had opposed the Dred Scott decision.  Mayor Bates concurred.

3

4   5.    At the conclusion of the hearing, a majority of the Councilmembers

5   abstained from voting both on a motion to uphold and a motion to overturn the ZAB decision, and

6   thereby refused to reach a decision on the merits of the Bekins application.  As a result of this

7   failure to act, the appeal will appear on the agenda for the Council's next public meeting,

8   scheduled for November 6, 2007.

9   I declare under penalty of perjury under the laws of the United States of America

10  that the foregoing is true and correct and that this declaration was executed on October 26, 2007

11  at San Francisco, California.

12

13

14

15  DATED: October 26, 2007                    By

16                                                  PAUL B. ALBRITTON

17

18

19

20

21

22

23

24

25

26

27

28

SUPPLEMENTAL DECLARATION OF PAUL B.
ALBRITTON IN SUPPORT OF PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT C 07-04034

**EXHIBIT A**

**MACKENZIE & ALBRITTON LLP**
ONE POST STREET, SUITE 500
SAN FRANCISCO, CALIFORNIA 94104

CITY OF BERKELEY
CITY CLERK DEPT

07 OCT 15 PM 4: 25

TELEPHONE 415 / 288-4000
FACSIMILE 415 / 288-4010
SENDER'S EMAIL: PALBRITTON@MALLP.COM

October 15, 2007

HAND DELIVERED

Hon. Tom Bates, Mayor
and Members of the City Council
c/o City Clerk, City of Berkeley
2180 Milvia Street, First Floor
Berkeley, CA 94704

Re:    Appeal of Zoning Adjustments Board denial of Use Permit No. 05-10000033
       (Verizon Wireless Facility, 2721 Shattuck Avenue)

Dear Mayor Bates and Council Members:

    We write to you on behalf of Verizon Wireless ("VZW") to encourage you to approve its long standing application to locate a wireless facility at 2721 Shattuck Ave (the "VZW Facility"). By our letter dated July 13, 2007, VZW appealed to this Council the June 28, 2007, decision of the Berkeley Zoning Adjustments Board ("ZAB") to deny VZW's use permit application. By this letter we re-state the inadequacy of the ZAB findings for denial and, more importantly, re-affirm the overwhelming body of evidence that conclusively supports making the findings required for approval of the VZW Facility under Chapter 23C.17 Wireless Telecommunication Facilities of the Berkeley Municipal Code ("BMC"). Based upon this evidence we ask that you act in the best interest of the health, safety and welfare of the Berkeley community by ensuring adequate wireless capacity for the thousands of residents who rely on their Verizon Wireless phone.

### Federal Law Requires Zoning Decisions To Be Supported By Substantial Evidence

    The federal Telecommunications Act of 1996 (the "Act") contains fundamental limits on the decisions of a local jurisdiction with respect to the placement of wireless facilities. Two of these limits are of particular relevance here. First:

    No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.[1]

    Second, any decision to deny an application must be in writing and supported by "substantial evidence."[2]  It is upon this last standard that the ZAB findings fundamentally fail.

---

[1]  47 USC § 332(c)(7)(B)(iv).
[2]  47 USC § 332(c)(7)(B)(iii).

Mayor Bates and Council Members
October 15, 2007

Page 2 of 6

## I. ZAB Decision Fails Federal "Substantial Evidence" Requirement

The ZAB's findings (repeated below in italics) are unsupportable by any substantial evidence for the following reasons, among others:

*ZAB Finding No.1: The Board found finds [sic] it is unable to make the required finding, based on substantial evidence, that the proposed wireless telecommunication facility is necessary to provide personal wireless service in the coverage area (BMC 23.C.17.100.D), since service is currently being provided and since no evidence has been presented that the existing service is not at an adequate level;*

As the City's planning staff and third-party engineer have repeatedly concluded, this site is primarily needed in order to address limited capacity at existing sites. The presence of existing service is simply not relevant to whether there is sufficient capacity. In addition, substantial evidence in the record (including the City's consulting engineer's supplemental opinion) confirms that existing service is inadequate to provide in-building coverage in certain large commercial and institutional buildings.

*Finding 2. The Board finds that the asserted gaps (dropped calls) of 1 - 3% for a few hours a day do not constitute "significant gaps" but are, rather, de minimus [sic];*

This finding is both legally and factually unsupportable. First, the City has no legal authority to determine what level of service is adequate. Secondly, there is no evidence in the record regarding any specific levels of dropped calls, as the City's consulting engineer relied on proprietary dropped-call data that remains confidential. In addition, Berkeley's independent engineer has found that the capacity of the surrounding VZW sites will be exhausted no later than January 2008. The application must be granted now to enable VZW to install the facilities necessary to prevent such foreseeable exhaustion.

*Finding 3. The Board finds that the location is effectively in a residential area and that the objective of the ordinance is to prevent putting wireless telecommunication facilities in residential areas unless necessary to provide service (BMC.23.C.17.020.B). The Board finds no such necessity;*

The Berkeley municipal code ("BMC") assigns the applicable zoning to a parcel. There is no concept of "effective" zoning under the BMC. Applying "effective" zoning is a misapplication of the BMC by the ZAB. Misapplication of local codes is not substantial evidence for denial under federal law. In addition, as noted, Berkeley's independent engineer has found that the facilities are necessary to provide service because the capacity of existing VZW sites will be exhausted by January 2008. law.

*4. The Board finds that the City of Berkeley is in compliance with federal law in denying this Use Permit for wireless telecommunication facility at this location because to do so does not "prohibit or have the effect of prohibiting the provision of personal wireless services to this service area." Wireless service exists with no significant gap; the asserted gaps are de minimus [sic].*

As noted, the facilities are necessary to provide service due to limitations on existing capacity, which, as Berkeley's independent engineer has confirmed, will be exhausted by January 2008. These findings – which the ZAB does not dispute – confirm that the VZW Facility is necessary and that a denial of VZW's application would violate federal law.

In sum, the ZAB findings are wholly inadequate, and are not based on any evidence, let alone the substantial evidence required for the denial of a use permit for this site under Federal law.[3]

---

[3] The ZAB decision was by no means unanimous, with a third of the Board making strong arguments in support of the VZW Facility, citing everything from budget data showing a shift from wireline to wireless utility tax revenue, to quotes from the former charwoman of the Berkeley Telecommunications Commission in favor of the site.

Mayor Bates and Council Members
October 15, 2007

Page 3 of 6

**II. VZW Has Provided The City Council With Sufficient Evidence To Make The Findings Required For Approval.**

BMC Section 23C.17.100 sets forth the findings required for approval of a wireless facility in the City of Berkeley.[4] VZW has provided the Council with sufficient evidence to make each of the findings:

**Section 23C.17.100(B)(1) Finding: Compliance with State and Federal Standards**
Section 23C.17.100(B)(1) requires that the VZW Facility: "Will comply with all applicable state and Federal standards and requirements." There is no question that the VZW Facility complies with state and federal standards. As confirmed by the Hammett & Edison, Inc., Consulting Engineers report dated May 10, 2006 (the "H&E Report"), this site when operational will be well within (and actually far below) all applicable Federal Communications Commission ("FCC") RF exposure limits. The report confirms that if both the VZW and the proposed Sprint/Nextel facilities are operating at maximum output, the emissions from the combined facility on the ground anywhere adjacent to 2721 Shattuck will be less than 1 percent of the FCC's RF exposure limits.[5] Further, staff has deemed the project exempt under the provisions of the California Environmental Quality Act ("CEQA").[6]

**Section 23C.17.100(B)(2) Finding: "Not Readily Visible"**
Section 23C.17.100(B)(2) requires either that: "The facility will not be readily visible" or "It is not feasible to incorporate additional measures that would make the facility not readily visible." The exterior features of the VZW Facility consist of five flush mounted 4' antennas attached to the parapet façade of the fifth story roof of the building, that have been painted to match the building's exterior color. Air conditioning condensers will be located on the roof below the height of the parapet wall along with a small GPS antenna and will not be visible. All other equipment will be located internally. As can be seen from the photosimulations of the proposed facility attached as Exhibit A to this letter, the VZW Facility is not readily visible. The Berkeley Design Review Committee approved the VZW facility's design on July 21, 2005.

**Section 23D.17.100(D)(1) Finding: "Necessary" – Inability to provide Service**
Section 23D.17.100(D)(1) requires the finding that the VZW Facility at 2721 Shattuck, "is necessary for the provision of personal wireless services to Berkeley residents and businesses, or their owners, customers, guests, or invitees, or other persons traveling in or about the City." The BMC provides for this requirement to be met by one of two alternative findings. Under the first alternative, the "necessity" finding must be based upon evidence that: "Without such antenna or facility, the operator will be unable to provide personal wireless services to its customers in the proposed coverage area." The evidence to satisfy this finding is both consistent and overwhelming.

Before the May 25, 2006, ZAB meeting VZW submitted coverage maps and reports supporting the need for the improved coverage in the area surrounding the proposed site, for both increased capacity and in-building coverage. Based on this information, the ZAB determined on May 25, 2006, that the site was necessary.

---

[4] Additional general findings are required to be made by the Council under BMC 23B.32.040 ("*will not be detrimental to the health, safety, peace, morals, comfort, or general welfare*") and consistency with the General Plan and South Shattuck Strategic Plan that have not been at issue in this application, and are not addressed here for brevity. A statement of Planning and Development Staff affirmative general findings (and CEQA exemption) for the VZW Facility can be found in the June 28, 2007 report of Findings and Conditions to the ZAB.
[5] H&E Report at page 3.
[6] See, for example, Berkeley Planning and Development Department "Findings and Conditions" dated June 28, 2007, Paragraph 1, CEQA Findings, which reads, "The project is categorically exempt from the provisions of the California Environmental Quality Act (CEQA, Public Resources Code §21000, et seq.) pursuant to Section 15301 of the CEQA Guidelines ('Existing Facilities')." See also Staff Report for May 25, 2006, ZAB Meeting.

Mayor Bates and Council Members
October 15, 2007

Page 4 of 6

Despite this determination, the Council voted on September 26, 2006, to seek independent analysis of the need for the VZW facility by an engineer retained by the City.

While reserving its rights to subsequently challenge the request as neither timely nor enforceable, VZW provided RCC Consulting, Inc. ("RCC"), the City's independent engineer, with requested proprietary data to conduct their independent analysis. That information included:

1: Berkeley Site Map and Spreadsheet: A map of current and proposed VZW sites and a spreadsheet that includes latitude and longitude of current sites in Berkeley, antenna heights and antenna orientation. A non- proprietary copy of the map is Exhibit B to this letter.

2: VZW Engineer Statement re: Use of Carriers and Anticipated Exhaustion Dates. The conclusion of this narrative is that approvals were needed several months ago to allow construction of this site to prevent critical exhaustion of signal availability in 2008.

3: Statement from CalComm Systems regarding the timeline for Planning and Building Permit Approval for Sites in Berkeley. This statement included two actual project timelines for sites completed in Berkeley in the last two years. The data shows an average timeline for successful sites of twenty months from planning application to completion of the site, thus confirming the substantial lead time needed between project application and the actual anticipated on-air date.

4: Thirty-Day Historic Drop Call Map. This proprietary data mapped actual dropped calls during the month of October 2006, within the vicinity of proposed site. These data demonstrate the need for the site in order for VZW to provide service to its customers in the South Shattuck Avenue corridor.

5: Statement from VZW engineers and photographs facing north from the VZW Shattuck South site. These documents, requested by RCC in connection with their alternatives analysis, show that this existing VZW site is too high to provide coverage of the South Shattuck Avenue corridor without interfering with other Verizon Wireless sites.

6. Actual Cluster Growth in Minutes of Use for City of Berkeley sites from 2005 to 2006. A non-proprietary graphic representation of this data is provided as Exhibit C-1 (with respect to minutes of use for voice calls) and C-2 (with respect to minutes used for short messaging and data) to this letter. Overall, the data show a 94% annual increase in minutes of use for voice calls and a 196% annual increase in minutes of use for short messaging and data for the seven wireless sites serving Berkeley.

7. Affidavit Attesting to Accuracy of Data Provided to RCC. An affidavit from VZW's Director of RF Development, Dwayne Bonham, testifying to the direct, reliable source of the dropped-call and minutes-of-use data provided to RCC. The affidavit certifies that the data provided were not altered or modified.

Further, on April 19-20, 2007, RCC conducted its own field tests of in-building coverage gaps that VZW seeks to remedy by installation of the VZW Facility.

Based upon the foregoing information, RCC Consulting concluded in a report to the City dated June 19, 2007, as follows:

> Verizon Wireless provided proprietary data for the Berkeley Bekins area demonstrating that the dropped calls in the area are increasing. The two sites currently serving the UC Berkeley area would run out of capacity by January 2008 or sooner, which would increase dropped or blocked calls, including 911 calls. The proposed Berkeley Bekins site (Site 7) would off-load traffic from two existing Berkeley locations (Berkeley DT - Site 2, and UC Berkeley East - Site 3), and UC_Berkeley (Site 5) presently on air to the south of the proposed new

Mayor Bates and Council Members
October 15, 2007

Page 5 of 6

> site. An attempt to direct a sector from an adjacent site would cause more inference [sic] than correct the initial problem.
>
> Field tests of in-building coverage were carried out at the Fine Arts Building (2110 Haste Street), Alta Bates Medical Center (2001 Dwight Way), and Berkeley Unified School District Administration Building (2134 Martin Luther King Drive). Dropped calls, poor signal strength, and poor in-building voice quality were observed within these buildings. *The data provided by Verizon Wireless related to capacity and the results of field tests of in-building coverage is consistent with the statements made by Verizon Wireless and demonstrates the capacity and coverage need for the Berkeley Bekins site proposed at 2721 Shattuck Avenue.* (Emphasis added)

RCC's findings satisfy Section 23D.17.100(D)(1)'s requirement that VZW demonstrate, through substantial information (defined under BMC Section 23D.17.100(A)), that the VZW Facility is "necessary for the provision of personal wireless services" and that absent the facility, sometime in January 2008 or sooner, due to capacity constraints, VZW "will be unable to provide personal wireless services to its customers in the proposed coverage area."

**Section 23D.17.100(D)(2) Alternative Necessity Finding: Violation of Law**
Section 23D.17.100(D)(2) provides an alternate basis for finding that the VZW Facility "is necessary for the provision of personal wireless services." That section provides that the finding of necessity can be made:

> Upon advice of the City Attorney that denial of the application would have the effect of prohibiting the provision of telecommunications services, unreasonably discriminating among service providers, or constituting any other violation of State or Federal law. The applicant shall have the burden of proving that the denial would result in such a violation.[7]

Statements by members of the ZAB and the City Council indicate that such advice has been provided by the City Attorney in the form of one or more confidential memoranda.

**Section 23D.17.100(F) Finding: No Nearby Facility for Collocation**
Section 23D.17.100(F) requires a finding that "collocation is not feasible". VZW submitted an alternatives analysis that shows: (i) the narrow band of commercially zoned parcels along Shattuck Avenue (flanked on either side by residential zoning) where VZW seeks to improve service; and (ii) the multiple alternatives that VZW considered within that narrow band in an effort to identify the least obtrusive alternative that would meet its capacity and coverage objectives. As the study confirms, there are no existing facilities near 2721 Shattuck Avenue that provide an opportunity for collocation. The lack of available collocation opportunities is further confirmed by the efforts of Sprint/Nextel to locate its facilities at 2721 Shattuck.

**Conclusion**

As the Staff have consistently determined, the VZW facility meets the requirements of the BMC for approval. The ZAB's findings to the contrary are factually unsupported and contradict the findings of the City's own engineer. VZW submits that the ZAB's decision was based less on the facts than on local opposition to the VZW Facility. From the outset, that opposition has been animated by fears of the alleged health effects of RF emissions. Under federal law, the City cannot take such "health" objections into account. Despite the vocal opposition of a few, the majority of Berkeley citizens depend upon reliable wireless service – for business, communicating with friends and families, and emergencies. In an

---

[7] BMC 23D.17.100(D)(1) and (2)

Mayor Bates and Council Members
October 15, 2007

Page 6 of 6

effort to be sensitive to neighbors, Verizon Wireless, guided by the Berkeley Municipal Code and its Planning and Development Department staff, has proposed an unnoticeable facility with antennas mounted high on a commercial building (and not a tower in the Ward Street neighborhood) that has no real environmental impacts.

For these reasons, we ask that you make the necessary findings outlined above and approve the proposed VZW Facility for 2721 Shattuck Avenue.

Very truly yours,

Paul B. Albritton

Schedule of Exhibits

Exhibit A:  Photosimulation of VZW Facility
Exhibit B:  VZW Berkeley Site Map
Exhibit C:  Growth in Minutes of Use 2005-2006

cc (via email only):

Zachary Cowan, Esq. (Deputy City Attorney)
Ed McGah, Esq.
Peter Maushardt
James Singleton



Proposed Sprint Nextel Installation

Proposed Verizon Antennas

Proposed

close up view

FedEx & UPS



*Proposed*

Proposed Nextel Installation

Proposed Verizon Antennas

Proposed Verizon Antennas

*close up view*





Percent Growth in Berkeley Primary MOUs Nov-05 to Nov-06



Berkeley Percent Increase in Data & Short Messaging MOUs Nov-05 to Nov-06

**EXHIBIT B**

## Regular Meeting eAgenda
## October 23, 2007

Printer-friendly PDF*
agenda: (12 KB)

Click on the linked agenda item titles below for background materials/reports. Adopted Resolutions and Ordinances (second reading) are linked in the **eSummary's** Action section of each item as soon as they are finalized.

**Note:**
- Resolutions and Ordinances are subject to amendment, rescission or repeal, or readoption in whole or in part. Additional research may be necessary to verify the completeness of the legislative history. To research the Berkeley Municipal Code, visit: http://www.ci.berkeley.ca.us/bmc/
- These documents are presented in Adobe Acrobat PDF*, and will open in a new browser window. Some files may exceed 1MB in size. File size information is provided in parentheses. All items are available for review at the City Clerk Department, (510) 981-6900.

*To read PDF files, download a free copy of Adobe Acrobat Reader. If you are unable to access .pdf documents online, please contact us via email (clerk@ci.berkeley.ca.us), telephone (510) 981-6900, or TDD (510) 981-6903 so that we can provide an alternate format.

~~~~~~~~~~~~~~~~~~~~~

# AGENDA

## BERKELEY CITY COUNCIL MEETING
## TUESDAY, OCTOBER 23, 2007
## 7:00 P.M.

### Council Chambers – 2134 Martin Luther King Jr. Way
### Teleconference Location – 1636 Channing Way, Berkeley, CA

TOM BATES, MAYOR

Councilmembers:

| | |
|---|---|
| DISTRICT 1 – LINDA MAIO | DISTRICT 5 – LAURIE CAPITELLI |
| DISTRICT 2 – DARRYL MOORE | DISTRICT 6 – BETTY OLDS |
| DISTRICT 3 – MAX ANDERSON | DISTRICT 7 – KRISS WORTHINGTON |
| DISTRICT 4 – DONA SPRING | DISTRICT 8 – GORDON WOZNIAK |

*This meeting will be conducted in accordance with the Brown Act, Government Code Section 54953, and Teleconferencing. Any member of the public may attend this meeting at either location. Questions regarding this matter may be addressed to Pamyla Means, City Clerk, 981-6900*

*Note: Council Rules of Procedure are currently under review and are subject to change.*

*The City Council may take action related to any subject listed on the Agenda. The Mayor may exercise a two minute speaking limitation to comments from Councilmembers. Meetings will adjourn at 11:00 p.m. - any items outstanding at that time will be carried over to a date/time to be specified.*

## Preliminary Matters

### Roll Call

**Ceremonial Matters:** *In addition to those items listed on the agenda, the Mayor may add additional ceremonial matters.*

**City Manager Comments:**  *The City Manager may make announcements or provide information to the City Council in the form of an oral report.  The Council will not take action on such items but may request the City Manager place a report on a future agenda for discussion.*

# Public Comment on Consent Calendar Items Only

# Consent Calendar

*The Council will consider removal and addition of items to the Consent Calendar prior to voting on the Consent Calendar.  All items remaining on the Consent Calendar will be approved in one motion.  Items removed from the Consent Calendar will be taken up after the "Action Calendar" unless the Council reorders the agenda.*

*Items that are removed from the Consent Calendar and deemed by the Mayor to be controversial in nature will be considered at the end of the agenda.  The Mayor will call for public comments on items on the Consent Calendar. For each item, the Mayor will entertain one speaker in support and ask that persons in the audience who are also in support stand to be recognized.  The Mayor will then entertain one speaker in opposition and follow the same process for the speaker in support.  If the Mayor determines that there are several persons wishing to speak to the item, the item will be removed from the Consent Calendar and considered at the end of the agenda.*

1. **Sale of Center Street Garage Setback Easement to SNK (PDF, 217 KB) Revised Item (PDF, 300 KB)**
   **From: City Manager**
   **Recommendation:** Adopt second reading of Ordinance 6,999-N.S. authorizing the City Manager to execute all necessary documents to convey a fire separation easement above the Center Street Garage at 2025 Center Street to SNK Captec Arpeggio, LLC for an amount not to exceed $200,000.
   **Financial Implications:** See report
   Contact: Phil Kamlarz, City Manager, 981-6900

2. **Amendment to FY 2008 Annual Appropriations Ordinance  (PDF, 1 MB)**
   **From: City Manager**
   **Recommendation:** Adopt first reading of an Ordinance amending the FY 2008 Annual Appropriations Ordinance No. 6,935–N.S. for fiscal year 2008 based upon recommended re-appropriation of committed FY 2007 funding and other adjustments authorized since July 1, 2007, in the amount of $61,848,111 (gross) and $52,178,359 (net).
   **Financial Implications:** See report
   Contact: Tracy Vesely, Budget Manager, 981-7000

3. **Revised November 2007 City Council Meeting Schedule (PDF, 299 KB)**
   **From: City Manager**
   **Recommendation:** Adopt a Resolution amending Resolution 63,559-N.S. to revise the City Council regular meeting schedule for November 2007.
   **Financial Implications:** None
   Contact: Pamyla Means, City Clerk, 981-6900

4. **Formal Bid Solicitations and Request for Proposals  (PDF, 256 KB)**
   **From: City Manager**
   **Recommendation:** Approve the new invitation for bid/request for proposal (RFP) that will be, or is planned to be, issued in the next 30 days upon final approval by the requesting department or division.
   **Financial Implications:** General fund - $200,000
   Contact: Robert Hicks, Finance, 981-7300

5. **Reimbursement: Animal Shelter Pre-Development Expenditures** *(Held over from October 9, 2007)* **(PDF, 249 KB)**
   **From: City Manager**
   **Recommendation:** Adopt a Resolution declaring the intent of the City of Berkeley to reimburse certain expenditures made prior to the issuance of General Obligation bonds to

improve the animal shelter, in accordance with the requirements of Treasury Regulation Section 1.150-2.
**Financial Implications:** None
Contact: Robert Hicks, Finance, 981-7300

6. **Purchase Orders:  FY08 - Interior Motions  (PDF, 246 KB)**
   **From: City Manager**
   **Recommendation:** Adopt a Resolution authorizing the City Manager to execute purchase orders in FY08 with Interior Motions, a supplier of furniture, in an amount not to exceed $250,000.
   **Financial Implications:** See report
   Contact: Robert Hicks, Finance, 981-7300

7. **Lease: 1013 Pardee Street No. 105  (PDF, 294 KB)**
   **From: City Manager**
   **Recommendation:** Adopt first reading of an Ordinance authorizing a new one year lease from October 1, 2007 to September 30, 2008 for an existing warehouse at 1013 Pardee Street, No.105 (alternate address of 2700 10th Street) for the storage of fire and police equipment, emergency supplies and equipment.
   **Financial Implications:** Measure Q, Budget Code - $138,293
   Contact: Debra Pryor, Fire, 981-3473

8. **Winter Homeless Shelter Programs (PDF, 254 KB)**
   **From: City Manager**
   **Recommendation:** Adopt a Resolution authorizing the City Manager:
   1) To increase the allocation for operating costs for Winter Shelter Program by $10,000;
   2) To enter into a Memorandum of Understanding with the City of Oakland, Department of Human Services, in an amount not to exceed $66,000 for operation of the Winter Shelter Program at the Oakland Army Base.
   **Financial Implications:** See report
   Contact: Renelda Mary, Housing, 981-5400

9. **Memorandum Of Understanding:  Berkeley Fire Fighters Association/I.A.F.F. Local 1227** *(Held over from October 9, 2007)*  **(PDF, 600 KB)**
   **From: City Manager**
   **Recommendation:** Adopt Resolutions:
   1) Approving a new four year Memorandum of Understanding with the Berkeley Fire Fighters Association/I.A.F.F. Local 1227 (hereinafter referred to as the "Association") with a term of July 2, 2006 through June 26, 2010; authorizing the City Manager to execute and implement the new labor agreement that includes certain adjustments to salaries and benefits retroactive to July 2, 2006 or other dates set forth in the contract;
   2) Approving a new salary resolution for Representation Unit B that implements the new salary levels negotiated in the new labor agreement and rescinding Resolution No. 60,867–N.S.
   **Financial Implications:** See report
   Contact: David Hodgkins, Human Resources, 981-6800

10. **Deferred Compensation Plan:  Amend Plan to Allow Employees to Purchase Additional Retirement Service (PDF, 250 KB)**
    **From: City Manager**
    **Recommendation:** Adopt the first reading of an Ordinance to amend Ordinance No 6,749-

N.S., the City of Berkeley Deferred Compensation Plan to add a new Article XIII, Purchase of Additional Retirement Service Credit from the California Public Employees' Retirement System (CalPERS).
**Financial Implications:** None
Contact: David Hodgkins, Human Resources, 981-6800

## 11. Classification: Transportation Manager (PDF, 387 KB)
**From: City Manager**
**Recommendation:** Adopt a Resolution to amend Resolution No. 61,840-N.S., Classification and Salary Resolution for Public Employees Union Local One, to establish the Classification of Transportation Manager with a salary range of $9,230 - $11,219 per month effective November 1, 2007.
**Financial Implications:** See report
Contact: David Hodgkins, Human Resources, 981-6800

## 12. Contract Amendment: Innovative Technologies – Consulting Services for the Public Safety Computer System (PDF, 254 KB)
**From: City Manager**
**Recommendation:** Adopt a Resolution authorizing the City Manager to amend Contract No. 6840C with Innovative Technologies, for consulting services related to the new Public Safety Computer System, in the amount of $4,000 for a total contract amount not to exceed $117,625, and to extend the term until November 30, 2007.
**Financial Implications:** General Fund - $4,000
Contact: Donna LaSala, Information Technology, 981-6500

## 13. Contract: Berkeley Tuolumne Camp Master Plan - 2M Associates, Inc. (PDF, 255 KB)
**From: City Manager**
**Recommendation:** Adopt a Resolution authorizing the City Manager to execute a contract with 2M Associates, Inc. to prepare a Master Plan for Berkeley Tuolumne Camp for an amount not to exceed $75,000 for the period October 24, 2007 to December 31, 2008.
**Financial Implications:** General fund - $75,000
Contact: William Rogers, Parks, Recreation and Waterfront, 981-6700

## 14. Revised Grant Application: Workforce Housing Reward Program (PDF, 247 KB)
**From: City Manager**
**Recommendation:** Adopt a Resolution authorizing the City Manager to accept a $149,719 Workforce Housing Reward Program grant from the State of California, Department of Housing and Community Development for improvements to Downtown BART Plaza; and to execute the resultant revenue agreement and any amendments thereto.
**Financial Implications:** See report
Contact: Dan Marks, Planning and Development, 981-7400

## 15. Contract: Mills Act: 2130 Center Street (PDF, 853 KB)
**From: City Manager**
**Recommendation:** Adopt a Resolution to direct the City Manager to enter into a Mills Act contract for 2130 Center Street.
**Financial Implications:** See report
Contact: Dan Marks, Planning and Development, 981-7400

## 16. Contract: Mills Act: 2947-53 College Avenue (PDF, 706 KB)

**From: City Manager**
**Recommendation:** Adopt a Resolution to direct the City Manager to enter into a Mills Act contract for 2947-53 College Avenue.
**Financial Implications:** See report
Contact: Dan Marks, Planning and Development, 981-7400

17. **Contract: Marks Traffic Data Inc for On-Call Traffic Consulting Services PDF, 246 KB)**
    **From: City Manager**
    **Recommendation:** Adopt a Resolution authorizing the City Manager to execute a contract with Marks Traffic Data, Inc., for on-call traffic consulting service in an amount not to exceed $50,000 for the period December 15, 2007 through December 14, 2009 with an option for a one-year extension.
    **Financial Implications:** CIP Fund: $50,000
    Contact: Claudette Ford, Public Works, 981-6300

18. **Contract Amendment: Korve Engineering (DMJM Harris) for On-Call Traffic Engineering Services (PDF, 247 KB)**
    **From: City Manager**
    **Recommendation:** Adopt a Resolution authorizing the City Manager to execute an amendment to the Contract No. 6927A with Korve Engineering, now known as DMJM Harris, for on-call traffic engineering services; increasing the amount by $50,000 for a new total contract amount not to exceed $140,000; and extending the term to December 31, 2008.
    **Financial Implications:** Capital Improvement Fund - $50,000
    Contact: Claudette Ford, Public Works, 981-6300

19. **Contract Amendment: City CarShare for Pilot Accessibility Program (PDF, 249 KB)**
    **From: City Manager**
    **Recommendation:** Adopt a Resolution authorizing the City Manager to amend Contract No. 6475 with City CarShare for the development of a pilot Accessibility Program, including the acquisition of a wheelchair accessible vehicle, increasing the contract by $25,000 for a total amount not to exceed $438,000 for the period August 1, 2004 to June 30, 2009.
    **Financial Implications:** General fund - $25,000
    Contact: Claudette Ford, Public Works, 981-6300

20. **Housing Incentive Program (HIP) Application for Ed Roberts Campus (PDF, 186 KB)**
    **Notice of Revision (PDF, 20 KB)**
    **From: City Manager**
    **Recommendation:** Adopt a Resolution authorizing the City Manager to submit an application to the Metropolitan Transportation Commission (MTC) for funds in the amount of $544,000 for transportation enhancements related to the Ed Roberts Campus at the Ashby BART Station; allocating and committing $62,525 in countywide sales tax Measure B Bicycle/Pedestrian funds to provide the City's matching funds of 11.47%; and accept the grant, and execute any resultant agreements and amendments.
    **Financial Implications:** See report
    Contact: Claudette Ford, Public Works, 981-6300

21. **City of Sanctuary for Conscientious Objectors (PDF, 240 KB)**
    **From: Peace and Justice Commission**
    **Recommendation:** Adopt a Resolution reaffirming the City of Berkeley as a City of

Sanctuary for United States military personnel seeking Conscientious Objector Status, and extending Berkeley as a City of Sanctuary for those otherwise seeking to avoid participating in the Occupation of Iraq or in combat operations in Iraq, Afghanistan or other targets of United States wars for moral, ethical or religious reasons or out of respect for international laws, including the Nuremberg Principles, some of whom may have been classified as AWOL or deserters.
**Financial Implications:** None
Contact: Manuel Hector, Commission Secretary, 981-5100

## Council Consent Items

22. **Mayor's Office Funding for Ecology Center's Environmental Summit (PDF, 249 KB)**
**From: Mayor Bates**
**Recommendation:** Authorize the payment of $250 from the Mayor's discretionary budget to the Ecology Center to help fund their second annual Sustainability Summit.
**Financial Implications:** Mayor's Budget - $250
Contact: Tom Bates, Mayor, 981-7100

23. **Support Teleconferencing for Commissions (PDF, 209 KB)**
**From: Councilmembers Moore and Wozniak**
**Recommendation:** Direct the City Manager to explore the possibility for requests for teleconferencing by commission or task force chairperson when members have a good reason that they are unable to attend meetings in person and for the City Manager to return with a proposal on the December 18th meeting.
**Financial Implications:** None
Contact: Darryl Moore, Councilmember, District 2, 981-7120

24. **Schedule Presentation: United in Action on the Subject of the Academic Achievement Gap (PDF, 213 KB)**
**From: Councilmember Moore**
**Recommendation:** Schedule a short presentation from United In Action for the November 6, 2007 City Council meeting.
**Financial Implications:** None
Contact: Darryl Moore, Councilmember, District 2, 981-7120

25. **Honoring Theodore David Gartner (PDF, 209 KB)**
**From: Councilmember Moore**
**Recommendation:** Adopt a Resolution in honor of the brilliant life of Ted Gartner.
**Financial Implications:** None
Contact: Darryl Moore, Councilmember, District 2, 981-7120

26. **Be Fit Berkeley Campaign - Voluntarily Transfer Of Funds (PDF, 383 KB)**
**From: Councilmembers Capitelli and Moore**
**Recommendation:** Authorize Councilmembers to voluntarily transfer funds, not to exceed $500 from Council Member Office budgets to the Public Health Department in support of the "Be Fit Berkeley" Campaign.
**Financial Implications:** None
Contact: Laurie Capitelli, Councilmember, District 5, 981-7150

27. **Developing a City Preferred Alternative for Bus Rapid Transit (PDF, 267 KB)**
**From: Councilmembers Capitelli and Worthington**

**Recommendation:** Direct the Planning Commission, in collaboration with the Transportation Commission and staff, to develop a City preferred alternative for the Bus Rapid Transit (BRT) system under consideration by AC Transit, and, if funding for the process is received from AC Transit in a timely manner, to complete its deliberations by March 1, 2008, and to report back to the Council no later than March 25, 2008.
**Financial Implications:** See report
Contact: Laurie Capitelli, Councilmember, District 5, 981-7150

28. **Reinstating Funding to Berkeley Food and Housing Project (PDF, 209 KB)**
    **From: Council member Worthington**
    **Recommendation:** Adopt a Motion to reinstate funding to the Berkeley Food and Housing Project immediately or refer it to the mid-year budget process.
    **Financial Implications:** General Fund - $23,567
    Contact: Kriss Worthington, Councilmember, District 7, 981-7170

29. **Political Situation in Myanmar/Burma (PDF, 274 KB)**
    **From: Council member Worthington**
    **Recommendation:** Adopt a the Resolution drafted by the Peace and Justice Commission urging the government of Myanmar/Burma to immediately cease the use of violence in suppression of non-violent protests by it's citizens, cease the detention of political prisoners and release those currently held, restore communications within and outside the county including telephone, cellular, and Internet services, and enter into sincere negotiations with leaders of the movement for democracy and human rights in Mynamar/Burma.
    **Financial Implications:** General Fund - $23,567
    Contact: Kriss Worthington, Councilmember, District 7, 981-7170

## Action Calendar - Appeals

30. **ZAB Appeal: 1365 Summit Road (PDF, 5 MB)**
    **Attachment 4 (PDF, 30 MB)**
    **1. From: City Manager**
    **Recommendation:** Adopt a Resolution affirming the decision of the Zoning Adjustments Board to approve Use Permit No. 06-10000105 for the demolition of the existing home at 1365 Summit Road and to permit its replacement with a new single family residence.
    **Financial Implications:** None
    Contact: Dan Marks, Planning and Development, 981-7400
    **b. Appeal**
      1.  Robin Gal
    **c. Communications**
      1.  Carol Shen, FAIA

## Action Calendar - Public Hearings

31. **ZAB Appeal: 2721 Shattuck Avenue - Nextel** *(No new information submitted after July 16, 2007)* **(PDF, 574 KB)**
    **Attachment 1 (PDF, 30 MB)**
    **a From: City Manager**
    **Recommendation:** Conduct a public hearing and upon conclusion, adopt a Resolution overturning Zoning Adjustments Board denial and adopting findings for approval of Use Permit #04-10000068 for a new wireless telecommunications facility (including six

antennas and related equipment) for Nextel Communications at 2721 Shattuck Avenue.
**Financial Implications:** None
Contact: Dan Marks, Planning and Development, 981-7400
**b. Appeal**
  1.   Corey Alvin (representative for Nextel Communications, applicant/appellant)
**c. Communications** *(Received after July 16, 2007)*
  None

32. <u>**ZAB Appeal: 2721 Shattuck Avenue – Verizon**</u> *(No new information submitted after July 16, 2007)***(PDF, 8 MB)**
  <u>**Attachment 1 (PDF, 40 MB)**</u>
  **a. From: City Manager**
  **Recommendation:** Conduct a public hearing and upon conclusion, adopt a Resolution overturning Zoning Adjustments Board denial and adopting findings for approval of Use Permit #05-10000033 for a new wireless telecommunications facility (including five antennas and related equipment) for Verizon Wireless at 2721 Shattuck Avenue.
  **Financial Implications:** None
  Contact: Dan Marks, Planning and Development, 981-7400
  **b. Appeal**
    1.  James Singleton (representative for Verizon Wireless, applicant/appellant)
  **c. Communications** *(Received after July 16, 2007)*
    1.  Mackenzie and Albritton, LLP
    2.  Sharam Shahruz
    3.  Raymond Barglow

## Action Calendar - New Business

33. <u>**Contract: Carpenter And Company, Downtown Hotel Consulting (PDF, 248 KB)**</u>
**From: City Manager**
**Recommendation:** Accept funds up to $50,000 from Carpenter and Company, the developers of the proposed Downtown Hotel and Conference Center at the Northeast Center and Shattuck, to be used to pay for project-related consultation services including financial feasibility analysis and review of possible mechanisms to provide tax abatement or other subsidies to render the project feasible; and to direct the City Manager to negotiate and execute a sole source contract with Keyser Marston and Associates ("Keyser Marston") for consultation services (time and materials) to implement this work in an amount not to exceed $50,000.
**Financial Implications:** See report
Contact: Michael Caplan, Economic Development, 981-7530

34. <u>**Discussion Regarding Possible Ballot Measures for the November 4, 2008 General Municipal Election (PDF, 250 KB)**</u>
<u>**Revised Report (PDF, 250 KB)**</u>
**From: City Manager**
**Recommendation:** Provide direction to staff regarding the preparation of City initiated ballot measures to be submitted to the voters at the November 4, 2008 General Municipal Election.
**Financial Implications:** See report
Contact: Pamyla Means, City Clerk, 981-6900

## Information Reports

**35. Update: NetFile Online Campaign Report Filing and Tracking (PDF, 236 KB)**
**From: City Manager**
Contact: Pamyla Means, City Clerk, 981-6900

**36. Animal Shelter Reconstruction: 2013 Second Street (PDF, 247 KB)**
**From: City Manager**
Contact: Phil Kamlarz, City Manager, 981-7000

## Public Comment – Items Not Listed on the Agenda

# Adjournment

*NOTICE CONCERNING YOUR LEGAL RIGHTS: If you object to a decision by the City Council to approve or deny a use permit or variance for a project the following requirements and restrictions apply: 1) No lawsuit challenging a City decision to deny (Code Civ. Proc. '1094.6(b)) or approve (Gov. Code 65009(c)(5)) a use permit or variance may be filed more than 90 days after the date the Notice of Decision of the action of the City Council is mailed. Any lawsuit not filed within that 90-day period will be barred. 2) In any lawsuit that may be filed against a City Council decision to approve or deny a use permit or variance, the issues and evidence will be limited to those raised by you or someone else, orally or in writing, at a public hearing or prior to the close of the last public hearing on the project.*

Live captioned broadcasts of Council Meetings are available on Cable B-TV (Channel 33), via internet accessible video stream at http://www.ci.berkeley.ca.us/video and KPFB Radio 89.3. Archived indexed video streams are available at http://www.ci.berkeley.ca.us/citycouncil. Channel 33 rebroadcasts the following Wednesday at 9:00 a.m. and Sunday at 9:00 a.m.

Agendas and agenda reports may be accessed via the Internet at http://www.ci.berkeley.ca.us/citycouncil and may be read at reference desks at the following locations:

City Clerk Department
2180 Milvia Street
Tel: 510-981-6900
TDD: 510-981-6903
Fax: 510-981-6901
Email: clerk@ci.berkeley.ca.us

Libraries:
Main - 2090 Kittredge Street
Claremont Branch – 2940 Be
West Branch – 1125 Universi
North Branch – 1170 The Ala
South Branch – 1901 Russell

COMMUNICATION ACCESS INFORMATION:
This meeting is being held in a wheelchair accessible location.
To request a disability-related accommodation(s) to participate in the meeting, including auxiliary aids or services, please contact the Disability Services specialist at 981-6346(V) or 981-7075 (TDD) at least three business days before the meeting date.
Please refrain from wearing scented products to this meeting.

Captioning services are provided at the meeting, on B-TV, and on the Internet. In addition, assisted listening devices for the hearing impaired are available from the City Clerk prior to the meeting, and are to be returned before the end of the meeting.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**I hereby certify that the agenda for this meeting of the Berkeley City Council was posted at the display case located near the walkway in front of Council Chambers, 2134 Martin Luther King Jr. Way, as well as on the City's website, on October 18, 2007**

Pamyla Means, MMC, City Clerk

## Communications – 10/23/07(PDF, 20 KB)

*Council rules limit action on Communications to referral to the City Manager and/or Boards and Commissions for investigation and/or recommendations. All communications submitted to Council are public record.*

**Item 9: Memorandum Of Understanding:  Berkeley Fire Fighters Association/I.A.F.F. Local 1227**
1.   Sharon Hudson

**Item 30: Developing a City Preferred Alternative for Bus Rapid Transit**
2.   Alan Tobey
3.   Benjamin Grant

**Pubic Commons**
4.   Marianne Robinson
5.   Barbara Gilbert

**Berkeley Pools**
6.   Bill Hamilton, Barbara Steuart and Stephen Swanson, on behalf of Pools for Berkeley

**Albany Bulb**
7.   Barbara Gilbert

**Public Comment Procedure**
8.   Jane Welford, Jim Fisher and Gene Bernardi, on behalf of SuperBOLD

**Old City Hall**
9.   Carrie Sprague, Lynne Davis and J. Michael Edwards, on behalf of the McGee-Spaulding-Hardy Historic Interest Group

**PROOF OF SERVICE BY MAIL**

I, Lori Cruz, declare:

1. I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California.  My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California  90071-1560.

2. On October 26, 2007, I served a true copy of the attached document entitled **SUPPLEMENTAL DECLARATION OF PAUL B. ALBRITTON IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT** by placing it in an addressed sealed envelope clearly labeled to identify the person being served at the address shown below on the attached service list and placed said envelope in interoffice mail for collection and deposit with the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices.

3. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 26, 2007, at Los Angeles, California.

_____
Lori Cruz

1

## SERVICE LIST

2

Case No.: C-07-04034 (SBA)
*GTE MobilNet of California L.P. d/b/a Verizon Wireless v. City of Berkeley*

3

4

5

Zach Cowan
Deputy City Attorney
City Attorney's Office
City of Berkeley
2180 Milvia Street
Berkeley, CA  94704

Attorneys for Defendant
*City of Berkeley*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28